60351

# RATIFICATION OF OIL AND GAS LEASE

305486-000

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/29/2014 8:00:00 AM
DORIAN E. RAMIREZ
Clerk

| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DeWITT | § | |

WHEREAS, on the 22nd of October, 2007, LORENE H. KOOPMANN, an unmarried woman, as Lessor, did execute and deliver to HAWKE ENTERPRISES, as Lessee, a certain Oil, Gas and Mineral Lease as evidenced by Memorandum of Oil and Gas Lease, said Memorandum being duly recorded in Volume 243, at Page 876 of the Official Public Records of DeWitt County, Texas, and covering:

120 acres of land, more or less, being a part of Section No.13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, being described as TRACT NO. ONE and TRACT NO. TWO in that certain Deed dated December 27, 1996, from Lois Strieber, Individually and as Independent Executrix of the Estate of Jerry Strieber, Deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, and being recorded in Volume 14, page 425 of the Official Public Records of DeWitt County, Texas.

hereinafter called "the Lease". Reference to said Lease and to the record thereof being made for all purposes; and,

WHEREAS, said Lease and all rights and privileges thereunder are now owned and held by BURLINGTON RESOURCES OIL & GAS COMPANY LP, whose address is P.O. Box 1967, Houston, Texas 77251-1967, hereinafter called "Lessee"; and,

WHEREAS, it is the desire of LOIS WOLPMAN STRIEBER, a widow, the undersigned, to adopt, ratify and confirm said Lease;

For adequate consideration, in hand paid, the receipt and sufficiency of which is acknowledged and confessed, I, of Lois Wolpman Strieber, a widow, the undersigned do hereby ratify, adopt and confirm the Subject Lease in all of its terms and provisions and do hereby lease, grant, demise, and let the lands covered by the Subject Lease unto BURLINGTON RESOURCES OIL & GAS COMPANY LP, subject to and in accordance with the terms and provisions of the Subject Lease as if I had been and original party to said Lease. And, I LOIS WOLPMAN STRIEBER, a widow, the undersigned, do hereby agree that the said "Lease" is a valid and subsisting Oil and Gas Lease.

In witness whereof, this instrument was executed this 3ed day of July, 2008.

Lessor:

_Lois Wolpman Strieber_
LOIS WOLPMAN STRIEBER

STATE OF TEXAS §
§
COUNTY OF DeWIT §

This instrument was acknowledged before me on this the 3rd day of July, 2008, by of Lois Wolpman Strieber.

TRACY SERRANO
NOTARY PUBLIC
State of Texas
My Commission Expires Jan. XI 2008

_Tracy Serrano_
NOTARY PUBLIC STATE OF TEXAS
File Number: L 305486-000
Left Side , Right Side
Initial , Date

60351

After recording please return to:
Hawke Enterprises
330 Rayford Road #196
Spring, Texas 77386

**Filed for Record**
This, the 14th day of Aug 20 08
at 1:30 o'clock P M
ELVA PETERSEN, COUNTY CLERK OF
DeWitt County, Texas
_____
Deputy

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument was filed on the date & time stamped hereon by me & was duly recorded in the Volume & Page of the Official Public Records of DeWitt Co. Texas.
Date AUG 14 2008
ELVA PETERSEN, COUNTY CLERK
BY _____
Vol. 2606 Page 409

Confidential

KOOCOP00000944

447

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## AMENDMENT TO OIL, GAS AND MINERAL LEASE
## (PAID UP LEASE)

THIS AMENDMENT TO OIL, GAS, AND MINERAL LEASE is executed to be effective as of this 22nd day of October 2007 by and between LORENE H. KOOPMANN, an unmarried woman, acting herein by and through Ralph Koopman and Karen M. Koenig, my attorneys-in-fact, whose address is: 405 FM 108, Yorktown, Texas 78164, RALPH KOOPMANN, a married man dealing in his sole and separate property, whose address is 774 Stanchos Road, Yorktown, Texas 78164, and KAREN M. KOENIG, a married woman dealing in her sole and separate property, whose address is 3489 ST. Hwy 72W, Cuero, Texas 77954 (collectively, "Lessor"), and BURLINGTON RESOURCES OIL & GAS COMPANY LP, whose address is 600 North Dairy Ashford, Houston, Texas 77079-2197 ("Burlington"). Lessor and Burlington are sometimes referred to herein collectively as the "Parties."

### RECITALS

WHEREAS, that certain Oil, Gas, and Mineral Lease, dated 22nd day of October 2007 was made and entered into between LORENE H. KOOPMANN and HAWKE ENTERPRISES, as "Lessee," (the "Lease"), a Memorandum of which Lease is recorded in Volume 243, Page 876 of the Official Records of DeWitt County, Texas, covering the following described lands (the "leased premises"):

120 acres of land, more or less, being a part of Section No. 13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, and being the same land described as TRACT NO. ONE and TRACT NO. TWO in that certain Deed dated December 27, 1996, from Lois Strieber, Individually and as Independent Executrix of the Estate of Jerry Strieber, deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, and being recorded in Volume 14, page 425, Official Public Records, DeWitt County, Texas; and

WHEREAS, the Lease was assigned from HAWKE ENTERPRISES, as Assignor, to Burlington, as Assignee, as evidenced in that certain Assignment dated January 9, 2008 and recorded in Volume 250, Page 822 of the Official Public Records of DeWitt County, Texas; and

WHEREAS, there was a conveyance of an undivided two/thirds (2/3) mineral interest in the leased premises described above, from LORENE H. KOOPMANN to RALPH KOOPMANN and KAREN M. KOENIG as evidenced in that certain Gift Mineral Deed dated June 10, 2010, and recorded at Volume 313, Page 758, Official Public Records of DeWitt County, Texas; and

WHEREAS, as a result of the partial conveyance, the mineral interest in the leased premises described above is now owned by LORENE H. KOOPMANN, RALPH KOOPMANN AND KAREN M. KOENIG, one-third (1/3) each; and

WHEREAS, Lessor (as to all of their interests), and Burlington desire to amend the Lease in certain respects;

NOW, THEREFORE for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby amend the Lease, as follows:

305486-000

-1-

## THE AMENDMENT

I. Paragraph 3 of the lease shall be deleted in its entirety and replaced with the following:

3.1 The royalties to be paid by Lessee are:

(a) on oil, 22.5% of that produced and saved from said land, the same to be delivered, free of all costs and expenses to the Lessor into the pipeline, or other receptacle to which the Lessee may connect its wells or the market value thereof, at the option of the Lessor, such value to be determined by (1) the highest posted price, plus premium, if any, offered or paid for oil, condensate, distillate, or other liquid hydrocarbons, respectively of a like type and gravity for the field where produced and when run, or (2) the gross proceeds of the sale thereof, whichever is greater.

(b) on gas, including casinghead gas or other gaseous substance, produced from said land 22.5% of the greater of (1) the market value at the wellhead of such gas, paid to Lessor free of all costs and expenses, or (2) the gross proceeds realized from the sale of such gas, free of all costs and expenses, to the first non-affiliated third party purchaser under a bona fide arms length sale or contract. "Gross proceeds" (for royalty payment purposes) shall mean the total monies and other consideration accruing to or paid to the Lessee or received by Lessee for disposition or sale of all unprocessed gas proceeds, residue gas, gas plant products or other products. Gross proceeds shall include, but shall not be limited to advance payments, take-or-pay payments (whether paid pursuant to contract, in settlement or received by judgment) reimbursement for production or severance taxes and any and all other reimbursements or payments.

(c) on all other minerals mined and marketed, 22.5% either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined and marketed, the royalty shall be $6.00 per long ton.

3.2 If any disposition, contract or sale of oil or gas shall include any reduction or charge for the expenses or costs of production, treatment, transportation, manufacturing, process or marketing of the oil or gas, then such deduction, expense or cost shall be added to the market value or gross proceeds so that Lessor's royalty shall never be chargeable directly or indirectly with any costs or expenses other than its pro rata share of severance or production taxes.

3.3 After the end of the primary term, while there is a gas well on this lease or on acreage pooled therewith but gas is not being sold or used, Lessee may pay as royalty to the Lessor at the address set out above on or before ninety (90) days after the date on which (1) said well is shut in, or (2) the land covered hereby or any portion thereof is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein, whichever is the later date, and thereafter at annual intervals, the sum of $75.00 per mineral acre, and if such payment is made or tendered, this lease shall not terminate and it will be considered that gas is being produced from this lease in paying quantities, but if such payment is not made or tendered, this lease shall terminate.

II. The second sentence of Paragraph No. 4 of the Lease, which is set out immediately below, shall be deleted in its entirety:

"Such pooling shall be into a unit or units not exceeding forty (40) acres plus an acreage tolerance of ten percent (10%) thereof for oil, and units not exceeding six hundred forty (640) acres each plus an acreage tolerance of ten percent (10%) thereof for gas, provided that, should governmental authority having jurisdiction prescribe or permit the creation of any drilling, spacing or proration units larger than those specified above, such units may be created or enlarged to conform in size to the drilling or spacing units so prescribed or permitted or to the proration units as may be authorized for obtaining the maximum allowable production from one well."

- 2 -

Confidential

KOOCOP00001051
450

III. Paragraph No. 5 of the Lease shall be deleted in its entirety and replaced with the following:

(a) DRILLING OPERATIONS: If within 30 days prior to the expiration of the primary term or at the expiration of the primary term, Lessee is then engaged in drilling operations on said land or upon lands pooled therewith, this lease shall remain in force only so long as such operations or drilling operations for any additional well(s) are prosecuted on the lease(s) or lands pooled therewith with no cessation of more than 120 consecutive days between the termination of drilling operations of one well and the commencement of drilling operations on a subsequent well, and if such operations result in the production of oil, gas or other mineral, so long thereafter as oil, gas, or other mineral is produced from said land, or from land pooled therewith.

(b) CESSATION OF PRODUCTION/REWORKING OPERATIONS: If, after the expiration of the primary term of this lease and after oil, gas, or other mineral is produced from said land, or from land pooled therewith, the production thereof should cease from any cause and the lease is not otherwise maintained, this lease shall not terminate if Lessee commences drilling operations within 60 days thereafter and continuously conducts drilling operations without cessation thereof for more than sixty (60) days between the termination of drilling operations of a well and the commencement of drilling operations on a subsequent well and if they result in production of oil and/or gas or other mineral, so long thereafter as oil, gas or such other minerals are produced from said land. If within such sixty (60) day period after such cessation of production, Lessee commences reworking operations as opposed to drilling operations, this lease shall not terminate so long as Lessee continuously conducts such reworking operations on such well without cessation thereof for more than sixty (60) days and if such reworking operations on such well results in re-establishment of production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or lands pooled therewith.

(c) Any pooled unit designated by Lessee in accordance with the terms hereof, may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and such well or wells is/are draining the leased premises, or land pooled therewith, Lessee agrees to drill such offset well or wells as a reasonably prudent operator would drill under the same or similar circumstances. Lessee may at any time execute and deliver to Lessor or place of record a release or releases covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the acreage surrendered.

IV. Paragraph 8 of the lease shall be deleted in its entirety and replaced with the following:

8. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. No obligation reasonably to develop the leased premises shall arise during the primary term. Should oil, gas or other mineral in paying quantities be discovered on said premises, then after the expiration of the primary term, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator. If after the expiration of the primary term, Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument.

- 3 -

Confidential

V. Paragraph 9 of the lease shall be deleted in its entirety and replaced with the following:

9. Lessor expressly disclaims any warranty of title to the premises above described. In the event of failure of title, Lessor shall never be required to return any bonus or any other payment made to Lessor under this lease. By acceptance of this Lease, Lessee acknowledges that it has been given full opportunity to investigate and has conducted sufficient investigation to satisfy itself as to the title to the Land, and Lessee assumes all risk of title failures. It is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties and other monies accruing from any part as to which this lease covers than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein.

VI. Paragraph C(d) of the Addendum of the Lease shall be deleted in its entirety and replaced with the following:

(d) Prior to initial construction of each pipeline thereon, Lessee must pay the Lessor $3.00 per foot in length for a sixty-foot (60') wide pipeline right-of-way for installing pipelines necessary for production of any well on the lease premises or on lands pooled therewith, which right-of-way shall reduce to a thirty-foot (30') right-of-way after construction and installation of the pipeline. After installation, replacement, or repair, the area occupied by all buried pipelines shall be backfilled and tamped, and otherwise restored to its condition prior to installation, replacement, or repair, utilizing the "double ditch" method. Lessee must pay Lessor $1,000.00 as a liquidated damage amount for any oak tree damaged or destroyed by Lessee which tree has a trunk diameter over ten inches (10") when measured twenty-four inches (24") from ground level, to be increased $100.00 per inch for each inch in diameter over 10 inches. Prior to commencing surface operations pertaining to any well to be drilled on the lease premises, Lessee must deliver to surface owner a damage payment of $10,000.00 to be applied to the damages to be incurred from such operations (such damages including and associated with the construction of an access road, power line, well pad, reserve pit, fresh water pond and well production facilities as permitted by this lease). Such payment does not preclude Lessee from being liable for the payment of additional damages if such damages exceed $10,000.00.

VII. Paragraph E. of the Addendum to the Lease shall be deleted in its entirety and replaced with the following:

E. MINERAL LIMITATION: It is expressly understood and provided that this lease covers oil and gas and liquid hydrocarbons, along with the products and by-products thereof, but this lease does not cover uranium, fissionable materials or any other minerals of any type, here making particular mention of water, the Lessee herein being given no right to explore for, nor develop any part of the land for production of water therefrom except with regard to producing water to be used solely with regard to Lessee's oil and gas drilling, hydraulic fracture stimulation operations and completion operations upon the leased premises and any such water well must be limited to water production only from those depths below 500 feet below the land surface. Lessee is expressly prohibited from using water from Lessor's wells, creeks and watering places. Notwithstanding anything to the contrary in this lease contained, Lessee shall at all times protect the herein leased land from drainage of oil and gas from wells on adjoining lands.

VIII. Paragraph F of the Addendum to the Lease shall be deleted in its entirety and replaced with the following:

- 4 -

Confidential

KOOCOP00001053
452

F. POOLING LIMITATIONS:

(a) Pooling For Vertical Oil Wells. Notwithstanding anything contained herein to the contrary, pooling of this lease for vertical oil wells as classified by the Texas Railroad Commission is prohibited.

(b) Pooling for Gas Wells and Horizontal Oil Wells. In the event Lessee exercises its option to pool as authorized herein and as limited hereby, the right to pool a vertical gas well or a horizontal gas well is hereby limited to 160 acres plus 10% tolerance as to all horizons from the surface of the ground to a depth of 7,500 feet below the surface of the ground and to 320 acres plus 10% tolerance as to all horizons from 7,500 feet below the surface of the ground to a depth of 10,000 feet below the surface of the ground, and to 640 acres plus 10% tolerance as to all horizons beneath 10,000 feet below the surface of the ground.

The right of Lessee to pool for a horizontal oil well is hereby limited to 160 acres plus 10% tolerance as to all horizons from the surface of the ground to depth of 7,500 feet below the surface of the ground and to 320 acres plus 10% tolerance if completed at a depth of more than 7,500 feet below the surface of the ground provided that an additional eighty (80) acres may be allotted to such well for production purposes for every eight hundred twenty-seven feet (827') of horizontal drainhole displacement (as defined by the Railroad Commission of Texas) over and above 4,000 feet of horizontal drainhole displacement.

(c) Special Field Rules. If at the time of creation of any oil or gas unit comprising all or a part of the herein leased premises special Field Rules of the Railroad Commission of Texas are in effect, Lessee shall have the right to pool all or a part of the herein leased premises only up to the maximum acreage permitted to be assigned to a well in connection with such oil or gas unit under such special Field Rules, but in no event shall such unit or units contain more than the maximum acreage allowed by paragraph F(b).

(d) Additional Horizontal Well Provisions. In exercising the pooling rights granted in this lease applicable to horizontal wells, Lessee shall file of record a written declaration describing the horizontal unit as to the specific leases and acreage to be included therein as well as the vertical limits of the productive horizon or zone and stating the effective date of pooling; however, as to any horizontally completed well, Lessee shall have ninety (90) days from initial completion in which to amend such written designation of unit to increase or decrease the acreage, include or exclude specific leases or tracts as well as redefine the vertical limits of the productive zone, subject to the limitations contained in this lease. If such unit is filed and amended within such period of time, Lessee shall file of record in the county where the lands are located a written declaration describing the revised unit and stating the effective date of revision. To the extent any portion of the leased premises is included in or excluded from the unit by virtue of such revision, the proportion of unit production on which royalties are payable under this paragraph shall be adjusted accordingly as of the effective date for the revised unit, subject to the limitations herein. The effective date of any unit formed for horizontal drainhole wells under this paragraph or any revision thereof shall be the date set forth as the effective date by lessee in the written declaration that is filed of record for such unit or revision thereof.

(e) Termination of Pooling by Lessor. Notwithstanding the decision in Wagner & Brown v. Sheppard, 282 S.W. 3rd 419 (Tex. 2009), or similar authority:

i. Lessee may only exercise the rights to pool the interest of lessor in the land and at the depths leased hereby and only as to the lands and depths as to which this lease has not terminated as of the date such pooling document is filed in the office of the County Clerk of the county where the land leased hereby or any portion is located. Upon partial termination of this lease, as to any portion of the land and/or as to any depths, the rights of Lessee to pool the land and/or

- 5 -

Confidential

KOOCOP00001054
453

depths leased hereunder may be exercised by lessee only for that portion of the land and/or those depths as to which this lease has not terminated.

    ii.    If the leased premises, or a portion thereof, or the interest of the Lessor in part or all of the land described herein is validly pooled with other land to form a unit prior to the partial or complete termination of this lease, upon partial termination of this lease as to area and depths or complete termination of this lease, Lessor may at any time thereafter terminate the pooling and unitization of the Lessor's interest in any portion* of the interest leased herein that has terminated in any such unit, by executing and filing for record in the office of the County Clerk of the county in which the land leased hereby or any portion thereof is located, a document identifying or describing the area and/or depths as to which such pooling is terminated.

    iii.    In no event will lessor be required to bear costs of drilling either before or after this lease has terminated.

IX.    **Paragraph H of the addendum to the Lease shall be deleted in its entirety and replaced with the following:**

H.  NON-POOLED PUGH CLAUSE:  Lessee must within 90 days after the completion of any well on the leased premises which is not pooled under the provisions of Paragraph 4 or Paragraph F hereof, designate in writing and place of record with the County Clerk of the county in which the property is located, a description of that part of the leased premises which shall be allotted ("Allotted Area") to such well for production purposes, the maximum size of such part to be allotted being limited as follows:

    (a)    Vertical Oil Wells: No more than 40 acres plus 10% tolerance to be allotted in and around each well classified as an oil well by the Railroad Commission of Texas if completed at a depth of 10,000 feet or less below the surface nor more than 80 acres plus 10% tolerance if completed at a depth of more than 10,000 feet below the surface.

    (b)    Gas Wells and Horizontal Oil Wells: No more than 160 acres plus 10% tolerance to be allotted in and around each vertical gas well and horizontal gas well if completed at a depth of 7,500 feet or less below the surface of the ground, nor more than 320 acres plus 10% tolerance if completed at a depth of more than 7,500 feet below the surface of the ground, but less than 10,000 feet below the surface of the ground, no more than 640 acres plus 10% tolerance as to all horizons beneath 10,000 feet below the surface of the ground.

No more than 160 acres plus 10% tolerance to be allotted in and around each horizontal oil well if completed at a depth of 7,500 feet or less below the surface of the ground, nor more than 320 acres plus 10% tolerance if completed at a depth of more than 7,500 feet below the surface of the ground provided that an additional eighty (80) acres may be allotted to such well for production purposes for every eight hundred twenty seven feet (827') of horizontal drainhole displacement (as defined by the Railroad Commission of Texas) over and above 4,000 feet of horizontal drainhole displacement.

Production or operations on said Allotted Area by the Lessee shall maintain this lease in effect only with regard to the land within such area. This lease shall terminate at the end of the primary term as to such part or parts of the leased land lying outside the Allotted Area unless this lease is perpetuated as to such land outside the Allotted Area by operations conducted thereon or by production of oil or gas or any such operations and such production in accordance with the provisions hereof.

X.    **Paragraph J. of the addendum of the Lease shall be deleted in its entirety and replaced with the following:**

-6-

Confidential

BURLINGTON RESOURCES OIL & GAS COMPANY LP:

By: BROG GP, Inc., its sole General Partner

By: _____

Name: *Marie B. Carlisle*

Title: Attorney-in-Fact

THE STATE OF TEXAS §
§
COUNTY OF Dewitt §

This instrument was acknowledged before me on this the 27 day of
Dec_____, 2010, by RALPH KOOPMAN and KAREN M. KOENIG as
attorneys-in-fact on behalf of LORENE H. KOOPMANN.

PATRICIA J. BASSETT
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2013

_____
Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF Dewitt §

This instrument was acknowledged before me on this the 27 day of
Dec_____, 2010, by RALPH KOOPMANN.

PATRICIA J. BASSETT
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2013

_____
Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF Dewitt §

This instrument was acknowledged before me on this the 27 day of
Dec_____, 2010, by KAREN M. KOENIG.

PATRICIA J. BASSETT
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2013

_____
Notary Public, State of Texas

- 11 -

Confidential

KOOCOP00001060
459

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

This instrument was acknowledged before me on this the 31 day of
DECember, 2010, by morrie B. Carlisle, the Attorney-in-Fact for BROG GP Inc., a Delaware corporation, the sole General Partner of Burlington Resources Oil & Gas Company LP, a Delaware limited partnership, on behalf of said partnership.

NATHAN ALLAN DIMICELI
Notary Public, State of Texas
My Commission Expires
August 23, 2014

Notary Public, State of Texas

- 12 -

Confidential

J. MINIMUM ROYALTY: If the royalties to be paid under this lease during 12-month periods as described below are less than the sum of $100.00 per acre then leased ("minimum royalty"), and Lessor sends Lessee notice in writing of same, then this lease will terminate at the end of 90 days after Lessee receives written notice from Lessor, unless the Lessee pays to the royalty holders a sum of money equal to the difference between said minimum royalty per acre and the total of all royalty monies on production so paid during the applicable 12-month period. Said 12-month periods are the initial period beginning with the date of first production from the lease premises and each successive 12-month period thereafter. The payments set out in this paragraph do not relieve Lessee of the requirement of production in paying quantities to maintain this lease. Notice as to this paragraph will deemed to be given when it is deposited in the mail, certified, return receipt requested.

XI. The following sentence contained in Paragraph Q.(2) of the addendum of the Lease shall be deleted in its entirety:

"Any later work done on the well will be deemed to be reworking operations."

XII. The following definitions shall be added to Paragraph Q of the Addendum to the lease:

"Horizontal well" shall mean a well having a horizontal drain hole which shall be deviated a minimum of seventy degrees (70°) from the vertical and being a minimum horizontal displacement in the objective formation of one hundred fifty feet (150') in length measured between the point at which the drain hole penetrates the top of the formation to be produced and the end point or terminus of the horizontal drain hole. For the purposes of this provision, "terminus", "horizontal drainhole" and "correlative intervals" shall be defined in accordance with the Rules and Regulations of the Railroad Commission of Texas or other governmental authority having jurisdiction.

"Reworking Operations", "operations for reworking", "commencement of reworking operations" and words of similar import shall have the same meaning, being the actual re-entry into an existing wellbore with equipment capable of re-entering, reworking and/or completing such well and the timely prosecution of such operations in such well bore in good faith toward the re-establishment of production of oil or gas from such previously producing zone or zones."

XIII. Paragraph T of the Addendum to the Lease shall be deleted in its entirety and replaced with the following:

INDEMNIFICATION:
LESSEE AND ITS SUCCESSORS AND ASSIGNS SHALL INDEMNIFY, DEFEND AT ITS SOLE COST AND EXPENSE AND HOLD LESSOR HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, COSTS, CAUSES OF ACTION, SETTLEMENTS, AWARDS, PENALTIES, FEES, ASSESSMENTS, FINES, CHARGES, DEMANDS, LIENS, PUNITIVE DAMAGES, ATTORNEYS FEES, AND JUDGMENTS OF EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, FIXED OR CONTINGENT (COLLECTIVELY, "CLAIMS"), ARISING IN WHOLE OR IN PART OUT OF THE ACTS OR OMISSIONS OF LESSEE, LESSEE'S LICENSEES, CONCESSIONAIRES, SUBCONTRACTORS, OR ANY OTHER PERSON OR ENTITY ACTING BY, THROUGH OR UNDER LESSEE IN CONNECTION WITH ITS OPERATIONS ON AND POSSESSION OF THE LEASED PREMISES, INCLUDING WITHOUT LIMITATION ANY CLAIMS ARISING FROM TORT, PERSONAL INJURY, DEATH, PROPERTY DAMAGE OR NUISANCE, ARISING FROM ANY ACT OR OMISSION OF LESSEE, LESSEE'S LICENSEES, CONCESSIONAIRES, SUBCONTRACTORS, OR

-7-

Confidential

KOOCOP00001056
455

ANY OTHER PERSON OR ENTITY ACTING BY, THROUGH OR UNDER LESSEE. FURTHER, THIS INDEMNITY APPLIES TO THE ABOVE CLAIMS REGARDLESS OF HOW SUCH ARE CAUSED. THIS LEASE SHALL EXPIRE IN ACCORDANCE WITH THE PROVISIONS SET OUT HEREIN, BUT LESSEE'S OR ASSIGNEE'S OBLIGATION TO INDEMNIFY AND HOLD THE INDEMNIFIED PARTIES HARMLESS FOR ACTIONS OCCURRING DURING THE TERM OF THIS CONTRACT SHALL SURVIVE THE TERMINATION OF THIS LEASE. IF LESSEE FAILS OR REFUSES TO FULLY PERFORM IN ACCORDANCE WITH THIS INDEMNIFICATION PROVISION, LESSOR AT LESSOR'S OPTION, AND WITHOUT RELIEVING LESSEE OF LESSEE'S OBLIGATIONS, MAY SO PERFORM, BUT ALL COSTS AND EXPENSES INCURRED BY LESSOR IN THAT EVENT SHALL BE REIMBURSED BY LESSEE TO LESSOR, TOGETHER WITH INTEREST ON THE SAME FROM THE DATE ANY SUCH EXPENSE WAS PAID BY LESSOR UNTIL REIMBURSED BY LESSEE, AT THE RATE OF TWELVE (12) PERCENT PER ANNUM. Lessee and its representatives, and their successors shall not be responsible for or required to defend or indemnify Lessor or its representatives from the Lessor's or its representative's gross negligence or willful misconduct. Lessee must maintain in effect at all times during its operations under this lease a liability insurance policy in an amount of not less than $3,000,000.00 protecting Lessor against all claims arising by virtue of the Lessee's failure to comply with the provisions of this lease, and must furnish Lessor prior to beginning such operations with proof of the existence of such policy. If Lessee's operations under this lease are conducted under the name of Conoco Phillips or one of its affiliates for which Conoco Phillips is responsible, then Lessee may elect to self-insure the aforementioned amount and will provide Lessor with written notice of such election prior to beginning such operations.

XIV.   Paragraph U of the Addendum to the lease shall be deleted in its entirety and replaced with the following:

U. DIVISION ORDER: Neither the Lessee nor any other party disbursing oil or gas royalty as provided under this lease or through agreement of the third party with the Lessee may require Lessor to execute a division order as a requisite for the Lessor being paid royalties with the exception that a division order that provides only a stipulation of the Lessor's royalty interest may be required of the Lessor. Neither this Lease nor any terms or provisions herein shall be altered, amended, extended or ratified by any division order or transfer order executed by Lessor, its successors, agents or assigns, but any division orders or transfer orders shall be for the sole purpose of confirming the extent of Lessor's interest in production of oil and gas from the leased premises. However, to the extent there are interests which purport to burden Lessor's royalty which are in dispute or may, in the future, be disputed, the execution of division orders is not a waiver of the rights to so dispute the interests, nor does such execution in any way ratify, revive, or otherwise approve of any such interests, if any.

XV.    Paragraph W of the Addendum to the lease shall be deleted in its entirety and replaced with the following:

W. SEISMIC OPERATIONS: No authority is herein granted to Lessee to conduct seismic operations unless Lessee pays the surface owner prior to beginning of such operations $35.00 per acre for the entire land above described. After completion of such operations, Lessee must restore the land to its original condition just prior to such operations and must pay the surface owner and any tenants the actual amount of damages arising from such operations. Lessee's right to conduct seismic operations upon the herein leased premises shall be non-exclusive and Lessor hereby reserves the right to grant to third parties, the right to: 1.) conduct seismic operations upon such premises, and 2.) use the data resulting from such seismic operations as such third party deems necessary including but not limited to the marketing/sale of such data. Lessor shall be

- 8 -

Confidential

entitled to all compensation paid by such third parties for the right to conduct seismic operations. Further, this lease shall be subject to the rights of all third parties under any seismic permits which cover all or any part of the herein leased property which may be in effect at the time of the execution of this lease.

XVI. Paragraph X of the Addendum to the lease shall be deleted in its entirety.

XVII. The following provisions shall be added to the lease:

Lessee shall and agrees to never claim, nor seek to secure any of the lands or minerals in the ground covered by this lease by application or claim of any statute of limitations or adverse possession, including, but not limited to any claim under the **Texas Civil Practice and Remedies Code Sections 16.025, 16.026, 16.027 or 16.028,** as now enacted or as may hereinafter be amended. Lessee shall and agrees never to seek to mature limitations title to the oil, gas and related minerals in the ground covered by this lease. The purpose of this provision is to bar any claim of limitations title by Lessee and thus abrogate the application of any theories under which relief was granted in **Natural Gas Pipeline Co. v. Pool,** 124 S.W. 3d 188 (Tex. Sup. 2003), or similar authority. In the event that Lessee should ever file a lawsuit against Lessor wherein it claims that it owns the oil, gas or other minerals or any interest in the lands covered by this lease by reason of any statute of limitation, any interest of Lessee under this lease shall be automatically deemed forfeited and terminated as of the date such lawsuit is filed, and Lessee will thereafter have no interest whatsoever in this Lease or any lands described herein. Lessee **may defend itself in court against claims brought against Lessee and may assert limitations as a defense but in no event may Lessee assert in any form or fashion, adverse possession of Lessor's real property lands or minerals in the ground.**

NOTICE OF TOP LEASE OFFER: If at any time within the primary term of this lease and while the same remains in force and effect, Lessor receives a bona fide offer acceptable to Lessor to enter into an additional lease (top lease) covering all or part of the leased premises, Lessor (without disclosing the terms of such offer) shall notify Lessee in writing that Lessor has received such offer. Lessor agrees that it shall not accept such offer (by the execution of a top lease) until 15 days after Lessor gives notice of the offer to Lessee. Notice as to this paragraph will deemed to be given when it is deposited in the mail, certified, return receipt requested.

PERFORMANCE: Upon the later of the expiration of the primary term, or the extended term by continuous operations, force majeure or other savings clauses, if Lessee has included a portion of the leased lands from this lease into an Allotted Area(s) or pooled unit(s) ("Developed Lands"), but less than all lands from this lease have been included in any such Allotted Area(s) or pooled unit(s), and the lease, as it pertains to such lands remaining unallotted or unpooled ("UnDeveloped Lands") terminates according to the terms of the lease and/or any amendments thereto, Lessee agrees to pay to Lessor a one-time non-performance payment on such UnDeveloped Lands at that rate of $5,000.00 per net mineral acre ("UnDeveloped Lands payment"). Such UnDeveloped Lands Payment shall be due and payable to Lessor, or Lessor's assigns, within 60 days after such partial lease termination. Such payment shall bear interest from the due date (60 days after partial lease termination) until the date of payment thereof at the rate of 12% per annum. No such payment shall be due on any:

1. Developed Lands;

2. Portion of the land covered by this lease within an Allotted Area(s) or pooled unit(s), upon which a well(s) has been drilled, plugged and abandoned as a dry hole. For the purposes of determining the acreage not subject to the Undeveloped Lands Payment under this

- 9 -

Confidential

exception, the maximum amount of leased lands (either Allotted or pooled unit) per dry hole well is 120 acres;

3. Portion of the property leased herein if there is a material title problem with said property;

4. Portion of the herein leased property, if the inability to include such portion of the leased property in a unit is a result of a change in the regulations of the Railroad Commission of Texas or other governmental authority which such change in regulations occurs after the date that any part of the leased premises is lawfully pooled or allotted to any well drilled on said premises.

Lessor agrees to act in good faith to facilitate Lessee in compliance with the foregoing to facilitate proper pooling of Lessor's lands and the drilling of wells.

## XVIII. MISCELLANEOUS

Lessor does hereby adopt, ratify and confirm the Lease and recognizes the full validity of the same, and does hereby GRANT, LEASE, and LET to Burlington Resources Oil & Gas Company LP, its successors and assigns, all of the interest of the said undersigned in the leases premises, subject to and in accordance with all of the terms and conditions set forth in the Lease, as hereby amended.

This Amendment to Oil, Gas, and Mineral Lease shall be binding upon and inure to the benefit of the Lessor and Burlington, and their respective heirs, personal representatives, successors, and assigns.

This instrument may be executed either as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one instrument. Should less than all of the named parties execute this instrument, this instrument shall be binding on those who are signatories.

IN WITNESS WHEREOF, this instrument is executed to be effective as of the date first above written.

LESSOR:

LORENE H. KOOPMANN

By: _____
RALPH KOOPMANN,
Attorney-in-Fact

By: _____
KAREN M. KOENIG,
Attorney-in-Fact

_____
RALPH KOOPMANN

_____
KAREN M. KOENIG

- 10 -

KOOCOP00001059
458

67901

## NOTICE OF EXERCISE OF OPTIONS TO EXTEND MINERAL LEASES

STATE OF TEXAS

COUNTY OF DEWITT

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, BURLINGTON RESOURCES OIL & GAS COMPANY LP, a Delaware limited partnership, whose address is PO Box 2197, Houston, Texas, 77252-2197 (herein referred to as "Lessee") is the owner of those certain oil, gas and mineral leases identified on Exhibit "A" attached hereto and made a part hereof for all purposes (herein referred to as "Mineral Leases"); and

WHEREAS, each of the Mineral Leases provide that the primary term may be extended at any time prior to the expiration of the original primary term period by tendering to the respective lessor(s) the option bonus prescribed in the lease via check or draft tendered to the depository bank named in the lease or mailed to the lessor(s) at the addresses provided in said Mineral Lease (or such other address as lessor may subsequently furnish Lessee via written notice); and

WHEREAS, the Mineral Leases further provide that should the option to extend the primary term be exercised, it shall be considered for all purposes as if the original primary term in each of such Mineral Leases was for a period of five (5) years; and

WHEREAS, Lessee has elected to exercise the option to extend the primary term of each of the Mineral Leases identified in Exhibit "A" attached hereto by tendering payment by check or draft as set forth in said Mineral Leases.

NOW, THEREFORE, Lessee hereby places third parties on notice that it has exercised the option to extend the primary term of the Mineral Leases described on Exhibit "A" attached hereto to a total of five (5) years in each of such leases by tendering the consideration recited in the respective Mineral Leases by check or draft in accordance with the terms, conditions and provisions of the respective Mineral Leases.

IN WITNESS WHEREOF, this Notice of Exercise of Options to Extend Mineral Leases has been executed on this 3rd day of March, 2010.

Burlington Resources Oil & Gas Company LP
by BROG GP Inc., its sole General Partner

By: _____
Mark B. Carlisle, Attorney-in-Fact

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on the 3rd day of March, 2010, by Mark B. Carlisle, Attorney-in-Fact of BROG GP Inc., acting as sole general partner of Burlington Resources Oil & Gas Company LP, a Delaware limited partnership, on behalf of said limited partnership.

My commission expires:
12-11-2010

_____
Notary Public in and for the State of Texas

DENISE DUPLANTIER
MY COMMISSION EXPIRES
December 11, 2010

305486-000

Confidential

KOOCOP00000931

462

Confidential

KOOCOP00000932

EXHIBIT "A"
TO
NOTICE OF EXERCISE OF OPTIONS TO EXTEND MINERAL LEASES

| LEASE NUMBER | LESSOR | EFFECTIVE DATE | ORIGINAL LESSEE | STATE | COUNTY | RECORDING INFORMATION BOOK | PAGE |
|---|---|---|---|---|---|---|---|
| 303680-000 | John Paul Guidry | February 19, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 224 | 296 |
| 303701-000 | Edwin O Rossow et ux | March 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 415 |
| 303750-000 | William Dworaczyk | February 2, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 224 | 288 |
| 303857-000 | Andrew M Hodge | April 9, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 481 |
| 303860-000 | Teddy W Aven et ux | April 18, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 358 |
| 303973-000 | Florian Konczewski et ux | April 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 360 |
| 303974-000 | Herman Konczewski | April 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 353 |
| 304044-001 | Arlen Mueller et ux | March 14, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 495 |
| 304061-000 | Alton Ray Jalufka et ux | February 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 485 |
| 304063-000 | Sarah Aronstein et al | February 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 483 |
| 304065-000 | Lackey Land Limited | February 23, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 489 |
| 304081-000 | Jennie Lynn Hardesty | April 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 362 |
| 304082-000 | Martin Luther Wolter et ux | April 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 366 |
| 304083-000 | Leona Riedesel | January 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 487 |
| 304150-000 | Granberry Partners LTD | April 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 364 |
| 304155-000 | Bargmann Family Trust | February 14, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 501 |
| 304156-000 | Bargmann Family Trust | February 14, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 499 |
| 304160-000 | L C Thiele et ux | February 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 270 | 406 |
| 304219-000 | Johanna Wild | May 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 374 |
| 304220-000 | Jerome R Wild et ux | May 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 417 |
| 304222-000 | Robert H Meischen et ux | April 30, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 225 | 793 |
| 304224-000 | Robert T Meischen et al | April 30, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 229 | 38 |
| 304226-000 | Virginia Willmeth | May 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 357 |
| 304227-000 | Robert T Meischen et ux | April 30, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 225 | 789 |
| 304228-000 | Robert T Meischen etux | April 30, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 225 | 791 |
| 304234-000 | Paul V Gray et ux | May 8, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 423 |
| 304246-000 | Clifford Dwayne Parker et ux | July 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 722 |
| 304252-000 | Arthur Garrett Miller et ux | April 25, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 418 |
| 304253-000 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 226 | 895 |
| 304254-000 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 228 | 894 |
| 304255-001 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 225 | 893 |

Confidential

KOOCOP0000000933

| 304255-002 | Daoline Harms | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 229 | 037 |
|---|---|---|---|---|---|---|---|
| 304256-000 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 243 | 846 |
| 304260-000 | Rinehold Borchardt | May 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 889 |
| 304262-001 | Otto Lee Koenning | May 29, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 421 |
| 304262-002 | Margie Ann Dickerson | May 29, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 419 |
| | | | | | | 236 | 374 |
| | | | | | | 236 | 376 |
| 304280-000 | Darvin Mueller et al | May 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 378 |
| 304318-000 | Cody Jalufka | April 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 370 |
| 304327-000 | Hollis Baker | March 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 507 |
| 304328-000 | Jerry Wayne Schrniedlin et ux | February 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 505 |
| 304329-000 | Karen Kay Lukes | March 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 509 |
| 304331-000 | Alton Ray Jalufka et ux | March 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 503 |
| 304415-000 | Michael P Klein et ux | June 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 452 |
| 304531-000 | Rinehold Borchardt et al | May 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 841 |
| 304581-000 | Bennie Drabek et ux | June 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 725 |
| 304583-000 | Leon J Respondek et ux | June 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 727 |
| 304584-000 | Leon J Respondek et ux | June 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 729 |
| 304585-000 | Frances Warzecha | June 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 724 |
| | | | | | | 233 | 720 |
| | | | | | | 233 | 721 |
| 304589-000 | L C Sievers et al | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 766 |
| 304699-000 | Eugene Ibrom | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 737 |
| 304700-000 | Robert Lee Ibrom et ux | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 741 |
| 304701-000 | Hollis O Baker | July 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 743 |
| 304702-000 | David Ibrom et ux | July 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 716 |
| 304703-000 | Catherine Kolodziejcyk et vir | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 745 |
| 304705-000 | Robert Lee Ibrom | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 735 |
| 304707-000 | Daniel Ibrom et ux | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 739 |
| 304709-000 | Patricia Gail Ibrom et vir | July 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 714 |
| 304710-000 | Shirley R Crain | July 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 758 |
| 304711-000 | Melvin Straube et ux | July 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 750 |
| 304723-000 | Marvin C Koopmann | July 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 754 |
| 304771-001 | Frank Kulik et ux | July 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 733 |
| 304772-000 | Warren Lemke et ux | July 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 760 |
| 304783-000 | Robert Edward Motl etal | July 23, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 833 |
| 304842-000 | Alvin Stanchos Jr | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 756 |

464

Confidential

KOOCOP0000934

| 304865-000 | Isabell Ann Van Beveren | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 752 |
|---|---|---|---|---|---|---|---|
| 304868-000 | James Jendry | August 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 384 |
| | | | | | | 233 | 762 |
| 304870-001 | David Erler et al | August 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 764 |
| 304871-001 | Michael R Grunder et al | November 29, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 852 |
| 304885-000 | Carolyn S Welbye | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 747 |
| 304886-000 | David A Stubblefield et ux | September 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 437 |
| 304887-000 | Elna Biggs | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 234 | 392 |
| 304888-000 | Barbara J Stubblefield | September 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 435 |
| 304888-001 | Alton R Cielencki et ux | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 407 |
| 304893-000 | Marcellus W Weischwill Residuary Trust | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 400 |
| 304909-000 | Loretta Fay Burge | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 396 |
| 304911-000 | Scott Straube | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 749 |
| 304922-000 | David A Ibrom et ux | July 31, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 405 |
| 304929-000 | Morres M Van Beveren et ux | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 718 |
| 304944-000 | Barbara Thedin | October 18, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 858 |
| 304945-000 | Charles T Hahn et ux | August 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 411 |
| 304949-000 | Eugene James Ibrom | August 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 409 |
| 304950-000 | Leon James Srubar Jr etal | August 8, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 830 |
| 304951-001 | Rueben Wayne Thamm et ux | August 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 402 |
| 304956-000 | Irene Hahn | August 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 447 |
| 304958-000 | Kermit C Koehler etux | September 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 386 |
| 304959-001 | Steven D Scott et ux | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 388 |
| 305000-000 | Troy H Stuart et al | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 398 |
| 305228-000 | Jose G Perez et ux | September 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 445 |
| 305230-001 | Patricia Ann Shockley | August 8, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 449 |
| 305232-000 | Phil E Mueller et ux | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 390 |
| 305234-000 | Hilmer E Koopmann et al | September 4, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 827 |
| 305235-000 | Robert G Watson et ux | September 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 413 |
| 305236-000 | Raymond W Pawlik Jr | September 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 380 |
| 305245-000 | Karen B Robinson | September 24, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 819 |
| 305248-000 | Edwin A Baros | September 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 826 |
| 305258-000 | Hilmer E Koopmann | September 4, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 812 |
| 305260-001 | Elizabeth C Connors | August 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 433 |
| 305260-002 | Catherine Clark Ralston | August 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 431 |
| 305261-001 | Richard H Borchard Jr | August 28, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 394 |
| 305262-001 | Ralph Borchard et ux | August 28, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 443 |

465

Confidential

KOOCOP0000000935

| 305309-000 | Isabella Nelson Barrett | October 4, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 818 |
| 305310-000 | Kendrick W Baros et ux | September 24, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 825 |
| 305311-000 | Cecil M Davidson et ux | September 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 429 |
| 305312-000 | Quentin L Yancey et ux | October 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 808 |
| 305313-000 | Merelon Lovel et ux | September 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 382 |
| 305314-000 | Martin Alvarez Castillo etux | November 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 867 |
| 305317-001 | David A Wright and wife Patricia Wright | September 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 441 |
| 305328-000 | Huebner Trust | September 24, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 806 |
| 305331-000 | Marvin Stanchos | September 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 811 |
| 305370-001 | Michele Maraldo et al | September 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 427 |
| 305374-000 | Fred C Hughes et ux | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 829 |
| 305384-000 | Isabell Ann Van Beveren | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 815 |
| 305387-000 | Jerry McAdams et ux | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 865 |
| 305392-000 | Marjorie Breeden et al | October 25, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 854-855 |
| 305393-000 | Marjorie Breeden et al | October 25, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 860 |
| 305466-001 | David L Urban | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 810 |
| 305466-002 | Wayne D Urban | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 809 |
| 305469-001 | Donald Jansky et ux | September 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 804 |
| 305471-001 | Joel P Smith et ux | October 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 816 |
| 305480-000 | Karen Koopmann Koenig | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 875 |
| 305482-000 | Ralph Koopmann | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 874 |
| 305486-000 | Lorene H Koopmann | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 876 |
| 305518-000 | Sandra Hilbrich et al | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 872 |
| 305530-000 | Elenora Klaevemann | October 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 862 |
| 305533-000 | Kent Edward Hibrich et ux | November 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 865 |
| 305534-001 | Elenora Klaevemann | October 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 891 |
| 305545-000 | Lois B Chesney | September 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 238 | 291 |
| 305598-000 | Ameila Ortiz | October 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 832 |
| 305603-000 | Elna Biggs | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 234 | 394 |
| 305616-000 | Michael Anthony Maron | October 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 238 | 268 |
| 305631-000 | Carl H Schlenker Jr Estate | October 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 879 |
| 305632-000 | Harland Schlenker et al | October 26, 2007 | Hawke Enterprisees | TEXAS | DE WITT | 243 | 869 |
| 305635-000 | Harland Schlenker et ux | October 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 871 |
| 305678-000 | Jeanne E Guerriero | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 877 |
| 305774-000 | G W Lamb III et ux | November 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 856 |
| 305787-001 | George Lowman | November 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 897 |
| 305787-002 | Hedy Stakes | November 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 895 |

466

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 305787-003 | Edwin Earl Gaida | November 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 893 |
| 305932-001 | Clifford Dwayne Parker et ux | July 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 723 |
| 305932-002 | James K Crain et al | December 19, 2007 | Hawke Enterprises | TEXAS | DE WITT | 267 | 252 |
| 305939-000 | W T Mumme et ux | November 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 886 |
| 306048-001 | Debbie Lynn Hileman | November 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 885 |
| 306049-000 | Melvin R Hilbrich et ux | November 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 839 |
| 306220-000 | Johanna Wild | May 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 372 |
| 306925-001 | Robert L Zaiontz | December 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 252 | 351 |

TOGETHER WITH ALL AMENDMENTS, RATIFICATIONS, CORRECTIONS AND/OR MODIFICATIONS OF THE OIL, GAS AND MINERAL LEASES DESCRIBED HEREIN

677901

Filed for Record
This, the 4th day of March 20 10
at 3:20 o'clock P M
ELVA PETERSEN, COUNTY CLERK OF
DeWitt County, Texas

Deputy

Return: Dolphin Resources

STATE OF TEXAS
COUNTY OF DEWITT

I hereby certify that this instrument was filed on the date & time stamped hereon by me & was duly recorded in the Volume & Page of the Official Public Records of DeWitt Co. Texas
Date
ELVA PETERSEN COUNTY CLERK
By
Vol 305 Page 12-19

5 of 5

KOOCOP00000936

79812

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER

## RATIFICATION OF OIL, GAS AND MINERAL LEASE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DEWITT | § |

THAT WHEREAS, Lorene H. Koopmann, as Lessor, did execute and deliver to Hawke Enterprises, as Lessee, a Paid-Up Oil, Gas and Mineral Lease dated October 22, 2007, a Memorandum of which is recorded in Volume 243, Page 876, Official Records, DeWitt County, Texas, covering the following described tract of land:

120 acres of land, more or less, being a part of Section no. 13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, and being the same land described as 'Tract No. One' and Tract No. Two' in that certain Deed dated December 27, 1996, from Lois Strieber, individually and as Independent Executrix of the Estate of Jerry Strieber, deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, recorded in Volume 14, Page 425, Official Records, DeWitt County, Texas.

(hereinafter referred to as the "Lease")

Reference to the Lease and the record of the Memorandum thereof being here made for all purposes and

WHEREAS, the Lease was assigned to Burlington Resources Oil & Gas Company, LP in an Assignment dated effective January 9, 2008, recorded in Volume 250, Page 822, Official Records, DeWitt County, Texas;

WHEREAS, the lease was extended in a Notice of Exercise of Options to Extend Mineral Leases dated March 3rd, 2010, which is recorded in Volume 305, Page 12, Official Records, DeWitt County, Texas; and

WHEREAS, it is the desire of Lois Strieber hereto to adopt, ratify and confirm said Lease, as amended.

NOW, THEREFORE, in consideration of the premises and other valuable consideration, the receipt of which is hereby acknowledged, I, LOIS STRIEBER, do hereby ADOPT, RATIFY and CONFIRM the Lease, as amended, in all of its terms and provisions, and do hereby LEASE, GRANT, DEMISE and LET unto the said Burlington Resources Oil & Gas Company, LP, its successors and assigns subject to and in accordance with all of the terms and provisions of said Lease, as amended, as fully and completely as if I had originally been named as a Lessor in the Lease and had executed, acknowledged and delivered the same. And I do hereby agree and declare that the Lease, as amended, in all of its terms and provisions is binding on me and is a valid and subsisting oil, gas and mineral lease.

Executed this 27 day of January 2011.

_Lois Strieber_
Lois Strieber

Ratification of Oil Gas Mineral Lease

30 54 86/000

Confidential                    KOOCOP00000946

469

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## ROYALTY DEED

STATE OF TEXAS      )

                        )    KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DEWITT   )

That I, Lois Strieber, hereinafter "Grantor", P.O. Box 458, Yorktown, TX 78164, DeWitt County, Texas, for and in consideration of Ten and No/100 Dollars ($10.00) and other good, valuable, and sufficient consideration to me, the receipt and sufficiency of which is hereby acknowledged,

Herein grants, sells, and conveys, unto Burlington Resources, Oil & Gas Company LP, a Delaware limited partnership, whose address is 600 North Dairy Ashford, Houston, TX 77079, hereinafter "Grantee", sixty percent (60%) of Grantor's interest in the royalties derived by Grantor from the production of oil, gas, casinghead gas, gasoline, distillate and condensate produced from the following described lands or lands pooled therewith:

Tract One. All that certain lot, tract, and/or parcel of land, lying and being situated in DeWitt County, Texas, West of the Guadalupe River, being a part of Section No. 13, Indianola Railroad Company Survey conveyed by V. Weldon to Henry Grube, by deed dated November 20, 1890, recorded in Volume 33, Pages 38-40, Deed Records of DeWitt County, Texas; and conveyed to Lina Mueller, nee Grube, by Henry Grube by deed dated March 24, 1905, and by August Grube, and William Grube, by deed dated September 25, 1905, and by Adolph Grube and Christian Grube, by deed dated November 22, 1905, all of said deeds being of record in the Deed Records of DeWitt County, Texas; said tract of land being described by metes and bounds as follows, to-wit:



BEGINNING at the most northern corner of the W.F. Afflerbach 100 acres tract of land on the northeast line of Section No. 19, and the southwest line of Section 13;

THENCE North 25 degrees East 658 varas to a stake;

THENCE South 65 degrees East 594 varas to a stake;

THENCE South 25 degrees West 958 varas to a stake on the southwest line of Section 13, and the northeast line of Section 19, the most eastern corner of W.F. Afflerbach's land;

THENCE NORTH 65 DEGREES West 594 varas to the place of beginning, containing 100 acres of land, more or less, and being the same property described in deed from Henry G. Afflerbach et al to Martha E. Hoepken, dated March 17, 1956, recorded in Volume 137, Page 612, Deed Records of DeWitt County, Texas and being the same property described in deed from Marth E. Hoepken et vir to Jerry Strieber et ux, dated October 15, 1969, recorded in Volume 179, Page 220, Deed Records of DeWitt County, TX.

Tract Two. All that certain lot, tract and/or parcel of land, lying and being situated in DeWitt County, Texas, a part of the Section 13, Indianola R.R. Co. Survey, and a part of the 100.8 acres tract of land conveyed to G. W. Afflerbach by John F. Kubala et ux, Theresa Kubala, by deed dated August 4, 1919, recorded in Volume 63, Page 4, Deed Records of DeWitt County, Texas and described as follows, to-wit:

BEGINNING at a stake, the east corner of the 100.8 acre tract, being the north corner of the G.W. Afflerbach 100 acre tract;

THENCE North 65 degrees west 118.3 varas to a stake, the north corner of this tract and the East corner of the Emil Borchardt, 80.8 acres tract;

THENCE South 25 degrees West 953.3 varas to a stake for corner;

THENCE South 65 degrees East 118.3 varas to a stake, the west corner of the 100 acre tract belonging to G.W. Afflerbach;

THENCE North 25 degrees East 953.3 varas to the place of BEGINNING, containing 20 acres of land, more or less, being the same tract described in deed from Henry G. Afflerbach et al dated March 17, 1956, recorded in Volume 137, Page 611, Deed

Confidential

Records of DeWitt County, Texas, and being the same property described in deed from Meta A. and Herman A. Riedesel to Jerry and Lois Strieber, dated October 20, 1969, recorded in Volume 179, Page 313, Deed Records of DeWitt County, Texas.

This conveyance is made and accepted expressly subject to the terms of any valid and subsisting oil, gas and mineral lease or leases covering the lands made prior to the date of this Royalty Deed, but covers the interest in royalties described above of all such oil, gas, casinghead gas, gasoline, distillate and condensate due and to be paid under the terms of any such lease or leases as a royalty interest. Notwithstanding the foregoing, it is expressly understood that the provisions of this paragraph shall not have the effect of reviving, ratifying or admitting any such lease or leases that may have heretofore terminated in whole or in part, nor of estopping the Grantee herein from asserting the invalidity or termination of any such prior oil, gas and mineral lease or leases.

Grantor agrees to execute and deliver to Grantee all such other additional assignments, notices, division orders, transfer orders, and other documents and to do all such other and further acts and things as may be necessary to more fully and effectively assign and convey to Grantee the rights, titles, interests, and estates in the royalty conveyed hereby or intended so to be.

To have and to hold, the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the Grantee, its heirs and assigns, forever. This Royalty Deed is made without warranty of title, express or implied. Grantee represents, confirms, and warrants to Grantor that the acquisition and acceptance of this Royalty Deed by Grantee is based upon Grantee's independent investigation and determination of the economic potential, quantity, and value, if any, of any oil and gas that may be a part of the above described premises, and that Grantee has not and is not relying upon any statement, information, or representation that may have been made or given by Grantor in any manner pertaining to such matters.

WITNESS my hand this 16th day of August, 2011.

GRANTOR

Lois Strieber

GRANTEE

BURLINGTON RESOURCES OIL & GAS COMPANY LP
By: BROG GP INC., its sole General Partner

By: _____
Name: David W. Twomey
Title: Attorney-in-Fact

Confidential

ACKNOWLEDGMENTS

STATE OF TEXAS                                    §
        Nueces                                    §
COUNTY OF DEWITT                                  §

This instrument was acknowledged before me on the _16th_ day of _August_, 2011, by Lois Strieber.

[seal]

TRISH HOYT
Notary Public
STATE OF TEXAS
My Comm. Exp. 07-31-2015

_Trish Hoyt_
Notary Public, State of Texas
_____
Typed or Printed Name of Notary
Notary's Commission expires: _____

STATE OF TEXAS                                    §
                                                  §
COUNTY OF _Harris_                                §

This instrument was acknowledged before me on the _18th_ day of _August_, 2011, by David W. Twomey, Attorney-in-Fact of BROG GP, Inc., as sole general partner of Burlington Resources Oil & Gas Company LP, a Delaware limited partnership, on behalf of the partnership.

[seal]

NICOLE MARUCCI
MY COMMISSION EXPIRES
AUGUST 27, 2011

_Nicole Marucci_
Notary Public, State of Texas
_Nicole marucci_
Typed or Printed Name of Notary
Notary's Commission expires: _8/27/2011_

Confidential

KOOCOP00001020
473

# ConocoPhillips

## INTEROFFICE CORRESPONDENCE

REAL PROPERTY AUM#

805321 JAN 23 1.

TO:    Cindy D. Blevins
810G POB
Bartlesville

SUBJECT:    Check one

| New Contract Setup | |
|---|---|
| Maintenance | |
| Data Filing | X |

FROM:    Sheryl Kohl

DATE: 12.16.11

AGREEMENT NO.: 305486.000

TYPE OF AGREEMENT: Royalty Deed

PARTIES: Lorene H. Koopmann.

PROSPECT NO: AA5009  PROSPECT NAME: Eagle Ford

COUNTY: DeWitt               STATE: TX

WELL NAME(S): N/A

PROPERTY NUMBER: N/A

REMARKS: for

THANKS.

PLEASE ACKNOWLEDGE RECEIPT OF THIS PACKAGE BY SIGNING IN THE
SPACE BELOW AND RETURNING THIS LOG TO THE SENDER.

RECEIVED BY: _____ DATE: 1-26-2012

Confidential

KOOCOP00001021
474

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## ROYALTY DEED

STATE OF TEXAS     )

                 )     KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DEWITT     )

That I, Lois Strieber, hereinafter "Grantor", P.O. Box 458, Yorktown, TX 78164, DeWitt County, Texas, for and in consideration of Ten and No/100 Dollars ($10.00) and other good, valuable, and sufficient consideration to me, the receipt and sufficiency of which is hereby acknowledged,

Herein grants, sells, and conveys, unto Burlington Resources, Oil & Gas Company LP, a Delaware limited partnership, whose address is 600 North Dairy Ashford, Houston, TX 77079, hereinafter "Grantee", sixty percent (60%) of Grantor's interest in the royalties derived by Grantor from the production of oil, gas, casinghead gas, gasoline, distillate and condensate produced from the following described lands or lands pooled therewith:

Tract One: All that certain lot, tract, and/or parcel of land, lying and being situated in DeWitt County, Texas, West of the Guadalupe River, being a part of Section No. 13, Indianola Railroad Company Survey conveyed by V. Weldon to Henry Grube, by deed dated November 20, 1890, recorded in Volume 33, Pages 38-40, Deed Records of DeWitt County, Texas; and conveyed to Lina Mueller, nee Grube, by Henry Grube by deed dated March 24, 1905, and by August Grube, and William Grube, by deed dated September 25, 1905, and by Adolph Grube and Christian Grube, by deed dated November 22, 1905, all of said deeds being of record in the Deed Records of DeWitt County, Texas; said tract of land being described by metes and bounds as follows, to-wit:

BEGINNING at the most northern corner of the W.F. Afflerbach 100 acres tract of land on the northeast line of Section No. 19, and the southwest line of Section 13;

THENCE North 25 degrees East 958 varas to a stake;

THENCE South 65 degrees East 594 varas to a stake;

THENCE South 25 degrees West 958 varas to a stake on the southwest line of Section 13, and the northeast line of Section 19, the most eastern corner of W.F. Afflerbach's land;

THENCE NORTH 65 DEGREES West 594 varas to the place of beginning, containing 100 acres of land, more or less, and being the same property described in deed from Henry G. Afflerbach et al to Martha E. Hoepken, dated March 17, 1956, recorded in Volume 137, Page 612, Deed Records of Dewitt County, Texas and being the same property described in deed from Marth E. Hoepken et vir to Jerry Strieber et ux, dated October 15, 1969, recorded in Volume 179, Page 220, Deed Records of DeWitt County, TX.

Tract Two: All that certain lot, tract and/or parcel of land, lying and being situated in DeWitt County, Texas, a part of the Section 13, Indianola R.R. Co. Survey, and a part of the 100.8 acres tract of land conveyed to G.W. Afflerbach by John F. Kubala et ux, Theresa Kubala, by deed dated August 4, 1919, recorded in Volume 83, Page 4, Deed Records of DeWitt County, Texas and described as follows, to-wit:

BEGINNING at a stake, the east corner of the 100.8 acre tract, being the north corner of the G.W. Afflerbach 100 acre tract;

THENCE North 65 degrees west 118.3 varas to a stake, the north corner of this tract and the East corner of the Emil Borchardt, 80.8 acres tract;

THENCE South 25 degrees West 953.3 varas to a stake for corner;

THENCE South 65 degrees East 118.3 varas to a stake, the west corner of the 100 acre tract belonging to G.W. Afflerbach;

THENCE North 25 degrees East 953.3 varas to the place of BEGINNING, containing 20 acres of land, more or less, being the same tract described in deed from Henry G. Afflerbach et al dated March 17, 1956, recorded in Volume 137, Page 611, Deed

305486/000

Records of DeWitt County, Texas, and being the same property described in deed from Meta A. and Herman A. Riedesel to Jerry and Lois Strieber, dated October 20, 1969, recorded in Volume 179, Page 313, Deed Records of DeWitt County, Texas.

This conveyance is made and accepted expressly subject to the terms of any valid and subsisting oil, gas and mineral lease or leases covering the lands made prior to the date of this Royalty Deed, but covers the interest in royalties described above of all such oil, gas, casinghead gas, gasoline, distillate and condensate due and to be paid under the terms of any such lease or leases as a royalty interest. Notwithstanding the foregoing, it is expressly understood that the provisions of this paragraph shall not have the effect of reviving, ratifying or admitting any such lease or leases that may have heretofore terminated in whole or in part, nor of estopping the Grantee herein from asserting the invalidity or termination of any such prior oil, gas and mineral lease or leases.

Grantor agrees to execute and deliver to Grantee all such other additional assignments, notices, division orders, transfer orders, and other documents and to do all such other and further acts and things as may be necessary to more fully and effectively assign and convey to Grantee the rights, titles, interests, and estates in the royalty conveyed hereby or intended so to be.

To have and to hold, the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the Grantee, its heirs and assigns, forever. This Royalty Deed is made without warranty of title, express or implied. Grantee represents, confirms, and warrants to Grantor that the acquisition and acceptance of this Royalty Deed by Grantee is based upon Grantee's independent investigation and determination of the economic potential, quantity, and value, if any, of any oil and gas that may be a part of the above described premises, and that Grantee has not and is not relying upon any statement, information, or representation that may have been made or given by Grantor in any manner pertaining to such matters.

WITNESS my hand this __16th__ day of August, 2011.

GRANTOR

Lois Strieber

_Lois Strieber_

GRANTEE

BURLINGTON RESOURCES OIL & GAS COMPANY LP
By: BROG GP INC., its sole General Partner

By: _____
Name:    David W. Twomey
Title:    Attorney-in-Fact

Confidential

KOOCOP00001023
476

ACKNOWLEDGMENTS

STATE OF TEXAS §
COUNTY OF ~~DEWITT~~ Nueces §
§

This instrument was acknowledged before me on the 16th day of August, 2011, by Lois Strieber.

[seal]


TRISH HOYT
Notary Public
STATE OF TEXAS
My Comm Exp 07-31-2015

_____
Notary Public, State of Texas

_____
Typed or Printed Name of Notary
Notary's Commission expires. _____

STATE OF TEXAS §
COUNTY OF Harris §
§

This instrument was acknowledged before me on the 18th day of August, 2011, by David W. Twomey, Attorney-in-Fact of BROG GP, Inc., as sole general partner of Burlington Resources Oil & Gas Company LP, a Delaware limited partnership, on behalf of the partnership.

[seal]

NICOLE MARUCCI
MY COMMISSION EXPIRES
AUGUST 27, 2011

_____
Notary Public, State of Texas
Nicole Marucci
Typed or Printed Name of Notary
Notary's Commission expires. 8/27/2011

79555

Filed for Record
This, the 23 day of Aug 20 11
at 2:15 o'clock P. M

NATALIE CARSON, COUNTY CLERK OF
DeWitt County, Texas

_____
DEPUTY
Michelle Colaninni

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument was filed on the date & time stamped hereon by me & was duly recorded in the Volume & Page of the Official Public Records of DeWitt Co. Texas.
Date AUG 2 3 2011
NATALIE CARSON, COUNTY CLERK
BY _____
Vol _____ Page _____

**Confidential**

KOOCOP00001024

**ConocoPhillips**

Diane Schaenen, CPL
Staff Landman — North Eagleford Asset Team
Gulf Coast Business Unit
3WL-5012
P.O. Box 2197
Houston, TX 77252-2197
Phone: 832.486.3922    Fax: 832.486.2296

December 7, 2011

Ralph Koopmann, Individually and as A-I-F for Lorene Koopmann
774 Stanchos Road
Yorktown, TX 78164

Karen M. Koenig, Individually and as Attorney in-Fact for Lorene Koopmann
3489 State Hwy 72 W.
Cuero, TX 77954

Lois Strieber
P.O. Box 458
Yorktown, TX 78164

Re:    Shut-In Royalty Payment
       Lackey Unit A #1 well
       DeWitt County, TX

Ladies and Gentlemen:

Burlington Resources Oil & Gas Company LP ("Burlington") recently drilled the captioned well in DeWitt County, TX. The well was spudded on October 30, 2011, and the drilling rig was released approximately November 28, 2011  We anticipate beginning a frac job on the well December 11, 2011, which will last four days. Subsequent to frac'ing the well, we will flare it for two days to establish commercial production.

The spacing unit for said well includes an oil, gas and mineral lease from Lorene H. Koopmann to Hawke Enterprises dated October 22, 2007.

The deed from Lois Strieber to Gilbert and Lorene Koopmann requires commercial production on or before December 27, 2011 or the interest retained by Mrs. Strieber reverts to Mrs. Koopmann. However, the deed also provides for the payment of shut-in royalties.

We are tendering shut-in royalties to ensure that all parties' interest, if any, in the well is maintained.

Consequently, we are enclosing checks for all of you which constitute shut-in royalty payments and conform to the terms of the deed from Mrs. Strieber to Mr. and Mrs. Koopmann. We anticipate that the Lackey Unit A #1 well will be producing first quarter 2012.

Sincerely,

Diane Schaenen

Encl.

**Confidential**



Riley Nelson
ConocoPhillips Company
Land-Gulf Coast
P. O. Box 2197
Houston, TX 77252-2197
Office: (832) 486-6406
Fax:   (918) 661-6172
Riley.G.Nelson@ConocoPhillips.com

February 1, 2010

Lorene Koopmann
405 Fm 108
Yorktown, TX 78164

Re:  Notice of Assignment of Interest in
     Oil, Gas and Mineral Lease
     Dated 10/22/2007
     Recorded in De Witt County, Texas
     *Lse # 305486-000*

Dear Lessor:

Reference is made to that certain Oil, Gas and Mineral Lease ("Lease") dated 10/22/2007, between you and Hawke Enterprises, which Lease is now owned by Burlington Resources Oil & Gas Company LP ("Burlington"), an affiliate of ConocoPhillips Company.

Per the terms of the Lease, we are providing notice of an Assignment of Overriding Royalty Interest ("ORRI") in said Lease from Burlington to Texas Crude Energy, Inc., whose address is 2803 Buffalo Speedway Houston, Texas 77098, effective December 1, 2008. This ORRI is carved out of Burlington's working interest in your Lease, and does not affect your royalty interest designated in said Lease in any way.

A copy of said Assignment is included for your own personal records.

If you have any further questions, please feel free to contact me.

Sincerely,

Riley Nelson
Landman

Encl.

**Confidential**

**KOOCOP00000904**
480

| | |
|---|---|
| From: | Alstrom, Tuff B |
| Sent: | Wednesday, October 19, 2011 9:28 AM |
| To: | Gingerich, Todd R |
| Subject: | FW: Lackey Unit A #1 well     A717077     DeWitt County, TX |

Go ahead and put this one on your calendar as well.

Tuff Alstrom
(918) 661-0323

| | |
|---|---|
| From: | Schaenen, Diane |
| Sent: | Wednesday, October 19, 2011 9:21 AM |
| To: | Alstrom, Tuff B |
| Subject: | RE: Lackey Unit A #1 well     A717077     DeWitt County, TX |

Absent production or a shut-in payment, the Royalty Deed expires 12-27-11. I thought if we paid it on or about the 1st of December, it might be a nice Christmas present for the Striebers, and might take away some of the sting from the Koopmann's, who were expecting to receive the entire 22.5% royalty.

Also, the well should be drilled (but not completed) by December 1. If we pay the Koopmann's sooner than that, they might be inclined to fight the language in the deed requiring wells capable of "commercial production". I don't want to fight that battle any sooner than I have to!

Thanks very much for your attention to this matter!

Diane

| | |
|---|---|
| From: | Alstrom, Tuff B |
| Sent: | Wednesday, October 19, 2011 9:14 AM |
| To: | Schaenen, Diane |
| Subject: | RE: Lackey Unit A #1 well     A717077     DeWitt County, TX |

Diane, we can take care of this with no problem. Do you know when the payment is actually due? We can make it anytime but if you are wanting to wait until December we can do that too.

Tuff Alstrom
(918) 661-0323

| | |
|---|---|
| From: | Thomas, Sharla L. |
| Sent: | Wednesday, October 12, 2011 11:49 AM |
| To: | Schaenen, Diane |
| Cc: | Alstrom, Tuff B |
| Subject: | FW: Lackey Unit A #1 well     A717077     DeWitt County, TX |

Diane-
Tuff Alstrom with our RPA- Property Maintenance group pays the rentals, shut-ins etc on the Eagle Ford wells. Via this response I have copied Tuff with your request.

Best Regards,
*Sharla Thomas*
Division Order Advisor - Eagle Ford
ConocoPhillips Company-Real Property Administration

1

**Confidential**

PO Box 7500 Bartlesville OK 74005-7500
Phone: 918.661.0522 FAX 918.662.3559 sharla.l.thomas@conocophillips.com

| From: | Schaenen, Diane |
|---|---|
| Sent: | Wednesday, October 12, 2011 11:17 AM |
| To: | Thomas, Sharla L |
| Subject: | Lackey Unit A #1 well    A717077    DeWitt County, TX |

Sharla -

We anticipate spudding this well on October 23, 2011. I'm attaching a copy of the permit plat for the well. Tract 4 covers an oil & gas lease from Lorene H. Koopmann. Mrs. Koopmann and her now deceased husband received their interest in a gift royalty deed dated December 27, 1996, wherein Lois Steiber (Grantor) reserved 50% of the royalties (NPRI). Absent commercial production, the deed expires December 27, 2011, and 100% of the royalties will vest in Lorene H. Koopmann.

Mrs. Strieber has assigned 60% of her 50% of the royalties to COP, with the understanding that we will get a well down and producing in compliance with the gift deed, such that they don't lose their royalty interest on December 27, 2011.

We won't have the well producing in paying quantities by December 27, 2011. However, the gift deed provides for shut-in royalties. Consequently, could you please put a reminder on your calendar to pay Lorene H. Koopmann (& her family) and Lois Strieber a shut-in royalty on December 1. The lease provides for $250/net mineral acre shut-in payment, & the lease covers ~ 120 acres. Consequently, payment to Lorene Koopmann (& her family) would be $1500, payment to Lois Strieber would be $960, and the 60% of 50% would be net to COP. The other leases in the unit don't expire until next year, and we anticipate the well being on line at that point.

I'm attaching a copy of the ownership portion of the August 25, 2011 drilling title opinion for this lease for your information, as well as a copy of the Royalty Deed from Lois Strieber to COP. If there's anything more you need from me, please let me know.

I'll put a copy of this e-mail on my calendar for December 1, and we can communicate further on that date, if necessary.

Thanks so much for your assistance in this matter. Please let me know if you have any questions.

Diane

<< File: 2011101211110988.pdf >>   << File: 2011101211111765.pdf >>   << File: 2011101211150072.pdf >>

2

**Confidential**

## Gingerich, Todd R

| | |
|---|---|
| **From:** | Schaénen, Diane |
| **Sent:** | Monday, December 05, 2011 8:22 AM |
| **To:** | Gingerich, Todd R; Alstrom, Tuff B |
| **Subject:** | FW: [EXTERNAL]Fwd: Lorene H Koopmann oil & gas lease 305486-000 |
| **Attachments:** | 333-741 OPR.pdf |

Todd -

Lorene Koopmann granted power of attorney to Ralph Koopmann & Karen Koopmann Koenig. When you cut checks on this lease, please attribute her interest 1/2 to Ralph & 1/2 to Karen.    Please make the checks out to "Ralph Koopmann, Individually and as Attorney-in-Fact for Lorene H Koopmann" and "Karen Koopmann Koenig, Individually and as Attorney-in-Fact for Lorene H. Koopmann".

Thanks much!

Diane

---

**From:** Margaret Forrester [mailto:margaretforrester@gmail.com]
**Sent:** Friday, December 02, 2011 7:16 PM
**To:** Schaenen, Diane
**Subject:** [EXTERNAL]Fwd: Lorene H Koopmann oil & gas lease 305486-000

Diane,

Here it is. Let me know if you need help with anything else.

Thanks,

Margaret

---------- Forwarded message ----------
From: <robertjholleyjr@aol.com>
Date: Fri, Dec 2, 2011 at 3:47 PM
Subject: Fwd: Lorene H Koopmann oil & gas lease 305486-000
To: margaretforrester@gmail.com


Dear Margaret:

Attached is .pdf of the Power of Attorney dated 6/10/2010, filed 12/27/2010
#73542 333/741-744 OPR

All the best,

Robert


-----Original Message-----
From: robertjholleyjr <robertjholleyjr@aol.com>
To: margaretforrester <margaretforrester@gmail.com>
Sent: Fri, Dec 2, 2011 2:43 pm


12/5/2011

**Confidential**

KOOCOP00000907
483

Subject: Re: Lorene H Koopmann oil & gas lease 305486-000

-Headed to the Clerk's office in 5 minutes ... will let you know

-----Original Message-----
From: Margaret Forrester <margaretforrester@gmail.com>
To: robertjholleyjr <robertjholleyjr@aol.com>
Sent: Fri, Dec 2, 2011 2:39 pm
Subject: Fwd: Lorene H Koopmann oil & gas lease 305486-000

Thanks again Robert!! Call or e-mail me if you have any questions. 512.913.5156

-------- Forwarded message --------
From: **Schaenen, Diane** <Diane.Schaenen@conocophillips.com>
Date: Fri, Dec 2, 2011 at 2:34 PM
Subject: Lorene H Koopmann oil & gas lease 305486-000
To: Margaret Forrester <margaretforrester@gmail.com>

Margaret -

As we discussed, Lorene H Koopmann, Ralph Koopmann, and Karen M. Koenig each have 1/3 participating royalty interest in the captioned lease. I think I've seen something somewhere wherein Lorene gave Ralph and Karen power of attorney over her affairs. We will be paying shut-in royalties to Ralph, Karen, & Lorene next week. Please have someone check the county records for a Power of Attorney document regarding Lorene. I think it would have been filed since the beginning of 2011.

Thanks!

Diane


--
Margaret Forrester
(512) 913-5156



--
Margaret Forrester
(512) 913-5156

12/5/2011

**Confidential**

KOOCOP00000908
484

## Gingerich, Todd R

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Monday, December 05, 2011 8:22 AM |
| **To:** | Gingerich, Todd R; Alstrom, Tuff B |
| **Subject:** | FW: [EXTERNAL]Fwd: Lorene H Koopmann oil & gas lease 305486-000 |
| **Attachments:** | 333-741 OPR.pdf |

Todd -

Lorene Koopmann granted power of attorney to Ralph Koopmann & Karen Koopmann Koenig. When you cut checks on this lease, please attribute her interest 1/2 to Ralph & 1/2 to Karen.    Please make the checks out to "Ralph Koopmann, Individually and as Attorney-in-Fact for Lorene H Koopmann" and "Karen Koopmann Koenig, Individually and as Attorney-in-Fact for Lorene H. Koopmann".

Thanks much!

Diane

---

**From:** Margaret Forrester [mailto:margaretforrester@gmail.com]
**Sent:** Friday, December 02, 2011 7:16 PM
**To:** Schaenen, Diane
**Subject:** [EXTERNAL]Fwd: Lorene H Koopmann oil & gas lease 305486-000

Diane,

Here it is.  Let me know if you need help with anything else.

Thanks,

Margaret

---------- Forwarded message ----------
From: <robertjholleyjr@aol.com>
Date: Fri, Dec 2, 2011 at 3:47 PM
Subject: Fwd: Lorene H Koopmann oil & gas lease 305486-000
To: margaretforrester@gmail.com


Dear Margaret:

Attached is .pdf of the Power of Attorney dated 6/10/2010, filed 12/27/2010 #73542 333/741-744 OPR

All the best,

Robert


-----Original Message-----
From: robertjholleyjr <robertjholleyjr@aol.com>
To: margaretforrester <margaretforrester@gmail.com>
Sent: Fri, Dec 2, 2011 2:43 pm

12/5/2011

**Confidential**

KOOCOP00000909
485

Subject: Re: Lorene H Koopmann oil & gas lease 305486-000

-Headed to the Clerk's office in 5 minutes ... will let you know

-----Original Message-----
From: Margaret Forrester <margaretforrester@gmail.com>
To: robertjholleyjr <robertjholleyjr@aol.com>
Sent: Fri, Dec 2, 2011 2:39 pm
Subject: Fwd: Lorene H Koopmann oil & gas lease 305486-000

Thanks again Robert!! Call or e-mail me if you have any questions. 512.913.5156

---------- Forwarded message ----------
From: **Schaenen, Diane** <Diane.Schaenen@conocophillips.com>
Date: Fri, Dec 2, 2011 at 2:34 PM
Subject: Lorene H Koopmann oil & gas lease 305486-000
To: Margaret Forrester <margaretforrester@gmail.com>

Margaret -

As we discussed, Lorene H Koopmann, Ralph Koopmann, and Karen M. Koenig each have 1/3 participating royalty interest in the captioned lease. I think I've seen something somewhere wherein Lorene gave Ralph and Karen power of attorney over her affairs. We will be paying shut-in royalties to Ralph, Karen, & Lorene next week. Please have someone check the county records for a Power of Attorney document regarding Lorene. I think it would have been filed since the beginning of 2011.

Thanks!

Diane


--
Margaret Forrester
(512) 913-5156



--
Margaret Forrester
(512) 913-5156

12/5/2011

**Confidential**

**Gingerich, Todd R**

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Tuesday, November 01, 2011 1:26 PM |
| **To:** | Gingerich, Todd R |
| **Subject:** | RE: 305486-000 |

**Attachments:** 2011110113204539.pdf

Todd -

The calculations for Lois Strieber are correct. The interest owned by Lorene Koopmann is split 1/3 to Lorene, 1/3 to Ralph, & 1/3 to Karen (see the first 4 pages of 1st Supp. DTO dated 7/26/11).

Thanks!

Diane



2011110113204539
.pdf (1 MB)

| | |
|---|---|
| **From:** | Gingerich, Todd R |
| **Sent:** | Tuesday, November 01, 2011 9:45 AM |
| **To:** | Schaenen, Diane |
| **Subject:** | 305486-000 |

Diane, I wanted to confirm with you the Shut-in payments for Lorene Koopmann and Lois Streiber.

$75 * 120 acres = $9,000.00
Lorene Koopmann received 1/2 interest from Lois, so she would get a payment of $4,500.00
Lois Streiber conveyed 60% of her 50% interest to Burlington per the Royalty Deed, so her total payment would be $1,800.00

Let me know if my calculations are correct and we will get the payment set up to pay both parties. Thanks Diane.

Todd Gingerich | Associate Property Maintenance Rep
Real Property Administration | ConocoPhillips Company
820 J Plaza Office Building | Bartlesville, OK 74004
Phone: (918)-661-5133 | Fax: (918)-662-3557
Todd.R.Gingerich@conocophillips.com

1

**Confidential**

**Gingerich, Todd R**

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Tuesday, October 25, 2011 9:05 AM |
| **To:** | Gingerich, Todd R |
| **Subject:** | RE: Lackey Unit A #1 well    A717077    DeWitt County, TX |

You were right; the amendment stipulates $75/net ac.

Thanks for the catch!

Diane

SCANNED

| | |
|---|---|
| **From:** | Gingerich, Todd R |
| **Sent:** | Tuesday, October 25, 2011 8:06 AM |
| **To:** | Schaenen, Diane |
| **Subject:** | RE: Lackey Unit A #1 well    A717077    DeWitt County, TX |

Diane, were you able to determine an amount for the Shut-in Royalty? Thanks again.

-Todd Gingerich

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Thursday, October 20, 2011 8:11 AM |
| **To:** | Gingerich, Todd R |
| **Subject:** | RE: Lackey Unit A #1 well    A717077    DeWitt County, TX |

I'll check & get back to you.

| | |
|---|---|
| **From:** | Gingerich, Todd R |
| **Sent:** | Thursday, October 20, 2011 8:01 AM |
| **To:** | Schaenen, Diane |
| **Cc:** | Alstrom, Tuff B |
| **Subject:** | RE: Lackey Unit A #1 well    A717077    DeWitt County, TX |

Diane, after reading through the lease and the amendment to the lease, the highest amount I see for the Shut-in royalty is $75 per acre. Is there another amendment that states $250 an acre or was it just an error? Thanks Diane.

-Todd Gingerich

| | |
|---|---|
| **From:** | Alstrom, Tuff B |
| **Sent:** | Wednesday, October 19, 2011 9:28 AM |
| **To:** | Gingerich, Todd R |
| **Subject:** | FW: Lackey Unit A #1 well    A717077    DeWitt County, TX |

Go ahead and put this one on your calendar as well.

Tuff Alstrom
(918) 661-0323

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Wednesday, October 19, 2011 9:21 AM |
| **To:** | Alstrom, Tuff B |
| **Subject:** | RE: Lackey Unit A #1 well    A717077    DeWitt County, TX |

Absent production or a shut-in payment, the Royalty Deed expires 12-27-11. I thought if we paid it on or about the 1st of December, it might be a nice Christmas present for the Striebers, and might take away some of the sting from the Koopmann's, who were expecting to receive the entire 22.5% royalty.

1

**Confidential**

Also, the well should be drilled (but not completed) by December 1. If we pay the Koopmann's sooner than that, they might be inclined to fight the language in the deed requiring wells capable of "commercial production". I don't want to fight that battle any sooner than I have to!

Thanks very much for your attention to this matter!

Diane

| | |
|---|---|
| **From:** | Alstrom, Tuff B |
| **Sent:** | Wednesday, October 19, 2011 9:14 AM |
| **To:** | Schaenen, Diane |
| **Subject:** | RE: Lackey Unit A #1 well     A717077     DeWitt County, TX |

Diane, we can take care of this with no problem. Do you know when the payment is actually due? We can make it anytime but if you are wanting to wait until December we can do that too.

Tuff Alstrom
(918) 661-0323

| | |
|---|---|
| **From:** | Thomas, Sharla L. |
| **Sent:** | Wednesday, October 12, 2011 11:49 AM |
| **To:** | Schaenen, Diane |
| **Cc:** | Alstrom, Tuff B |
| **Subject:** | FW: Lackey Unit A #1 well     A717077     DeWitt County, TX |

Diane-

Tuff Alstrom with our RPA- Property Maintenance group pays the rentals, shut-ins etc on the Eagle Ford wells. Via this response I have copied Tuff with your request.

Best Regards,

*Sharla Thomas*

Division Order Advisor - Eagle Ford
ConocoPhillips Company-Real Property Administration
PO Box 7500 Bartlesville OK 74005-7500
Phone: 918.661.0522 FAX 918.662.3559 sharla.l.thomas@conocophillips.com

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Wednesday, October 12, 2011 11:17 AM |
| **To:** | Thomas, Sharla L. |
| **Subject:** | Lackey Unit A #1 well     A717077     DeWitt County, TX |

Sharla -

We anticipate spudding this well on October 23, 2011. I'm attaching a copy of the permit plat for the well. Tract 4 covers an oil & gas lease from Lorene H. Koopmann. Mrs. Koopmann and her now deceased husband received their interest in a gift royalty deed dated December 27, 1996, wherein Lois Steiber (Grantor) reserved 50% of the royalties (NPRI). Absent commercial production, the deed expires December 27, 2011, and 100% of the royalties will vest in Lorene H. Koopmann.

Mrs. Strieber has assigned 60% of her 50% of the royalties to COP, with the understanding that we will get a well down and producing in compliance with the gift deed, such that they don't lose their royalty interest on December 27, 2011.

We won't have the well producing in paying quantities by December 27, 2011. However, the gift deed provides for shut-in royalties. Consequently, could you please put a reminder on your calendar to pay Lorene H. Koopmann (& her family) and Lois Strieber a shut-in royalty on December 1. The lease provides for $250/net mineral acre shut-in payment, & the lease covers ~ 120 acres. Consequently, payment to Lorene Koopmann (& her family) would be $1500, payment to Lois Strieber would be $960, and the 60% of 50% would be net to COP. The other leases in the unit don't expire until next year, and we anticipate the well being on line at that point.

2

**Confidential**

I'm attaching a copy of the ownership portion of the August 25, 2011 drilling title opinion for this lease for your information, as well as a copy of the Royalty Deed from Lois Strieber to COP. If there's anything more you need from me, please let me know.

I'll put a copy of this e-mail on my calendar for December 1, and we can communicate further on that date, if necessary.

Thanks so much for your assistance in this matter. Please let me know if you have any questions.

Diane

&lt;&lt; File: 2011101211110988.pdf &gt;&gt;   &lt;&lt; File: 2011101211111765.pdf &gt;&gt;   &lt;&lt; File: 2011101211150072.pdf &gt;&gt;

3

**Confidential**

KOOCOP00000914
490

| From: | Schaenen, Diane |
|---|---|
| Sent: | Tuesday, November 29, 2011 10:58 AM |
| To: | Gingerich, Todd R |
| Subject: | RE: Shut in payment to Lorene Koopmann et al   305486-000   Dewitt County, TX |

It's not urgent. The 7th (or thereabouts) is fine. I'm in the process of putting together the letter that I'd like you to send with the checks. The mineral owners are **NOT** going to be happy, so putting off getting yelled at for a week is fine with me!

Thanks!

Diane

| From: | Gingerich, Todd R |
|---|---|
| Sent: | Tuesday, November 29, 2011 10:56 AM |
| To: | Schaenen, Diane |
| Subject: | RE: Shut in payment to Lorene Koopmann et al   305486-000   Dewitt County, TX |

Diane, our next check run will be on the 6th of December and we can get the check out on the 7th, but if you are wanting to get it out this week, let me know and we can have a check cut this Thursday and get it out sooner. I wasn't sure how urgent you were on getting the check out, so let me know and I will be happy to accommodate. Thanks.

-Todd Gingerich

| From: | Schaenen, Diane |
|---|---|
| Sent: | Tuesday, November 22, 2011 1:08 PM |
| To: | Gingerich, Todd R |
| Subject: | RE: Shut in payment to Lorene Koopmann et al   305486-000   Dewitt County, TX |

Thanks! Have a great Thanksgiving.

| From: | Gingerich, Todd R |
|---|---|
| Sent: | Tuesday, November 22, 2011 1:07 PM |
| To: | Schaenen, Diane |
| Subject: | RE: Shut In payment to Lorene Koopmann et al   305486-000   Dewitt County, TX |

Diane, go ahead and send it up Tuesday and we will be sure to include it with the checks. Thanks.

-Todd Gingerich

| From: | Schaenen, Diane |
|---|---|
| Sent: | Tuesday, November 22, 2011 10:58 AM |
| To: | Gingerich, Todd R |
| Subject: | Shut In payment to Lorene Koopmann et al   305486-000   Dewitt County, TX |

Todd -

I have a letter that I would like to include with the shut-in checks that will be going to Lorene Koopmann, Ralph Koopmann & Karen Koopmann Koenig. If I write it & scan it to you next Tuesday or Wednesday, would that be sufficient time to include it with the checks?

Thanks.

Diane

1

**Confidential**

**Gingerich, Todd R**

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Monday, December 05, 2011 1:41 PM |
| **To:** | Gingerich, Todd R |
| **Subject:** | RE: Lorene H Koopmann oil & gas lease   COP lease 305486-000        shut-in royalty payments being generated week of Dec. 5 |

Yes.  That works for me.

| | |
|---|---|
| **From:** | Gingerich, Todd R |
| **Sent:** | Monday, December 05, 2011 1:24 PM |
| **To:** | Schaenen, Diane |
| **Subject:** | RE: Lorene H Koopmann oil & gas lease   COP lease 305486-000        shut-in royalty payments being generated week of Dec. 5 |

Diane, since some changes have already been made to these payee's, would you be alright with Tuff and I cutting the checks as listed below and we can address the envelope to Ralph's address for both of his checks? At this point it will be easier than trying to create a new payee number for Ralph and trying to move things around. Thanks.

-Todd

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Monday, December 05, 2011 1:13 PM |
| **To:** | Gingerich, Todd R |
| **Subject:** | RE: Lorene H Koopmann oil & gas lease   COP lease 305486-000        shut-in royalty payments being generated week of Dec. 5 |

Send it to Ralph, please.  Lorene still has an active address, at least according to the phone book, but since Ralph's name appears on her check, send it to him.

Thanks.

Diane

| | |
|---|---|
| **From:** | Gingerich, Todd R |
| **Sent:** | Monday, December 05, 2011 12:47 PM |
| **To:** | Schaenen, Diane |
| **Subject:** | RE: Lorene H Koopmann oil & gas lease   COP lease 305486-000        shut-in royalty payments being generated week of Dec. 5 |

Diane, the checks will be issued as follows. I wanted to make sure we get this correct. You mentioned below that Karen and Ralph get one jointly, so are we sending the check to one of them or still sending it to Lorene?

Lorene H Koopman
Ralph Koopman & Karen M Koenig AIF's -$3,000.00 (Lorene's address)
Karen M Koenig - $3,000.00
Ralph Koopmann - $3,000.00
Lois Streiber - $3,600.00

Let me know if this is correct. Thanks again Diane.

-Todd

| | |
|---|---|
| **From:** | Schaenen, Diane |
| **Sent:** | Monday, December 05, 2011 10:29 AM |
| **To:** | Gingerich, Todd R |
| **Subject:** | RE: Lorene H Koopmann oil & gas lease   COP lease 305486-000        shut-in royalty payments being generated week of Dec. 5 |

See attached.

1

**Confidential**

KOOCOP00000916
492

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## AMENDMENT TO OIL, GAS AND MINERAL LEASE
### (PAID UP LEASE)

THIS AMENDMENT TO OIL, GAS, AND MINERAL LEASE is executed to be effective as of this 22nd day of October 2007 by and between **LORENE H. KOOPMANN**, an unmarried woman, acting herein by and through Ralph Koopman and Karen M. Koenig, my attorneys-in-fact, whose address is: 405 FM 108, Yorktown, Texas 78164, **RALPH KOOPMANN**, a married man dealing in his sole and separate property, whose address is 774 Stanchos Road, Yorktown, Texas 78164, and **KAREN M. KOENIG**, a married woman dealing in her sole and separate property, whose address is 3489 ST. Hwy 72W, Cuero, Texas 77954 (collectively, "Lessor"), and **BURLINGTON RESOURCES OIL & GAS COMPANY LP**, whose address is 600 North Dairy Ashford, Houston, Texas 77079-2197 ("Burlington"). Lessor and Burlington are sometimes referred to herein collectively as the "Parties."

### RECITALS

WHEREAS, that certain Oil, Gas, and Mineral Lease, dated 22nd day of October 2007 was made and entered into between LORENE H. KOOPMANN and HAWKE ENTERPRISES, as "Lessee," (the "Lease"), a Memorandum of which Lease is recorded in Volume 243, Page 876 of the Official Records of DeWitt County, Texas, covering the following described lands (the "leased premises"):

120 acres of land, more or less, being a part of Section No. 13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, and being the same land described as TRACT NO. ONE and TRACT NO. TWO in that certain Deed dated December 27, 1996, from Lois Strieber, Individually and as Independent Executrix of the Estate of Jerry Strieber, deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, and being recorded in Volume 14, page 425, Official Public Records, DeWitt County, Texas; and

WHEREAS, the Lease was assigned from HAWKE ENTERPRISES, as Assignor, to Burlington, as Assignee, as evidenced in that certain Assignment dated January 9, 2008 and recorded in Volume 250, Page 822 of the Official Public Records of DeWitt County, Texas; and

WHEREAS, there was a conveyance of an undivided two/thirds (2/3) mineral interest in the leased premises described above, from LORENE H. KOOPMANN to RALPH KOOPMANN and KAREN M. KOENIG as evidenced in that certain Gift Mineral Deed dated June 10, 2010, and recorded at Volume 313, Page 758, Official Public Records of DeWitt County, Texas; and

WHEREAS, as a result of the partial conveyance, the mineral interest in the leased premises described above is now owned by LORENE H. KOOPMANN, RALPH KOOPMANN AND KAREN M. KOENIG, one-third (1/3) each; and

WHEREAS, Lessor (as to all of their interests), and Burlington desire to amend the Lease in certain respects;

NOW, THEREFORE for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby amend the Lease, as follows:

305486-000

-1-

**Confidential**

KOOCOP00000917

## THE AMENDMENT

**I. Paragraph 3 of the lease shall be deleted in its entirety and replaced with the following:**

3.1 The royalties to be paid by Lessee are:

(a) on oil, 22.5% of that produced and saved from said land, the same to be delivered, free of all costs and expenses to the Lessor into the pipeline, or other receptacle to which the Lessee may connect its wells or the market value thereof, at the option of the Lessor, such value to be determined by (1) the highest posted price, plus premium, if any, offered or paid for oil, condensate, distillate, or other liquid hydrocarbons, respectively of a like type and gravity for the field where produced and when run, or (2) the gross proceeds of the sale thereof, whichever is greater.

(b) on gas, including casinghead gas or other gaseous substance, produced from said land 22.5% of the greater of (1) the market value at the wellhead of such gas, paid to Lessor free of all costs and expenses, or (2) the gross proceeds realized from the sale of such gas, free of all costs and expenses, to the first non-affiliated third party purchaser under a bona fide arms length sale or contract. "Gross proceeds" (for royalty payment purposes) shall mean the total monies and other consideration accruing to or paid to the Lessee or received by Lessee for disposition or sale of all unprocessed gas proceeds, residue gas, gas plant products or other products. Gross proceeds shall include, but shall not be limited to advance payments, take-or-pay payments (whether paid pursuant to contract, in settlement or received by judgment) reimbursement for production or severance taxes and any and all other reimbursements or payments.

(c) on all other minerals mined and marketed, 22.5% either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined and marketed, the royalty shall be $6.00 per long ton.

3.2 If any disposition, contract or sale of oil or gas shall include any reduction or charge for the expenses or costs of production, treatment, transportation, manufacturing, process or marketing of the oil or gas, then such deduction, expense or cost shall be added to the market value or gross proceeds so that Lessor's royalty shall never be chargeable directly or indirectly with any costs or expenses other than its pro rata share of severance or production taxes.

3.3 After the end of the primary term, while there is a gas well on this lease or on acreage pooled therewith but gas is not being sold or used, Lessee may pay as royalty to the Lessor at the address set out above on or before ninety (90) days after the date on which (1) said well is shut in, or (2) the land covered hereby or any portion thereof is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein, whichever is the later date, and thereafter at annual intervals, the sum of $75.00 per mineral acre, and if such payment is made or tendered, this lease shall not terminate and it will be considered that gas is being produced from this lease in paying quantities, but if such payment is not made or tendered, this lease shall terminate.

**II. The second sentence of Paragraph No. 4 of the Lease, which is set out immediately below, shall be deleted in its entirety:**

"Such pooling shall be into a unit or units not exceeding forty (40) acres plus an acreage tolerance of ten percent (10%) thereof for oil, and units not exceeding six hundred forty (640) acres each plus an acreage tolerance of ten percent (10%) thereof for gas, provided that, should governmental authority having jurisdiction prescribe or permit the creation of any drilling, spacing or proration units larger than those specified above, such units may be created or enlarged to conform in size to the drilling or spacing units so prescribed or permitted or to the proration units as may be authorized for obtaining the maximum allowable production from one well."

- 2 -

**Confidential**

KOOCOP00000918494

III.  **Paragraph No. 5 of the Lease shall be deleted in its entirety and replaced with the following:**

(a) DRILLING OPERATIONS: If within 30 days prior to the expiration of the primary term or at the expiration of the primary term, Lessee is then engaged in drilling operations on said land or upon lands pooled therewith, this lease shall remain in force only so long as such operations or drilling operations for any additional well(s) are prosecuted on the lease or lands pooled therewith with no cessation of more than 120 consecutive days between the termination of drilling operations of one well and the commencement of drilling operations on a subsequent well, and if such operations result in the production of oil, gas or other mineral, so long thereafter as oil, gas, or other mineral is produced from said land, or from land pooled therewith.

(b) CESSATION OF PRODUCTION/REWORKING OPERATIONS: If, after the expiration of the primary term of this lease and after oil, gas, or other mineral is produced from said land, or from land pooled therewith, the production thereof should cease from any cause and the lease is not otherwise maintained, this lease shall not terminate if Lessee commences drilling operations within 60 days thereafter and continuously conducts drilling operations without cessation thereof for more than sixty (60) days between the termination of drilling operations of a well and the commencement of drilling operations on a subsequent well and if they result in production of oil and/or gas or other mineral, so long thereafter as oil, gas or such other minerals are produced from said land. If within such sixty (60) day period after such cessation of production, Lessee commences reworking operations as opposed to drilling operations, this lease shall not terminate so long as Lessee continuously conducts such reworking operations on such well without cessation thereof for more than sixty (60) days and if such reworking operations on such well results in re-establishment of production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or lands pooled therewith.

(c) Any pooled unit designated by Lessee in accordance with the terms hereof, may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and such well or wells is/are draining the leased premises, or land pooled therewith, Lessee agrees to drill such offset well or wells as a reasonably prudent operator would drill under the same or similar circumstances. Lessee may at any time execute and deliver to Lessor or place of record a release or releases covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the acreage surrendered.

IV.  **Paragraph 8 of the lease shall be deleted in its entirety and replaced with the following:**

8. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. No obligation reasonably to develop the leased premises shall arise during the primary term. Should oil, gas or other mineral in paying quantities be discovered on said premises, then after the expiration of the primary term, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator. If after the expiration of the primary term, Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument.

- 3 -

**Confidential**

V.   **Paragraph 9 of the lease shall be deleted in its entirety and replaced with the following:**

9. Lessor expressly disclaims any warranty of title to the premises above described. In the event of failure of title, Lessor shall never be required to return any bonus or any other payment made to Lessor under this lease. By acceptance of this Lease, Lessee acknowledges that it has been given full opportunity to investigate and has conducted sufficient investigation to satisfy itself as to the title to the Land, and Lessee assumes all risk of title failures. It is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties and other monies accruing from any part as to which this lease covers than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein.

VI.   **Paragraph C(d) of the Addendum of the Lease shall be deleted in its entirety and replaced with the following:**

(d) Prior to initial construction of each pipeline thereon, Lessee must pay the Lessor $3.00 per foot in length for a sixty-foot (60') wide pipeline right-of-way for installing pipelines necessary for production of any well on the lease premises or on lands pooled therewith, which right-of-way shall reduce to a thirty-foot (30') right-of-way after construction and installation of the pipeline. After installation, replacement, or repair, the area occupied by all buried pipelines shall be backfilled and tamped, and otherwise restored to its condition prior to installation, replacement, or repair, utilizing the "double ditch" method. Lessee must pay Lessor $1,000.00 as a liquidated damage amount for any oak tree damaged or destroyed by Lessee which tree has a trunk diameter over ten inches (10") when measured twenty-four inches (24") from ground level, to be increased $100.00 per inch for each inch in diameter over 10 inches. Prior to commencing surface operations pertaining to any well to be drilled on the lease premises, Lessee must deliver to surface owner a damage payment of $10,000.00 to be applied to the damages to be incurred from such operations (such damages including and associated with the construction of an access road, power line, well pad, reserve pit, fresh water pond and well production facilities as permitted by this lease). Such payment does not preclude Lessee from being liable for the payment of additional damages if such damages exceed $10,000.00.

VII.   **Paragraph E. of the Addendum to the Lease shall be deleted in its entirety and replaced with the following:**

E. MINERAL LIMITATION: It is expressly understood and provided that this lease covers oil and gas and liquid hydrocarbons, along with the products and by-products thereof, but this lease does not cover uranium, fissionable materials or any other minerals of any type, here making particular mention of water, the Lessee herein being given no right to explore for, nor develop any part of the land for production of water therefrom except with regard to producing water to be used solely with regard to Lessee's oil and gas drilling, hydraulic fracture stimulation operations and completion operations upon the leased premises and any such water well must be limited to water production only from those depths below 500 feet below the land surface. Lessee is expressly prohibited from using water from Lessor's wells, creeks and watering places. Notwithstanding anything to the contrary in this lease contained, Lessee shall at all times protect the herein leased land from drainage of oil and gas from wells on adjoining lands.

VIII.   **Paragraph F of the Addendum to the Lease shall be deleted in its entirety and replaced with the following:**

- 4 -

**Confidential**

KOOCOP00000920
496

F. POOLING LIMITATIONS:

(a) <u>Pooling For Vertical Oil Wells</u>. Notwithstanding anything contained herein to the contrary, pooling of this lease for vertical oil wells as classified by the Texas Railroad Commission is prohibited.

(b) <u>Pooling for Gas Wells and Horizontal Oil Wells</u>. In the event Lessee exercises its option to pool as authorized herein and as limited hereby, the right to pool a vertical gas well or a horizontal gas well is hereby limited to 160 acres plus 10% tolerance as to all horizons from the surface of the ground to a depth of 7,500 feet below the surface of the ground and to 320 acres plus 10% tolerance as to all horizons from 7,500 feet below the surface of the ground to a depth of 10,000 feet below the surface of the ground, and to 640 acres plus 10% tolerance as to all horizons beneath 10,000 feet below the surface of the ground.

The right of Lessee to pool for a horizontal oil well is hereby limited to 160 acres plus 10% tolerance as to all horizons from the surface of the ground to depth of 7,500 feet below the surface of the ground and to 320 acres plus 10% tolerance if completed at a depth of more than 7,500 feet below the surface of the ground provided that an additional eighty (80) acres may be allotted to such well for production purposes for every eight hundred twenty-seven feet (827') of horizontal drainhole displacement (as defined by the Railroad Commission of Texas) over and above 4,000 feet of horizontal drainhole displacement.

(c) <u>Special Field Rules</u>. If at the time of creation of any oil or gas unit comprising all or a part of the herein leased premises special Field Rules of the Railroad Commission of Texas are in effect, Lessee shall have the right to pool all or a part of the herein leased premises only up to the maximum acreage permitted to be assigned to a well in connection with such oil or gas unit under such special Field Rules, but in no event shall such unit or units contain more than the maximum acreage allowed by paragraph F(b).

(d) <u>Additional Horizontal Well Provisions</u>. In exercising the pooling rights granted in this lease applicable to horizontal wells, Lessee shall file of record a written declaration describing the horizontal unit as to the specific leases and acreage to be included therein as well as the vertical limits of the productive horizon or zone and stating the effective date of pooling; however, as to any horizontally completed well, Lessee shall have ninety (90) days from initial completion in which to amend such written designation of unit to increase or decrease the acreage, include or exclude specific leases or tracts as well as redefine the vertical limits of the productive zone, subject to the limitations contained in this lease. If such unit is filed and amended within such period of time, Lessee shall file of record in the county where the lands are located a written declaration describing the revised unit and stating the effective date of revision. To the extent any portion of the leased premises is included in or excluded from the unit by virtue of such revision, the proportion of unit production on which royalties are payable under this paragraph shall be adjusted accordingly as of the effective date for the revised unit, subject to the limitations herein. The effective date of any unit formed for horizontal drainhole wells under this paragraph or any revision thereof shall be the date set forth as the effective date by lessee in the written declaration that is filed of record for such unit or revision thereof.

(e) <u>Termination of Pooling by Lessor</u>. Notwithstanding the decision in Wagner & Brown v. Sheppard, 282 S.W. 3rd 419 (Tex. 2009), or similar authority:

    i.    Lessee may only exercise the rights to pool the interest of lessor in the land and at the depths leased hereby and only as to the lands and depths as to which this lease has not terminated as of the date such pooling document is filed in the office of the County Clerk of the county where the land leased hereby or any portion is located. Upon partial termination of this lease, as to any portion of the land and/or as to any depths, the rights of Lessee to pool the land and/or

-5-

**Confidential**

depths leased hereunder may be exercised by lessee only for that portion of the land and/or those depths as to which this lease has not terminated.

ii. If the leased premises, or a portion thereof, or the interest of the Lessor in part or all of the land described herein is validly pooled with other land to form a unit prior to the partial or complete termination of this lease, upon partial termination of this lease as to area and depths or complete termination of this lease, Lessor may at any time thereafter terminate the pooling and unitization of the Lessor's interest in any portion of the interest leased herein that has terminated in any such unit, by executing and filing for record in the office of the County Clerk of the county in which the land leased hereby or any portion thereof is located, a document identifying or describing the area and/or depths as to which such pooling is terminated.

iii. In no event will lessor be required to bear costs of drilling either before or after this lease has terminated.

IX. **Paragraph H of the addendum to the Lease shall be deleted in its entirety and replaced with the following:**

H. NON-POOLED PUGH CLAUSE: Lessee must within 90 days after the completion of any well on the leased premises which is not pooled under the provisions of Paragraph 4 or Paragraph F hereof, designate in writing and place of record with the County Clerk of the county in which the property is located, a description of that part of the leased premises which shall be allotted ("Allotted Area") to such well for production purposes, the maximum size of such part to be allotted being limited as follows:

(a) Vertical Oil Wells: No more than 40 acres plus 10% tolerance to be allotted in and around each well classified as an oil well by the Railroad Commission of Texas if completed at a depth of 10,000 feet or less below the surface nor more than 80 acres plus 10% tolerance if completed at a depth of more than 10,000 feet below the surface.

(b) Gas Wells and Horizontal Oil Wells: No more than 160 acres plus 10% tolerance to be allotted in and around each vertical gas well and horizontal gas well if completed at a depth of 7,500 feet or less below the surface of the ground, nor more than 320 acres plus 10% tolerance if completed at a depth of more than 7,500 feet below the surface of the ground, but less than 10,000 feet below the surface of the ground, no more than 640 acres plus 10% tolerance as to all horizons beneath 10,000 feet below the surface of the ground.

No more than 160 acres plus 10% tolerance to be allotted in and around each horizontal oil well if completed at a depth of 7,500 feet or less below the surface of the ground, nor more than 320 acres plus 10% tolerance if completed at a depth of more than 7,500 feet below the surface of the ground provided that an additional eighty (80) acres may be allotted to such well for production purposes for every eight hundred twenty seven feet (827') of horizontal drainhole displacement (as defined by the Railroad Commission of Texas) over and above 4,000 feet of horizontal drainhole displacement.

Production or operations on said Allotted Area by the Lessee shall maintain this lease in effect only with regard to the land within such area. This lease shall terminate at the end of the primary term as to such part or parts of the leased land lying outside the Allotted Area unless this lease is perpetuated as to such land outside the Allotted Area by operations conducted thereon or by production of oil or gas or any such operations and such production in accordance with the provisions hereof.

X. **Paragraph J. of the addendum of the Lease shall be deleted in its entirety and replaced with the following:**

- 6 -

**Confidential**

KOOCOP00000922 498

J. MINIMUM ROYALTY: If the royalties to be paid under this lease during 12-month periods as described below are less than the sum of $100.00 per acre then leased ("minimum royalty"), and Lessor sends Lessee notice in writing of same, then this lease will terminate at the end of 90 days after Lessee receives written notice from Lessor, unless the Lessee pays to the royalty holders a sum of money equal to the difference between said minimum royalty per acre and the total of all royalty monies on production so paid during the applicable 12-month period. Said 12-month periods are the initial period beginning with the date of first production from the lease premises and each successive 12-month period thereafter. The payments set out in this paragraph do not relieve Lessee of the requirement of production in paying quantities to maintain this lease. Notice as to this paragraph will deemed to be given when it is deposited in the mail, certified, return receipt requested.

XI.    The following sentence contained in Paragraph Q.(2) of the addendum of the Lease shall be deleted in its entirety:

"Any later work done on the well will be deemed to be reworking operations."

XII.   The following definitions shall be added to Paragraph Q of the Addendum to the lease:

"Horizontal well" shall mean a well having a horizontal drain hole which shall be deviated a minimum of seventy degrees (70°) from the vertical and being a minimum horizontal displacement in the objective formation of one hundred fifty feet (150') in length measured between the point at which the drain hole penetrates the top of the formation to be produced and the end point or terminus of the horizontal drain hole. For the purposes of this provision, "terminus", "horizontal drainhole" and "correlative intervals" shall be defined in accordance with the Rules and Regulations of the Railroad Commission of Texas or other governmental authority having jurisdiction.

"Reworking Operations", "operations for reworking", "commencement of reworking operations" and words of similar import shall have the same meaning, being the actual re-entry into an existing wellbore with equipment capable of re-entering, reworking and/or completing such well and the timely prosecution of such operations in such well bore in good faith toward the re-establishment of production of oil or gas from such previously producing zone or zones."

XIII.  Paragraph T of the Addendum to the Lease shall be deleted in its entirety and replaced with the following:

INDEMNIFICATION:
LESSEE AND ITS SUCCESSORS AND ASSIGNS SHALL INDEMNIFY, DEFEND AT ITS SOLE COST AND EXPENSE AND HOLD LESSOR HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, LIABILITIES, COSTS, CAUSES OF ACTION, SETTLEMENTS, AWARDS, PENALTIES, FEES, ASSESSMENTS, FINES, CHARGES, DEMANDS, LIENS, PUNITIVE DAMAGES, ATTORNEYS FEES, AND JUDGMENTS OF EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, FIXED OR CONTINGENT (COLLECTIVELY, "CLAIMS"), ARISING IN WHOLE OR IN PART OUT OF THE ACTS OR OMISSIONS OF LESSEE, LESSEE'S LICENSEES, CONCESSIONAIRES, SUBCONTRACTORS, OR ANY OTHER PERSON OR ENTITY ACTING BY, THROUGH OR UNDER LESSEE IN CONNECTION WITH ITS OPERATIONS ON AND POSSESSION OF THE LEASED PREMISES, INCLUDING WITHOUT LIMITATION ANY CLAIMS ARISING FROM TORT, PERSONAL INJURY, DEATH, PROPERTY DAMAGE OR NUISANCE, ARISING FROM ANY ACT OR OMISSION OF LESSEE, LESSEE'S LICENSEES, CONCESSIONAIRES, SUBCONTRACTORS, OR

- 7 -

**Confidential**

KOOCOP00000923
499

ANY OTHER PERSON OR ENTITY ACTING BY, THROUGH OR UNDER LESSEE. FURTHER, THIS INDEMNITY APPLIES TO THE ABOVE CLAIMS REGARDLESS OF HOW SUCH ARE CAUSED. THIS LEASE SHALL EXPIRE IN ACCORDANCE WITH THE PROVISIONS SET OUT HEREIN, BUT LESSEE'S OR ASSIGNEE'S OBLIGATION TO INDEMNIFY AND HOLD THE INDEMNIFIED PARTIES HARMLESS FOR ACTIONS OCCURRING DURING THE TERM OF THIS CONTRACT SHALL SURVIVE THE TERMINATION OF THIS LEASE. IF LESSEE FAILS OR REFUSES TO FULLY PERFORM IN ACCORDANCE WITH THIS INDEMNIFICATION PROVISION, LESSOR AT LESSOR'S OPTION, AND WITHOUT RELIEVING LESSEE OF LESSEE'S OBLIGATIONS, MAY SO PERFORM, BUT ALL COSTS AND EXPENSES INCURRED BY LESSOR IN THAT EVENT SHALL BE REIMBURSED BY LESSEE TO LESSOR, TOGETHER WITH INTEREST ON THE SAME FROM THE DATE ANY SUCH EXPENSE WAS PAID BY LESSOR UNTIL REIMBURSED BY LESSEE, AT THE RATE OF TWELVE (12) PERCENT PER ANNUM. Lessee and its representatives, and their successors shall not be responsible for or required to defend or indemnify Lessor or its representatives from the Lessor's or its representative's gross negligence or willful misconduct. Lessee must maintain in effect at all times during its operations under this lease a liability insurance policy in an amount of not less than $3,000,000.00 protecting Lessor against all claims arising by virtue of the Lessee's failure to comply with the provisions of this lease, and must furnish Lessor prior to beginning such operations with proof of the existence of such policy. If Lessee's operations under this lease are conducted under the name of Conoco Phillips or one of its affiliates for which Conoco Phillips is responsible, then Lessee may elect to self-insure the aforementioned amount and will provide Lessor with written notice of such election prior to beginning such operations.

XIV.   Paragraph U of the Addendum to the lease shall be deleted in its entirety and replaced with the following:

U. DIVISION ORDER: Neither the Lessee nor any other party disbursing oil or gas royalty as provided under this lease or through agreement of the third party with the Lessee may require Lessor to execute a division order as a requisite for the Lessor being paid royalties with the exception that a division order that provides only a stipulation of the Lessor's royalty interest may be required of the Lessor. Neither this Lease nor any terms or provisions herein shall be altered, amended, extended or ratified by any division order or transfer order executed by Lessor, its successors, agents or assigns, but any division orders or transfer orders shall be for the sole purpose of confirming the extent of Lessor's interest in production of oil and gas from the leased premises. However, to the extent there are interests which purport to burden Lessor's royalty which are in dispute or may, in the future, be disputed, the execution of division orders is not a waiver of the rights to so dispute the interests, nor does such execution in any way ratify, revive, or otherwise approve of any such interests, if any.

XV.   Paragraph W of the Addendum to the lease shall be deleted in its entirety and replaced with the following:

W. SEISMIC OPERATIONS: No authority is herein granted to Lessee to conduct seismic operations unless Lessee pays the surface owner prior to beginning of such operations $35.00 per acre for the entire land above described. After completion of such operations, Lessee must restore the land to its original condition just prior to such operations and must pay the surface owner and any tenants the actual amount of damages arising from such operations. Lessee's right to conduct seismic operations upon the herein leased premises shall be non-exclusive and Lessor hereby reserves the right to grant to third parties, the right to: 1.) conduct seismic operations upon such premises, and 2.) use the data resulting from such seismic operations as such third party deems necessary including but not limited to the marketing/sale of such data. Lessor shall be

- 8 -

**Confidential**

KOOCOP00000924 500

entitled to all compensation paid by such third parties for the right to conduct seismic operations. Further, this lease shall be subject to the rights of all third parties under any seismic permits which cover all or any part of the herein leased property which may be in effect at the time of the execution of this lease.

XVI. **Paragraph X of the Addendum to the lease shall be deleted in its entirety.**

XVII. **The following provisions shall be added to the lease:**

Lessee shall and agrees to never claim, nor seek to secure any of the lands or minerals in the ground covered by this lease by application or claim of any statute of limitations or adverse possession, including, but not limited to any claim under the **Texas Civil Practice and Remedies Code Sections 16.025, 16.026, 16.027 or 16.028**, as now enacted or as may hereinafter be amended. Lessee shall and agrees never to seek to mature limitations title to the oil, gas and related minerals in the ground covered by this lease. The purpose of this provision is to bar any claim of limitations title by Lessee and thus abrogate the application of any theories under which relief was granted in **Natural Gas Pipeline Co. v. Pool**, 124 S.W. 3d 188 (Tex. Sup. 2003), or similar authority. In the event that Lessee should ever file a lawsuit against Lessor wherein it claims that it owns the oil, gas or other minerals or any interest in the lands covered by this lease by reason of any statute of limitation, any interest of Lessee under this lease shall be automatically deemed forfeited and terminated as of the date such lawsuit is filed, and Lessee will thereafter have no interest whatsoever in this Lease or any lands described herein. **Lessee may defend itself in court against claims brought against Lessee and may assert limitations as a defense but in no event may Lessee assert in any form or fashion, adverse possession of Lessor's real property lands or minerals in the ground.**

NOTICE OF TOP LEASE OFFER: If at any time within the primary term of this lease and while the same remains in force and effect, Lessor receives a bona fide offer acceptable to Lessor to enter into an additional lease (top lease) covering all or part of the leased premises, Lessor (without disclosing the terms of such offer) shall notify Lessee in writing that Lessor has received such offer. Lessor agrees that it shall not accept such offer (by the execution of a top lease) until 15 days after Lessor gives notice of the offer to Lessee. Notice as to this paragraph will deemed to be given when it is deposited in the mail, certified, return receipt requested.

PERFORMANCE: Upon the later of the expiration of the primary term, or the extended term by continuous operations, force majeure or other savings clauses, if Lessee has included a portion of the leased lands from this lease into an Allotted Area(s) or pooled unit(s) ("Developed Lands"), but less than all lands from this lease have been included in any such Allotted Area(s) or pooled unit(s), and the lease, as it pertains to such lands remaining unallotted or unpooled ("UnDeveloped Lands") terminates according to the terms of the lease and/or any amendments thereto, Lessee agrees to pay to Lessor a one-time non-performance payment on such UnDeveloped Lands at that rate of $5,000.00 per net mineral acre ("UnDeveloped Lands payment"). Such UnDeveloped Lands Payment shall be due and payable to Lessor, or Lessor's assigns, within 60 days after such partial lease termination. Such payment shall bear interest from the due date (60 days after partial lease termination) until the date of payment thereof at the rate of 12% per annum. No such payment shall be due on any:

1. Developed Lands;

2. Portion of the land covered by this lease within an Allotted Area(s) or pooled unit(s), upon which a well(s) has been drilled, plugged and abandoned as a dry hole. For the purposes of determining the acreage not subject to the Undeveloped Lands Payment under this

-9-

**Confidential**

KOOCOP00000925 501

exception, the maximum amount of leased lands (either Allotted or pooled unit) per dry hole well is 320 acres;

3. Portion of the property leased herein if there is a material title problem with said property;

4. Portion of the herein leased property, if the inability to include such portion of the leased property in a unit is a result of a change in the regulations of the Railroad Commission of Texas or other governmental authority which such change in regulations occurs after the date that any part of the leased premises is lawfully pooled or allotted to any well drilled on said premises.

Lessor agrees to act in good faith to facilitate Lessee in compliance with the foregoing to facilitate proper pooling of Lessor's lands and the drilling of wells.

## XVIII. MISCELLANEOUS

Lessor does hereby adopt, ratify and confirm the Lease and recognizes the full validity of the same, and does hereby GRANT, LEASE, and LET to Burlington Resources Oil & Gas Company LP, its successors and assigns, all of the interest of the said undersigned in the leases premises, subject to and in accordance with all of the terms and conditions set forth in the Lease, as hereby amended.

This Amendment to Oil, Gas, and Mineral Lease shall be binding upon and inure to the benefit of the Lessor and Burlington, and their respective heirs, personal representatives, successors, and assigns.

This instrument may be executed either as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one instrument. Should less than all of the named parties execute this instrument, this instrument shall be binding on those who are signatories.

**IN WITNESS WHEREOF,** this instrument is executed to be effective as of the date first above written.

**LESSOR:**

LORENE H. KOOPMANN

By: _____
RALPH KOOPMANN,
Attorney-in-Fact

By: _____
KAREN M. KOENIG,
Attorney-in-Fact

_____
RALPH KOOPMANN

_____
KAREN M. KOENIG

- 10 -

**Confidential**

**BURLINGTON RESOURCES OIL & GAS COMPANY LP:**

By: BROG GP Inc., its sole General Partner

By: ⟨signature⟩

Name: Marie B. Corliss

Title: Attorney-in-Fact

THE STATE OF TEXAS §
§
COUNTY OF Dewitt §

This instrument was acknowledged before me on this the 27 day of Dec , 2010, by RALPH KOOPMAN and KAREN M. KOENIG as attorneys-in-fact on behalf of **LORENE H. KOOPMANN.**

PATRICIA J. BASSETT
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2013

⟨signature⟩
Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF Dewitt §

This instrument was acknowledged before me on this the 27 day of Dec , 2010, by **RALPH KOOPMANN.**

PATRICIA J. BASSETT
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2013

⟨signature⟩
Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF Dewitt §

This instrument was acknowledged before me on this the 27 day of Dec , 2010, by **KAREN M. KOENIG.**

PATRICIA J. BASSETT
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2013

⟨signature⟩
Notary Public, State of Texas

- 11 -

**Confidential**

KOOCOP00000927

503

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

This instrument was acknowledged before me on this the 31 day of DECember, 2010, by more B. Carlisle, the Attorney-in-Fact for BROG GP Inc., a Delaware corporation, the sole General Partner of Burlington Resources Oil & Gas Company LP, a Delaware limited partnership, on behalf of said partnership.

NATHAN ALLAN DIMICELI
Notary Public, State of Texas
My Commission Expires
August 23, 2014

Notary Public, State of Texas

- 12 -

**Confidential**

KOOCOP00000928
504

REAL PROPERTY ADMIN

746041 FEB 16 11



**Confidential**

KOOCOP00000929
505

`56287`

# MEMORANDUM OF OIL AND GAS LEASE

| | |
|---|---|
| STATE OF TEXAS § | |
| § | *KNOW ALL MEN BY THESE PRESENTS:* |
| COUNTY OF DE WITT § | |

WHEREAS, THAT on the 22nd day of October, 2007, Lorene H. Koopmann, an unmarried woman, whose address is, 405 FM 108, Yorktown, Texas 78164, hereinafter called "LESSOR", did enter into and deliver unto HAWKE ENTERPRISES whose address is 330 Rayford Road, Suite 196, Spring, Texas 77386, hereinafter called "LESSEE", that certain Oil and Gas Lease, covering 120 acres of land, more or less, in DeWitt County, Texas, said lands being more fully described as follows, to wit:

120 acres of land, more or less, being a part of Section No. 13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, and being the same land described as **TRACT NO. ONE** and **TRACT NO. TWO** in that certain Deed, dated December 27, 1996, from Lois Strieber, Individually and as Independent Executrix of the Estate of Jerry Strieber, deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, and being recorded in Volume 14, page 425, Official Public Records, DeWitt County, Texas.

The abovementioned Oil and Gas Lease provides for a three (3) year primary term from October 22, 2007 (unless extended pursuant to the terms therein) and contains an option to extend the primary term for an additional two (2) years, and is subject to all other terms and provisions set forth in said Oil and Gas Lease. A copy of said Oil and Gas Lease is in the possession of Lessor and Lessee, named herein.

This Memorandum may be executed either as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one Memorandum. Should less than all the named Lessors execute this Memorandum, this Memorandum and its respective Oil and Gas Lease shall be binding on those who are signatories.

IN WITNESS WHEREOF, this instrument is effective on the date first above written.

*Lorene H. Koopmann*
Lorene H. Koopmann

STATE OF TEXAS §

COUNTY OF DeWitt §

This instrument was acknowledged before me on this _2et_ day of October, 2007, by Lorene H. Koopmann.

CHRISTOPHER M. CRAIN
Notary Public, State of Texas
My Commission Expires
January 30, 2011

Notary Public, State of Texas

56287
**Filed for Record**
This, the 14th day of Dec. 2007
at 1:30 o'clock P M
ELVA PETERSEN, COUNTY CLERK OF
DeWitt County, Texas
_____
Deputy

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument
was filed on the date & time stamped
hereon by me & was duly recorded
in the Volume & Page of the Official
Public Records of DeWitt Co. Texas.

ELVA PETERSEN CO. CLERK
BY _____
Vol. 243 Page 876

✗After recording return to:

Hawke Enterprises
330 Rayford Road, Suite 196
Spring, TX 77386

**Confidential**

KOOCOP00000930
506

67901

## NOTICE OF EXERCISE OF OPTIONS TO EXTEND MINERAL LEASES

STATE OF TEXAS

COUNTY OF DEWITT

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, BURLINGTON RESOURCES OIL & GAS COMPANY LP, a Delaware limited partnership, whose address is PO Box 2197, Houston, Texas, 77252-2197 (herein referred to as "Lessee) is the owner of those certain oil, gas and mineral leases identified on Exhibit "A" attached hereto and made a part hereof for all purposes (herein referred to as "Mineral Leases"); and

WHEREAS, each of the Mineral Leases provide that the primary term may be extended at any time prior to the expiration of the original primary term period by tendering to the respective lessor(s) the option bonus prescribed in the lease via check or draft tendered to the depository bank named in the lease or mailed to the lessor(s) at the addresses provided in said Mineral Lease (or such other address as lessor may subsequently furnish Lessee via written notice); and

WHEREAS, the Mineral Leases further provide that should the option to extend the primary term be exercised, it shall be considered for all purposes as if the original primary term in each of such Mineral Leases was for a period of five (5) years; and

WHEREAS, Lessee has elected to exercise the option to extend the primary term of each of the Mineral Leases identified in Exhibit "A" attached hereto by tendering payment by check or draft as set forth in said Mineral Leases.

NOW, THEREFORE, Lessee hereby places third parties on notice that it has exercised the option to extend the primary term of the Mineral Leases described on Exhibit "A" attached hereto to a total of five (5) years in each of such leases by tendering the consideration recited in the respective Mineral Leases by check or draft in accordance with the terms, conditions and provisions of the respective Mineral Leases.

IN WITNESS WHEREOF, this Notice of Exercise of Options to Extend Mineral Leases has been executed on this 3rd day of March, 2010.

Burlington Resources Oil & Gas Company LP
by BROG GP Inc., its sole General Partner

By: _____
Mark B. Carlisle, Attorney-in-Fact

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on the 3rd day of March, 2010, by Mark B. Carlisle, Attorney-in-Fact of BROG GP Inc., acting as sole general partner of Burlington Resources Oil & Gas Company LP, a Delaware limited partnership, on behalf of said limited partnership.

My commission expires:
12-11-2010

_____
Notary Public in and for the State of Texas



DENISE DUPLANTIER
MY COMMISSION EXPIRES
December 11, 2010

305486-000

**Confidential**

KOOCOP00000931

507

Confidential

KOOCOP00000932

EXHIBIT "A"
TO·
NOTICE OF EXERCISE OF OPTIONS TO EXTEND MINERAL LEASES

| LEASE NUMBER | LESSOR | EFFECTIVE DATE | ORIGINAL LESSEE | STATE | COUNTY | RECORDING INFORMATION BOOK | PAGE |
|---|---|---|---|---|---|---|---|
| 303680-000 | John Paul Guidry | February 19, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 224 | 296 |
| 303701-000 | Edwin O Rossow et ux | March 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 415 |
| 303750-000 | William Dworaczyk | February 2, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 224 | 288 |
| 303857-000 | Andrew M Hodge | April 9, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 481 |
| 303860-000 | Teddy W Aven et ux | April 18, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 358 |
| 303973-000 | Florian Konczewski et ux | April 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 360 |
| 303974-000 | Herman Konczewski | April 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 353 |
| 304044-001 | Arlen Mueller et ux | March 14, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 495 |
| 304061-000 | Alton Ray Jalufka et ux | February 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 485 |
| 304063-000 | Sarah Aronstein et al | February 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 483 |
| 304065-000 | Lackey Land Limited | February 23, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 489 |
| 304081-000 | Jennie Lynn Hardesty | April 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 362 |
| 304082-000 | Martin Luther Wolter et ux | April 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 366 |
| 304083-000 | Leona Riedesel | January 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 487 |
| 304150-000 | Granberry Partners LTD | April 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 364 |
| 304155-000 | Bargmann Family Trust | February 14, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 501 |
| 304156-000 | Bargmann Family Trust | February 14, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 499 |
| 304160-000 | L C Thiele et ux | February 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 270 | 406 |
| 304219-000 | Johanna Wild | May 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 374 |
| 304220-000 | Jerome R Wild et ux | May 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 417 |
| 304222-000 | Robert H Meischen et ux | April 30, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 225 | 793 |
| 304224-000 | Robert T Meischen et al | April 30, 2007· | Premiere Land Services LLC | TEXAS | DE WITT | 229 | 38 |
| 304226-000 | Virginia Willmeth | May 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 228 | 357 |
| 304227-000 | Robert T Meischen et ux | April 30, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 225 | 789 |
| 304228-000 | Robert T Meischen etux | April 30, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 225 | 791 |
| 304234-000 | Paul V Gray et ux | May 8, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 423 |
| 304246-000 | Clifford Dwayne Parker et ux | July 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 722 |
| 304252-000 | Arthur Garrett Miller et ux | April 25, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 418 |
| 304253-000 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 226 | 895 |
| 304254-000 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 226 | 894 |
| 304255-001 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 226 | 893 |

Confidential

KOOCOP0000000933

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 304255-002 | Daoline Harms | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 229 | 037 |
| 304256-000 | Jerald J Rossett et ux | May 8, 2007 | Premiere Land Services LLC | TEXAS | DE WITT | 243 | 846 |
| 304260-000 | Rinehold Borchardt | May 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 869 |
| 304262-001 | Otto Lee Koenning | May 29, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 421 |
| 304262-002 | Margie Ann Dickerson | May 29, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 419 |
| | | | | | | 236 | 374 |
| | | | | | | 236 | 376 |
| 304280-000 | Darvin Mueller et al | May 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 378 |
| 304318-000 | Cody Jalufka | April 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 370 |
| 304327-000 | Hollis Baker | March 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 507 |
| 304328-000 | Jerry Wayne Schmiedlin et ux | February 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 505 |
| 304329-000 | Karen Kay Lukes | March 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 509 |
| 304331-000 | Alton Ray Jalufka et ux | March 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 222 | 503 |
| 304415-000 | Michael P Klein et ux | June 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 452 |
| 304531-000 | Rinehold Borchardt et al | May 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 841 |
| 304581-000 | Bennie Drabek et ux | June 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 725 |
| 304583-000 | Leon J Respondek et ux | June 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 727 |
| 304584-000 | Leon J Respondek et ux | June 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 729 |
| 304585-000 | Frances Warzecha | June 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 724 |
| | | | | | | 233 | 720 |
| | | | | | | 233 | 721 |
| 304589-000 | L C Sievers et al | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 766 |
| 304699-000 | Eugene Ibrom | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 737 |
| 304700-000 | Robert Lee Ibrom et ux | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 741 |
| 304701-000 | Hollis O Baker | July 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 743 |
| 304702-000 | David Ibrom et ux | July 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 716 |
| 304703-000 | Catherine Kolodziejcyk et vir | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 745 |
| 304705-000 | Robert Lee Ibrom | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 735 |
| 304707-000 | Daniel Ibrom et ux | July 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 739 |
| 304709-000 | Patricia Gail Ibrom et vir | July 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 714 |
| 304710-000 | Shirley R Crain | July 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 758 |
| 304711-000 | Melvin Straube et ux | July 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 750 |
| 304723-000 | Marvin C Koopmann | July 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 754 |
| 304771-001 | Frank Kulik et ux | July 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 733 |
| 304772-000 | Warren Lemke et ux | July 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 760 |
| 304783-000 | Robert Edward Motl etal | July 23, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 833 |
| 304842-000 | Alvin Stanchos Jr | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 756 |

509

Confidential

KOOCOP00000934

| 304865-000 | Isabell Ann Van Beveren | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 752 |
|---|---|---|---|---|---|---|---|
| 304868-000 | James Jendry | August 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 384 |
| 304870-001 | David Erler et al | August 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 762 |
| | | | | | | 233 | 764 |
| 304871-001 | Michael R Grunder et al | November 29, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 852 |
| 304885-000 | Carolyn S Weibye | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 747 |
| 304886-000 | David A Stubblefield et ux | September 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 437 |
| 304887-000 | Elna Biggs | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 234 | 392 |
| 304888-000 | Barbara J Stubblefield | September 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 435 |
| 304889-001 | Alton R Cielencki et ux | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 407 |
| 304893-000 | Marcellus W Weischwill Residuary Trust | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 400 |
| 304909-000 | Loretta Fay Burge | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 396 |
| 304911-000 | Scott Straube | August 2, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 749 |
| 304922-000 | David A Ibrom et ux | July 31, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 405 |
| 304929-000 | Morres M Van Beveren et ux | July 27, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 718 |
| 304944-000 | Barbara Thedin | October 18, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 858 |
| 304945-000 | Charles T Hahn et ux | August 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 411 |
| 304949-000 | Eugene James Ibrom | August 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 409 |
| 304950-000 | Leon James Srubar Jr etal | August 8, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 830 |
| 304951-001 | Rueben Wayne Thamm et ux | August 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 402 |
| 304956-000 | Irene Hahn | August 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 447 |
| 304958-000 | Kermit C Koehler etux | September 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 386 |
| 304959-001 | Steven D Scott et ux | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 388 |
| 305000-000 | Troy H Stuart et al | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 398 |
| 305228-000 | Jose G Perez et ux | September 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 445 |
| 305230-001 | Patricia Ann Shockley | August 8, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 449 |
| 305232-000 | Phil E Mueller et ux | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 390 |
| 305234-000 | Hilmer E Koopmann et al | September 4, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 827 |
| 305235-000 | Robert G Watson et ux | September 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 413 |
| 305236-000 | Raymond W Pawlik Jr | September 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 380 |
| 305245-000 | Karen B Robinson | September 24, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 819 |
| 305248-000 | Edwin A Baros | September 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 826 |
| 305258-000 | Hilmer E Koopmann | September 4, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 812 |
| 305260-001 | Elizabeth C Connors | August 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 433 |
| 305260-002 | Catherine Clark Ralston | August 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 431 |
| 305261-001 | Richard H Borchard Jr | August 28, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 394 |
| 305262-001 | Ralph Borchard et ux | August 28, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 443 |

510

Confidential

KOOCOP0000000935

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 305309-000 | Isabella Nelson Barrett | October 4, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 818 |
| 305310-000 | Kendrick W Baros et ux | September 24, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 825 |
| 305311-000 | Cecil M Davidson et ux | September 13, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 429 |
| 305312-000 | Quentin L Yancey et ux | October 5, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 808 |
| 305313-000 | Merelon Lovel et ux | September 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 382 |
| 305314-000 | Martin Alvarez Castillo etux | November 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 867 |
| 305317-001 | David A Wright and wife Patricia Wright | September 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 441 |
| 305328-000 | Huebner Trust | September 24, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 806 |
| 305331-000 | Marvin Stanchos | September 6, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 811 |
| 305370-001 | Michele Maraldo et al | September 11, 2007 | Hawke Enterprises | TEXAS | DE WITT | 236 | 427 |
| 305374-000 | Fred C Hughes et ux | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 829 |
| 305384-000 | Isabell Ann Van Beveren | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 815 |
| 305387-000 | Jerry McAdams et ux | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 865 |
| 305392-000 | Marjorie Breeden et al | October 25, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 854-855 |
| 305393-000 | Marjorie Breeden et al | October 25, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 860 |
| 305466-001 | David L Urban | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 810 |
| 305466-002 | Wayne D Urban | September 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 809 |
| 305469-001 | Donald Jansky et ux | September 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 804 |
| 305471-001 | Joel P Smith et ux | October 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 816 |
| 305480-000 | Karen Koopmann Koenig | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 875 |
| 305482-000 | Ralph Koopmann | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 874 |
| 305486-000 | Lorene H Koopmann | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 876 |
| 305518-000 | Sandra Hilbrich et al | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 872 |
| 305530-000 | Elenora Klaevemann | October 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 862 |
| 305533-000 | Kent Edward Hilbrich et ux | November 16, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 865 |
| 305534-001 | Elenora Klaevemann | October 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 891 |
| 305545-000 | Lois B Chesney | September 20, 2007 | Hawke Enterprises | TEXAS | DE WITT | 238 | 291 |
| 305598-000 | Amelia Ortiz | October 17, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 832 |
| 305603-000 | Elna Biggs | August 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 234 | 394 |
| 305616-000 | Michael Anthony Maron | October 10, 2007 | Hawke Enterprises | TEXAS | DE WITT | 238 | 268 |
| 305631-000 | Carl H Schlenker Jr Estate | October 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 879 |
| 305632-000 | Harland Schlenker et al | October 26, 2007 | Hawke Enterprisees | TEXAS | DE WITT | 243 | 869 |
| 305635-000 | Harland Schlenker et ux | October 26, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 871 |
| 305678-000 | Jeanne E Guerriero | October 22, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 877 |
| 305774-000 | G W Lamb III et ux | November 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 856 |
| 305787-001 | George Lowman | November 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 897 |
| 305787-002 | Hedy Stakes | November 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 895 |

511

Confidential

| 305787-003 | Edwin Earl Gaida | November 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 893 |
|---|---|---|---|---|---|---|---|
| 305932-001 | Clifford Dwayne Parker et ux | July 30, 2007 | Hawke Enterprises | TEXAS | DE WITT | 233 | 723 |
| 305932-002 | James K Crain et al | December 19, 2007 | Hawke Enterprises | TEXAS | DE WITT | 267 | 252 |
| 305939-000 | W T Mumme et ux | November 1, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 886 |
| 306048-001 | Debbie Lynn Hileman | November 21, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 885 |
| 306049-000 | Melvin R Hilbrich et ux | November 15, 2007 | Hawke Enterprises | TEXAS | DE WITT | 243 | 839 |
| 306220-000 | Johanna Wild | May 3, 2007 | Hawke Enterprises | TEXAS | DE WITT | 226 | 372 |
| 306925-001 | Robert L Zaiontz | December 7, 2007 | Hawke Enterprises | TEXAS | DE WITT | 252 | 351 |

TOGETHER WITH ALL AMENDMENTS, RATIFICATIONS, CORRECTIONS AND/OR MODIFICATIONS OF THE OIL, GAS AND MINERAL LEASES DESCRIBED HEREIN

67901

Filed for Record
This, the 4th day of March 2010
at 3:20 o'clock P. M
ELVA PETERSEN, COUNTY CLERK OF
DeWitt County, Texas
Deputy
Return: Dolphin Resources

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument was filed on the date & time stamped hereon by me & was duly recorded in the Volume & Page of the Official Public Records of DeWitt Co. Texas
ELVA PETERSEN COUNTY CLERK
Vol. 305, Page 12-17

KOOCOP0000000936

512

(Paid up Lease)
With 40/640 Acres Pooling Provision

Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the Public Records: Your Social Security Number or your Driver's License Number.

## OIL, GAS AND MINERAL LEASE
### (PAID UP LEASE)

THIS AGREEMENT made this 22nd day of October, 2007, between LORENE H. KOOPMANN, an unmarried woman, Lessor (whether one or more), whose address is: 405 FM 108, Yorktown, Texas 78164, and HAWKE ENTERPRISES, whose address is: 330 Rayford Road, Suite 196, Spring, Texas 77386, Lessee, WITNESSETH:

1. Lessor in consideration of Ten and No/100 Dollars ($10.00) in hand paid, of the royalties herein provided and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, conducting exploration, geologic and geophysical surveys by seismograph, core, test, gravity, and magnetic methods, laying pipe lines, building roads, tanks, power stations, telephone lines and other structures thereon and on, over, and across lands owned or claimed by Lessor adjacent and contiguous thereto, to produce, save, take care of, treat, transport, and own said products, and housing its employees, the following described land in DeWitt County, Texas, to-wit:

> 120 acres of land, more or less, being a part of Section No. 13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, and being the same land described as TRACT NO. ONE and TRACT NO. TWO in that certain Deed, dated December 27, 1996, from Lois Strieber, Individually and as Independent Executrix of the Estate of Jerry Strieber, deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, and being recorded in Volume 14, page 425, Official Public Records, DeWitt County, Texas.

This lease also covers and includes all land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys although not included within the boundaries of the land particularly described above.

2. Without reference to the commencement, prosecution or cessation at any time of drilling or other development operations, and/or to the discovery, development or cessation at any time of production of oil, gas or other minerals, and without further payments than the royalties herein provided, and notwithstanding anything else herein contained to the contrary, this lease shall be for a term of three (3) years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder or as long as this lease is continued in effect as otherwise provided herein.

3. The royalties to be paid by Lessee are:

(a) on oil, 1/5th of the production produced and saved from said land, the same to be delivered, free of all costs and expenses to the Lessor into the pipeline, or other receptacle to which the Lessee may connect its wells or the market value thereof, at the option of the Lessor, such value to be determined by (1) the highest posted price, plus premium, if any, offered or paid for oil, condensate, distillate, or other liquid hydrocarbons, respectively of a like type and gravity for the field where produced and when run, or (2) the gross proceeds of the sale thereof, whichever is greater.

(b) on gas, including casinghead gas or other gaseous substance, produced from said land, 1/5th of the greater of (1) the market value at the wellhead of such gas, paid to Lessor free of all costs and expenses, or (2) the gross proceeds realized from the sale of such gas, free of all costs and expenses, to the first non-affiliated third party purchaser under a bona fide arms length sale or contract. "Gross proceeds" (for royalty payment purposes) shall mean the total monies and other consideration accruing to or paid the Lessee or received by Lessee for disposition or sale of all unprocessed gas proceeds, residue gas, gas plant products or other products. Gross proceeds shall include, but is not limited to advance payments, take-or-pay payments (whether paid pursuant to contract, in settlement or received by judgment) reimbursement for production or severance taxes and any and all other reimbursements or payments

(c) If any disposition, contract or sale of oil or gas shall include any reduction or charge for the expenses or costs of production, treatment, transportation, manufacturing, process or marketing of the oil or gas, then such deduction, expense or cost shall be added to the market value or gross proceeds so that Lessor's royalty shall never be chargeable directly or indirectly with any costs or expenses other than its pro rata share of severance or production taxes.

(d) While there is a gas well on this lease or on acreage pooled therewith but gas is not being sold or used, Lessee may pay as royalty to the credit of the owner or owners of royalty hereunder in – Citizens Bank at Yorktown, Texas, (which bank and its successors are the royalty owner or owner's agent, and shall continue as depository for all such sums which Lessee may pay hereunder, regardless of changes in ownership of royalties) on or before ninety (90) days after the date on which (1) said well is shut in, or (2) the land covered hereby or any portion thereof is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein, whichever is the later date, and thereafter at annual intervals, the sum $25.00 per mineral acre, and if such payment is made or tendered, this lease shall not terminate and it will be considered that gas is being produced from this lease in paying quantities; and ( c) on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined and marketed, the royalty shall be $3.00 per long ton. Lessee shall have free use of oil, gas, coal and water from said land, except water from Lessor's wells, creeks and watering places for all operations hereunder, and the royalty on oil, gas and coal shall be computed after deducting any so used.

1



**Confidential**

4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof as to oil and gas, or either of them, with any other land covered by this lease, and/or with any other land, lease or leases in the immediate vicinity thereof to the extent hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the rules or regulations of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. Such pooling shall be into a unit or units not exceeding forty (40) acres plus an acreage tolerance of ten percent (10%) thereof for oil, and units not exceeding six hundred forty (640) acres each plus an acreage tolerance of ten percent (10%) thereof for gas, provided that, should governmental authority having jurisdiction prescribe or permit the creation of any drilling, spacing or proration units larger than those specified above, such units may be created or enlarged to conform in size to the drilling or spacing units so prescribed or permitted or to the proration units as may be authorized for obtaining the maximum allowable production from one well. Lessee may pool the acreage or interests above described, or any portion thereof, as above provided, as to oil or gas in any one or more zones, and units so formed need not conform in size or area with the unit or units into which the lease is pooled or combined as to any other zone, and oil units need not conform as to area with gas units. The pooling in one or more instances shall not exhaust the rights of the Lessee hereunder to pool this lease or portions thereof into other units. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit; and upon such recordation the unit shall be effective as to all parties hereto, their heirs, successors, and assigns, irrespective of whether or not the unit is likewise effective as to all other owners of surface, mineral, royalty, or other rights in land included in such unit. Lessee may at its election exercise its pooling option before or after commencing operations for or completing an oil or gas well on the leased premises, and the pooled unit may include, but it is not required to include, land or leases upon which a well capable of producing oil or gas in paying quantities has theretofore been completed or upon which operations for the drilling of a well for oil or gas have theretofore been commenced. In the event of operations for drilling on or production of oil or gas from any part of a pooled unit which includes all or a portion of the land covered by this lease, regardless of whether such operations for drilling were commenced or such production was secured before or after the execution of this instrument or the instrument designating the pooled unit, such operations shall be considered as operations for drilling on or production of oil or gas from land covered by this lease whether or not the well or wells be located on the premises covered by this lease and in such event operations for drilling shall be deemed to have been commenced on said land within the meaning of paragraph 5 of this lease; and the entire acreage constituting such unit or units, as to oil and gas, or either of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease. For the purpose of computing the royalties to which owners of royalties and payments out of production and each of them shall be entitled on production of oil and gas, or either of them, from the pooled unit, there shall be allocated to the land covered by this lease and included in said unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) a pro rata portion of the oil and gas, or either of them, produced from the pooled unit after deducting that used for operations on the pooled unit. Such allocation shall be on an acreage basis-that is to say, there shall be allocated to the acreage covered by this lease and included in the pooled unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that pro rata portion of the oil and gas, or either of them, produced from the pooled unit which the number of surface acres covered by this lease (or in each such separate tract) and included in the pooled unit bears to the total number of surface acres included in the pooled unit. Royalties hereunder shall be computed on the portion of such production, whether it be oil and gas, or either of them, so allocated to the land covered by this lease and included in the unit just as though such production were from such land. The production from an oil well will be considered as production from the lease or oil pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit. The formation of any unit hereunder shall not have the effect of changing the ownership of any delay rental or shut-in production royalty which may become payable under this lease. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but Lessee shall nevertheless have the right to pool as provided above with consequent allocation of production as above provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. If at the expiration of the primary term, oil, gas, or other mineral is not being produced on said land, or from land pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon, or shall have completed a dry hole thereon within 60 days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than 60 consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas, or other mineral is produced from said land, or from land pooled therewith. If, after the expiration of the primary term of this lease and after oil, gas, or other mineral is produced from said land, or from land pooled therewith, the production thereof should cease from any cause, this lease shall remain in force only if Lessee commences operations for drilling or reworking within 60 days after the cessation of such production but shall remain in force and effect so long as such operations are prosecuted with no cessation of more than 60 consecutive days, and if they result in the production of oil, gas, or other mineral, so long thereafter as oil, gas, or other mineral is produced from said land, or from land pooled therewith. Any pooled unit designated by Lessee in accordance with the terms hereof, may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and draining the leased premises, or land pooled therewith, Lessee agrees to drill such offset well or wells as a reasonably prudent operator would drill under the same or similar circumstances. Lessee may at any time execute and deliver to Lessor place of record a release or releases covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the acreage surrendered.

6. Lessee shall have the right at any time during or within six months after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. Thereafter same become the property of Lessor. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no operations shall be conducted within 500 feet of any residence or barn now on said land without Lessor's consent.

7. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns, but no change or division in ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U.S. mail at Lessee's principal place of business with a certified

2

**Confidential**

copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach.

8. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. No obligation reasonably to develop the leased premises shall arise during the primary term. Should oil, gas or other mineral in paying quantities be discovered on said premises, then after the expiration of the primary term, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, but in discharging this obligation it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil in paying quantities and one well per 640 acres plus an acreage tolerance not to exceed 10% of 640 acres of the area retained hereunder and capable of producing gas or other mineral in paying quantities. If after the expiration of the primary term, Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument.

9. Lessor hereby warrants and agrees to defend the title to all of Lessor's interest in said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land either in whole or in part, and in event Lessee does so, it shall be subrogated to such lien with the right to enforce same and apply royalties accruing hereunder toward satisfying same. Without impairment of Lessee's right under the warranty in event of failure of title, it is agreed that if Lessor owns an interest in the oil, gas or other minerals on, in or under said land less than the entire fee simple estate, whether or not this lease purports to cover the whole or a fractional interest, then the royalties to be paid Lessor shall be reduced in the proportion that his interest bears to the whole and undivided fee and in accordance with the nature of the estate of which Lessor is seized. Should any one or more of the parties named above as Lessors fail to execute this lease, it shall nevertheless be binding upon the party or parties executing the same.

10. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or on land pooled therewith or from producing oil or gas therefrom or from land pooled therewith by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of force majeure, any Federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises or land pooled therewith, and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

SEE ADDENDUM, PARAGRAPHS A THROUGH AA, ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

_Lorene H. Koopmann_
LORENE H. KOOPMANN


THE STATE OF TEXAS :
                    :
COUNTY OF DEWITT :

This instrument was acknowledged before me on the 26th day of October, 2007, by LORENE H. KOOPMANN.

CHRISTOPHER M. CRAIN
Notary Public, State of Texas
My Commission Expires
January 30, 2011

NOTARY PUBLIC, STATE OF TEXAS

3

Confidential

## ADDENDUM

THE PROVISIONS OF THIS ADDENDUM SHALL CONTROL AND GOVERN OVER ANYTHING HEREIN ABOVE PROVIDED WHICH MAY BE IN CONFLICT HEREWITH.

A. PUGH CLAUSE: Notwithstanding anything to the contrary herein contained, drilling operations on or production from a pooled unit or units established under the provision of Paragraph 4 or Paragraph X hereof, embracing land covered hereby and other land, shall maintain this lease in force only as to land included in such unit or units. The lease may be maintained in force as to the remainder of the land in any manner herein provided for.

B. INGRESS & EGRESS: In the event any of the acreage covered by this lease is released by operation of the terms of Paragraphs A or H hereof, Lessee shall have the right of ingress and egress for production purposes across the released acreage to the acreage retained hereunder if such right is necessary for Lessee to have access to the retained acreage.

C. LAND USE: (REFERENCE HEREIN TO LESSOR ALSO REFERS TO SURFACE OWNER)

(a) Should Lessor or tenants on the leased premises suffer loss of, or damage to, crops, trees, turf, livestock, water wells, fences, roads, other personal property, buildings or other improvements, as a result of operations of Lessee under this lease, Lessee agrees to pay Lessor or such tenants the actual amount of their said loss or damage. It is expressly understood and provided that the damages provided to be paid under the terms of this lease shall be payable within 60 days after written notice by Lessor to Lessee of the accrual of such damages and if such damages are not paid within 60 days from the receipt of any such notice then such damages shall bear interest at the rate of 10% per annum from the date of accrual of such damages.

(b) Within a reasonable time after Lessee's need therefor shall have ceased, Lessee shall fill all pits and other excavations made by Lessee upon the leased premises, level off all mounds made by Lessee upon the lease premises, and remove all debris and rubbish placed by Lessee upon the leased premises and restore the surface to its original pre-drilling condition as nearly as possible. Lessee shall erect and maintain around all open pits a fence capable of turning livestock. To protect Lessor's livestock, Lessee and those conducting surface and/or seismic operations on the lease premises must not allow trash, debris, or refuse from such operation to exist on the ground, including, but not limited to, flagging material, wire, plastics, chemical residue, or other foreign objects or materials that would endanger or injure livestock. Upon cessation of use thereof by Lessee, it will notify Lessor of such cessation and at the option of the Lessor will leave on the premises as part of the property of Lessor all cattle guards, water wells, bridges and roads placed thereon by Lessee, its successors or assigns. If requested by Lessor, Lessee must place all road and pad gravel in piles on the lease at locations designated by Lessor. A cattle guard with lock-bar shall be placed at the entrance onto the lease premises through which the Lessee will have access to the premises with regard to any well being drilled on the lease premises or land pooled therewith. Said lock-bar shall be kept closed and locked at all times except during times of entrance by Lessee, its agents and parties operating under the Lessee. Lessee agrees to maintain all roads and paths upon which it travels in a condition which is as good as or better than the condition of such road or pathway prior to lessee's entry upon the above-described tract. The location of any road installed by Lessee must be along a route requested by Lessor, however, Lessor must not make an unreasonable request. Any roads installed by Lessee and the drill site must be made up of at least six inches (6") of compacted gravel which gravel shall be composed of stones not in excess of two inches (2") in diameter. Adequate and ample drainage shall be provided on the roads and drill site to avoid standing water. Lessee must install a sixteen foot (16') galvanized tube gate in each of Lessor's fences through which it must pass during its operations.

( c) None of Lessor's fresh water may be used for secondary recovery methods of oil or gas production. Lessee is expressly given no right to dispose of any waste oil or salt water on or over the leased premises or land pooled therewith. All oil-based drilling mud, cuttings, and deleterious substances from the well or brought onto the premises by Lessee are to be hauled off the leased premises by Lessee. Lessee agrees that any oil based mud, drilling compound containing a hydrocarbon base or any material which is harmful to the soil used in Lessee's operations on said land will be placed in a portable steel storage container during drilling operations on said land, and Lessee shall remove all such muds, compounds, materials and storage containers from the land and dispose of it off the leased premises. Any water based drilling mud not containing any of said deleterious substances shall be spread, disced, and leveled by the Lessee near the location where the mud was used as directed by Lessor. The topsoil of the drill site must be removed before installing the drill site. After completion of its use by Lessee, all topsoil that has been removed must be returned to the original location and spread over the area, disced in, and appropriate grasses planted and re-sprigged according to the Lessor's requirements. The well equipment and location shall be kept as clean as possible at all times, and roads used by Lessee should be kept in good state of repair. Lessor reserves the right to inspect and check for accuracy all meters through which Lessor's royalty may be marketed.

(d) It is here agreed that Lessee will pay the Lessor for each surface acre used by the Lessee in its operations, whether it be for the drill site, pits, production facilities or roads, $1,500.00 per acre as agreed surface damage, in addition to paying those amounts set forth with regard to oak trees and pipelines set out below. Lessee must pay the Lessor $1.00 per foot in length for a sixty-foot (60') wide pipeline right-of-way for installing pipelines necessary for production of any well on the lease premises, which right-of-way shall reduce to a thirty-foot (30') right-of-way after construction and installation of the pipeline. Lessee must pay Lessor $750.00 as a liquidated damage amount for any oak tree damaged or destroyed by Lessee which tree has a trunk diameter over twelve inches (12") when measured twenty-four inches (24") from ground level, to be increased $100.00 per inch for each inch over 12 inches. Prior to commencing surface operations pertaining to any well to be drilled on the premises, Lessee shall pay Surface Owner all surface damages anticipated from such surface operations. Thereafter, if actual surface damages exceed the amount paid by Lessee to the surface owner, then Lessee shall pay all additional surface damages immediately.

(e) Notwithstanding the general terms of grant contained in this lease, the Lessee is not given the right to erect or maintain refining facilities, or any other extraction or treating facilities on the lease premises unless directly related to the production, treatment, and recovery of oil, gas, sulphur, and other leased minerals from this lease or from land pooled therewith, and such facilities, if any, shall be only those reasonably necessary for production, treatment and recovery of such leased substances from this lease and land pooled therewith.

(f) Upon termination of this lease, Lessee agrees, binds and obligates itself to plug in accordance with the Rules and Regulations of the Railroad Commission of Texas any well drilled by Lessee. In the event Lessee shall fail to plug such well in accordance with the foregoing provisions, then Lessor shall have the right to do so at Lessee's expense and shall be entitled to recover from Lessee all

4

**Confidential**

KOOCOP00000940
516

expenses incurred in the plugging of any such well, together with a reasonable attorney's fee and venue for such action shall be in DeWitt County, Texas.

**D. SHUT-IN LIMIT:** It is expressly agreed and provided that this lease cannot be held, maintained, nor extended under and by virtue of the shut-in gas well provision of this lease for a longer term beyond the primary term than two (2) consecutive years immediately thereafter, or for shorter terms at various intervals not to exceed in the aggregate two (2) years in all.

**E. MINERAL LIMITATION:** It is expressly understood and provided that this lease covers oil and gas and liquid hydrocarbons, along with the products and by-products thereof, but this lease does not cover uranium, fissionable materials or any other minerals of any type, here making particular mention of water, the Lessee herein being given no right to explore for, nor develop any part of the land for production of water therefrom except with regard to producing water to be used solely with regard to Lessee's oil and gas drilling operations. Notwithstanding anything to the contrary in this lease contained, Lessee shall at all times protect the herein leased land from drainage of oil and gas from wells on adjoining lands.

**F. POOLING LIMITATIONS:**
(a) In the event Lessee exercises its option to pool as authorized by the terms and provisions of Paragraph 4 herein, the right to pool for gas including condensate and distillate, is hereby limited to 160 acres plus 10% tolerance as to all horizons from the surface of the ground to a depth of 5,000 feet below the surface of the ground and to 320 acres plus 10% tolerance as to all horizons from 5,000 feet below the surface of the ground to a depth of 9,000 feet below the surface of the ground, it being understood that Lessee shall have the right to pool or unitize the lands covered hereby for gas including condensate or distillate as to all depths below 9,000 feet below the surface of the ground in accordance with the terms and provisions set forth in said Paragraph 4 above. If Lessee exercises its right to pool a gas well located on the Lessor's land, it must place into the pool at least 50% of Lessor's land originally leased and described herein, unless the said land originally leased herein does not exceed 150 acres in such case all of the land must be included in said gas pool.

(b) Lessee acquires no rights or power to pool any of the above described land for oil, it being understood and agreed that pooling provisions as provided for herein are limited to gas and/or gas distillate only.

**G. RELEASES:** Lessee must furnish to Lessor within 60 days after the termination of this lease with regard to any part of the herein leased premises from any cause a duly executed and acknowledged instrument releasing or evidencing the termination of the lease as to that part of the land upon which the lease has terminated. Lessee agrees to pay Lessor $10.00 per day as liquidated damages in DeWitt County, Texas, for Lessee's failure to furnish said release within the time provided. If the Lessee does so fail, such damages per day ARE to begin accruing on the 61st day after such termination. Said amount is agreed to be a reasonable amount to offset actual damages which are difficult to determine. Said liquated damage amount is limited to a maximum amount of $1,000.00.

**H. NON-POOLED PUGH CLAUSE:** Lessee must within 90 days after the completion of any well on the leased premises which is not pooled under the provisions of Paragraph 4 or Paragraph X hereof designate in writing and place of record with the County Clerk of DeWitt County, Texas, a description of that part of the leased premises which shall be allotted to such well for production purposes, no more than 40 acres plus 10% tolerance to be allotted in and around each well classified as an oil well by the Railroad Commission of Texas if completed at a depth of 9,000 feet or less below the surface nor more than 80 acres plus 10% tolerance to such oil well if completed at a depth of more than 9,000 feet below the surface, and no more than 160 acres plus 10% tolerance to be allotted in and around each well classified as a gas well by the Railroad Commission of Texas if completed at a depth of 5,000 feet or less below the surface of the ground, nor more than 320 acres plus 10% tolerance if completed at a depth of more than 5,000 feet below the surface of the ground but less than 9,000 feet below the surface nor more than 640 acres plus 10% tolerance to such gas well if completed at a depth of 9,000 feet or more below the surface. Production or operations on said allotted area by the Lessee shall maintain this lease in effect only with regard to the land within the described area. This lease shall terminate at the end of the primary term as to such part or parts of the leased land lying outside the allotted area unless this lease is perpetuated as to such land outside the allotted area by operations conducted thereon or by production of oil or gas or any such operations and such production in accordance with the provisions hereof.

**I. PAYMENT LOCATION:** All royalties, surface damages, and other payments due under this lease shall be payable in DeWitt County, Texas, unless otherwise herein provided.

**J. MINIMUM ROYALTY:** If the royalties to be paid under this lease during 12-month periods as described below are less than the sum of $25.00 per acre then leased ("minimum royalty"), and Lessor sends Lessee notice in writing of same, then this lease will terminate at the end of 90 days after Lessee receives written notice from Lessor, unless the Lessee pays to the royalty holders a sum of money equal to the difference between said minimum royalty per acre and the total of all royalty monies on production so paid during the applicable 12-month period. Said 12-month periods are the initial period beginning with the date of first production from the lease premises and each successive 12-month period thereafter. The payments set out in this paragraph do not relieve Lessee of the requirement of production in paying quantities to maintain this lease. Notice as to this paragraph will deemed to be given when it is deposited in the mail, certified, return receipt requested.

**K. INFORMATION PARAGRAPH:** Lessor or his agent shall have access to any well being drilled on the premises but must not interfere with Lessee's operations. At Lessor's request, Lessee must furnish Lessor or his agent with copies of logs, electrical well formation surveys and analyses of formation samples used by Lessee with regard to any well on the premises within 30 days after well completion or request, whichever is later. Lessee must furnish Lessor on request copies of sale contract concerning oil, gas, and other minerals from any well on the land. All of the above are to be furnished Lessor at his address set out above. Lessor agrees to keep all information confidential for a period of twenty four(24) months from receipt, unless said information is necessary for a lawsuit.

**L. ROYALTY PRODUCTION:** Payments of royalty under the terms of this lease shall never bear or be charged with, either directly or indirectly, any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, post-production expenses, marketing or otherwise making the oil or gas ready for sale or use, nor any costs of construction, operation or depreciation of any plant or other facilities for processing or treating said oil or gas. Anything to the contrary herein notwithstanding, it is expressly provided that the terms of this paragraph shall be controlling over the provisions of Paragraph 3(a), (b) and (d) of this lease to the contrary and this paragraph shall not be treated as surplusage despite the holding in the

5

**Confidential**

cases styled "Heritage Resources, Inc., v. Nationsbank, 939 S.W. 2d 118 (Tex. 1996) and "Judice v. Mewbourne Oil Co., 939 S.W. 2d 135-36 (Tex. 1996).

M. DEEP RIGHTS: At the end of the primary term hereof or the expiration of any extension or renewal of the primary term, whichever occurs later, this lease shall automatically expire as to all depths lying deeper than 100 feet below the deepest oil or gas strata found to be capable of producing in paying or commercial quantities during the term of this lease. Provided however, if Lessee is then engaged in drilling or reworking operations on the leased premises or lands pooled therewith, this lease shall remain in full force as to all depths so long as such drilling or reworking operations are prosecuted with no cessation of more than sixty (60) consecutive days.

N. ROYALTY PAYMENT DUE DATE: All royalty payments on actual production are due and payable within 60 days after the end of the month in which the production occurred. In the event Lessee becomes delinquent in such payment, the Lessor must notify the Lessee of the default and if Lessee does not pay the delinquent amount within 15 days after Lessor has sent such notice of the delinquency to Lessee by certified mail at its address set out above, Lessee must pay interest on the delinquent royalty amount and on all other royalties subsequently becoming delinquent until all delinquent payments have been paid, the interest rate to be 12% per year and computed as to each of the delinquent amounts beginning with the date each becomes due. Lessee's obligations to pay royalties under this lease shall be secured by a first lien under the provisions of Section 9.319 of the Texas Business and Commerce Code extending to all of Lessor's royalty share of all oil and gas production and the proceeds of such share of the production from the premises. Lessee's sale of the royalty oil and gas shall not extinguish this lien, which lien is thereby impressed on the monies received for the royalty oil and gas. In the event of Lessee's bankruptcy, Lessor shall possess a lien on all proceeds from the sale of the royalty oil and gas.

O. REPORTS: In the event of production of oil, gas, and other liquid hydrocarbons from the leased premises or land pooled therewith, the Lessee must deliver to the Lessor herein after Lessor's written request copies of all monthly oil and gas production reports required to be filed with the Texas Railroad Commission concerning the well or wells on the leased premises or land pooled therewith, such delivery to be at the same time as the filing time therefor required by said Commission.

P. NOTIFICATION: The Lessee must notify Lessor not less than 48 hours prior to any entrance on the leased premises, of the date it will enter the land, including in such notice the purpose of the entry and, if applicable, the specific location of any well to be drilled on the leased premises. This will not apply, however, to normal well inspection operations (gaugers, etc.)

Q. DEFINITIONS USED IN THIS LEASE:
(1) The terms "drilling operations" or "operations for drilling" shall mean that the drilling rig is in position with the bit on the ground and rotating.

(2) A well is "completed" under the provisions of this lease (1) five days after the well reaches total depth and no attempt is made to complete the well as a producer of oil and/or gas by running of production casing, or (2) thirty days after the date production casing is cemented in the well (as reflected by the cementing affidavit required to be filed with the Railroad Commission of Texas) in the event an attempt is made to complete the well as a producer of oil and/or gas. Any later work done on the well will be deemed to be re-working operations.

(3) A well is deemed "abandoned" at the earlier of (a) when permanently plugged, or (b) when temporarily plugged by installation of a dry-hole tree or by welding a steel plate at the top of the casing.

R. Taken Out(Negligent Loss)

S. POLLUTION AND CONTAMINATION:
(1) It is agreed and understood between the Lessor and the Lessee that the Lessee will in its operations on the leased premises comply with all Federal and State laws, rules and regulations with regard to the avoidance of pollution and contamination, including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), the Resource, Conservation and Recovery Act ("RCRA"), The Texas Health and Safety Code, Rules and Regulations of any State or Federal administrative agency and all amendments thereto as and when they become effective.

(2) Lessee assumes all responsibility to protect, defend, indemnify, and save Lessor harmless from and against all claims, demands, and causes of action of every kind and character arising directly or indirectly from any and all pollution or contamination which may occur during the conduct of operation hereunder whether above the land surface or below, including, but not limited to, those which result from spills of materials and/or garbage, or which may result from fire, blowout, cratering, seepage, or flow of oil, gas, water or other substance, as well as from the use or disposition of oils, fluids, contaminated cuttings, lost circulation and fish recovery materials and fluid.

(3) Lessee must control and remove all polluting or contaminating substances it brings or causes to be brought on the land. If a third party performing work for the Lessee commits an act or omission which results in such pollution or contamination or failure to comply with the aforementioned laws governing same, the Lessee shall be responsible therefor to the Lessor under this paragraph.

(4) This is an ongoing obligation on the part of the Lessee which survives the termination of the lease unless the Lessee furnishes to the Lessor at Lessee's expense an Environmental Audit at the termination of the lease showing that there is no pollution or contamination from Lessee's operations under this lease then in existence on the leased land or land pooled therewith. Said audit shall be conducted by a person agreed upon by Lessor and Lessee who is qualified to conduct such audit.

(5) Lessee must immediately notify Lessor upon learning or suspecting that any environmental contamination or pollution has occurred on the lease premises.

(6) Lessee must maintain in effect at all times during its operations under this lease a liability insurance policy in amount of not less than $1,000,000.00 protecting Lessor against all claims arising by virtue of the Lessee's failure to comply with the provisions of this Paragraph S, and must furnish Lessor prior to beginning such operations with proof of the existence of such policy.

6

**Confidential**

KOOCOP00000942
518

T. INDEMNIFICATION: Lessee agrees to indemnify, hold harmless and defend Lessor at Lessee's cost against all claims for damages to person or property arising out of or connected with Lessee's operations on or occupancy of the leased premises. Lessee will comply with all environmental protection and pollution laws.

U. DIVISION ORDER: Neither the Lessee nor any other party disbursing oil or gas royalty as provided under this lease or through agreement of the third party with the Lessee may require Lessor to execute a division order as a requisite for the Lessor being paid royalties with the exception that a division order that provides only a stipulation of the Lessor's royalty interest may be required of the Lessor.

V. RATIFICATION: Prior to exercising its right to pool or unitize any part of the lease premises, Lessee must obtain ratification of this lease by all holders of outstanding royalty, if any, thereby protecting Lessor from claims of such royalty holders. Lessee must bear any excess royalty occasioned by Lessee's failure to obtain such ratification.

W. 3-D SEISMIC OPERATIONS: No authority is herein granted to Lessee to conduct seismic operations using 3-D method unless Lessee pays the surface owner prior to beginning of such operations $25.00 per acre for the entire land above described. After completion of such operations, Lessee must restore the land to its original condition just prior to such operations and must pay the surface owner and any tenants the actual amount of damages arising from such operations.

X. HORIZONTAL DRILLING: In the event a well is drilled in which the horizontal component of the gross completion interval exceeds one hundred (100) feet in length ("horizontal completion well"), pooling shall be on a surface acreage basis (defined below) to include the length of the horizontal drainhole beginning at a point where the horizontal drainhole penetrates the correlative interval and extending to the terminus of such horizontal drainhole. For the purpose of this provision, "terminus", "horizontal drainhole" and "correlative interval" shall be defined in accordance with the Rules and Regulations of the Railroad Commission of Texas or other governmental authority having jurisdiction. The diagonal of said units shall comply with the Rules and Regulations of said Authority, including but not limited to, Statewide Rule 86. "Surface acreage basis" means the production on which the Lessor's royalty is calculated shall be that portion of total unit production which the surface acreage covered by this lease and included in the unit bears to the total surface acreage in the unit. The size of the unit for a horizontal completion well with a drill site located on the above described property or in which the above described property is pooled where the drill site is located off the leased premises shall not exceed the unit size permitted by the Railroad Commission of Texas. In exercising the pooling rights granted in this paragraph, Lessee shall file of record a written declaration describing the unit as to the specific leases and acreage to be included therein as well as the vertical limits of the productive horizon or zone and stating the effective date of pooling; however, as to any horizontally completed well, Lessee shall have ninety (90) days from initial completion in which to amend such written designation of unit to increase or decrease the acreage, include or exclude specific leases or tracts as well as redefine the vertical limits of the productive zone in order to form to the well spacing or density prescribed by the Railroad Commission of Texas. If such unit is filed and amended within such period of time, Lessee shall file of record in the county where the lands are located a written declaration describing the revised unit and stating the effective date of revision. To the extent any portion of the leased premises is included in or excluded from the unit by virtue of such revision, the proportion of unit production on which royalties are payable under this paragraph shall be adjusted accordingly as of the effective date for the revised unit. The effective date of any unit formed for horizontal drainhole wells under this paragraph or any revision thereof shall be the date set forth as the effective date by lessee in the written declaration that is filed of record for such unit or revision thereof.

Y. ASSIGNMENT: Lessee must advise Lessor of the names and addresses of each assignee or transferee of all or any part of the lease premises or rights hereunder within thirty (30) days after the execution of such assignment.

Z. EXTENSION: The Lessor herein grants to the Lessee the option to extend the primary term of this lease for an additional two (2) years beginning October 22, 2010, provided however for said extension to take effect, the Lessee must deliver to the Lessor on or prior to October 22, 2010, a cash amount of $24,000.00. If said amount is not delivered to the Lessor within the time provided, this option shall automatically terminate. Should the extension option be exercised as herein provided, it shall be considered for all purposes as though this Lease originally provided for a primary term of five (5) years.

AA. HEADINGS: The paragraph and section headings appearing in this agreement are for convenience of reference only and are not intended, to any extent or purpose, to limit or define the text of any paragraph.

SIGNED FOR IDENTIFICATION:


_Lorene H. Koopmann_
LORENE H. KOOPMANN

7

**Confidential**

60351

# RATIFICATION OF OIL AND GAS LEASE

305486-000

| STATE OF TEXAS | § |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DeWITT | § |

WHEREAS, on the 22nd of October, 2007, LORENE H. KOOPMANN, an unmarried woman, as Lessor, did execute and deliver to HAWKE ENTERPRISES, as Lessee, a certain Oil, Gas and Mineral Lease as evidenced by Memorandum of Oil and Gas Lease, said Memorandum being duly recorded in Volume 243, at Page 876 of the Official Public Records of DeWitt County, Texas, and covering:

120 acres of land, more or less, being a part of Section No.13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, being described as **TRACT NO. ONE** and **TRACT NO. TWO** in that certain Deed dated December 27, 1996, from Lois Strieber, Individually and as Independent Executrix of the Estate of Jerry Strieber, Deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, and being recorded in Volume 14, page 425 of the Official Public Records of DeWitt County, Texas.

hereinafter called "the Lease". Reference to said Lease and to the record thereof being made for all purposes; and,

WHEREAS, said Lease and all rights and privileges thereunder are now owned and held by BURLINGTON RESOURCES OIL & GAS COMPANY LP, whose address is P.O. Box 1967, Houston, Texas 77251-1967, hereinafter called "Lessee"; and,

WHEREAS, it is the desire of LOIS WOLPMAN STRIEBER, a widow, the undersigned, to adopt, ratify and confirm said Lease;

For adequate consideration, in hand paid, the receipt and sufficiency of which is acknowledged and confessed, I, of Lois Wolpman Strieber, a widow, the undersigned do hereby ratify, adopt and confirm the Subject Lease in all of its terms and provisions and do hereby lease, grant, demise, and let the lands covered by the Subject Lease unto BURLINGTON RESOURCES OIL & GAS COMPANY LP, subject to and in accordance with the terms and provisions of the Subject Lease as if I had been and original party to said Lease. And, I LOIS WOLPMAN STRIEBER, a widow, the undersigned, do hereby agree that the said "Lease" is a valid and subsisting Oil and Gas Lease.

In witness whereof, this instrument was executed this 3rd day of July, 2008.

Lessor:

*Lois Wolpman Strieber*
LOIS WOLPMAN STRIEBER

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DeWIT | § |

This instrument was acknowledged before me on this the 3rd day of July, 2008, by of Lois Wolpman Strieber.

TRACY SERRANO
NOTARY PUBLIC
State of Texas
My Commission Expires Jan. 10, 2009



NOTARY PUBLIC, STATE OF TEXAS
File Number: L 305486-000

Left Side _____ Right Side _____
_____ _____
Initial Date

60351

After recording please return to:

★ Hawke Enterprises
330 Rayford Road #196
Spring, Texas 77386

**Filed for Record**
This, the 14th day of Aug 20 08
at 1:30 o'clock P.M
ELVA PETERSEN, COUNTY CLERK OF
DeWitt County, Texas
_____ Deputy

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument was filed on the date & time stamped hereon by me & was duly recorded in the Volume & Page of the Official Public Records of DeWitt Co. Texas.
Date AUG 14 2008
ELVA PETERSEN, COUNTY CLERK
BY _____
Vol. 2106 Page 409

**Confidential**

KOOCOP00000944
520

REAL PROPERTY ADMIN

533497 NOV 21 88



Confidential

KOOCOP00000945

79812

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER

## RATIFICATION OF OIL, GAS AND MINERAL LEASE

STATE OF TEXAS      §
                         §

COUNTY OF DEWITT      §

THAT WHEREAS, Lorene H. Koopmann, as Lessor, did execute and deliver to Hawke Enterprises, as Lessee, a Paid-Up Oil, Gas and Mineral Lease dated October 22, 2007, a Memorandum of which is recorded in Volume 243, Page 876, Official Records, DeWitt County, Texas, covering the following described tract of land:

120 acres of land, more or less, being a part of Section no. 13, Indianola Railroad Company Survey, A-272, DeWitt County, Texas, and being the same land described as 'Tract No. One' and Tract No. Two' in that certain Deed dated December 27, 1996, from Lois Strieber, individually and as Independent Executrix of the Estate of Jerry Strieber, deceased, as Grantor, to Gilbert A. Koopmann and wife, Lorene H. Koopmann, as Grantee, recorded in Volume 14, Page 425, Official Records, DeWitt County, Texas.

(hereinafter referred to as the "Lease")

Reference to the Lease and the record of the Memorandum thereof being here made for all purposes and

WHEREAS, the Lease was assigned to Burlington Resources Oil & Gas Company, LP in an Assignment dated effective January 9, 2008, recorded in Volume 250, Page 822, Official Records, DeWitt County, Texas;

WHEREAS, the lease was extended in a Notice of Exercise of Options to Extend Mineral Leases dated March 3rd, 2010, which is recorded in Volume 305, Page 12, Official Records, DeWitt County, Texas; and

WHEREAS, it is the desire of Lois Strieber hereto to adopt, ratify and confirm said Lease, as amended.

NOW, THEREFORE, in consideration of the premises and other valuable consideration, the receipt of which is hereby acknowledged, I, LOIS STRIEBER, do hereby ADOPT, RATIFY and CONFIRM the Lease, as amended, in all of its terms and provisions, and do hereby LEASE, GRANT, DEMISE and LET unto the said Burlington Resources Oil & Gas Company, LP, its successors and assigns subject to and in accordance with all of the terms and provisions of said Lease, as amended, as fully and completely as if I had originally been named as a Lessor in the Lease and had executed, acknowledged and delivered the same. And I do hereby agree and declare that the Lease, as amended, in all of its terms and provisions is binding on me and is a valid and subsisting oil, gas and mineral lease.

Executed this _27_ day of _January_ 2011.

_Lois Strieber_
Lois Strieber

Ratification of Oil Gas Mineral Lease

30 5486/000

**Confidential**

## ACKNOWLEDGEMENT

State of Texas   §
County of DeWitt   §

This instrument was acknowledged before me on this 27th day of Jan, 2011, by Lois Strieber.

PATRICIA J. BASSETT
Notary Public, State of Texas
My Commission Expires
APRIL 5, 2013

SEAL

Notary Public, State of Texas

79812

**Filed for Record**
This, the 1 day of Sept 20 11
at 11:30 o'clock A. M

NATALIE CARSON, COUNTY CLERK OF
DeWitt County, Texas

DEPUTY

Tom Moran
2630 Fountain View Ste. 360
Houston, Tx 77057

STATE OF TEXAS
COUNTY OF DEWITT
I hereby certify that this instrument was filed on the
date & time stamped hereon by me & was duly recorded
in the Volume & Page of the Official Public Records of
DeWitt Co. Texas.
Date SEP 0 1 2011
NATALIE CARSON, COUNTY CLERK
BY
Vol. 371 Page 911-912

Ratification of Oil Gas Mineral Lease

**Confidential**

KOOCOP00000947

REAL PROPERTY ADMIN

788656 OCT 20 11

Confidential

KOOCOP00000948

**Hawks Enterprises**
330 Rayford Road, Suite 196
Spring, TX 77386
(281) 292-1353

PROSPERITY BANK
WOODCREEK BANKING CENTER, 2828 FM 1960 E.
HOUSTON, TX 77073  (281) 443-7800
68-2285/1131

**1424**

10/30/2007

PAY TO THE
ORDER OF ___ Lorene H. Koopmann ___ $ **24,000.00

Twenty-Four Thousand Only******  _____ DOLLARS 🔒

Lorene H. Koopmann
405 FM 108
Yorktown, TX 78164

MEMO  (Bonus Consideration)
120 acres, DeWitt County, TX/Burlington/Cuero West

⑈001424⑈ ⑈113122655⑈ 04⑈2187⑈11⑈



**Confidential**

**Hawke Enterprises**
330 Rayford Road, Suite 196
Spring, TX 77366
(281) 292-1363

PROSPERITY BANK
WOODCREEK BANKING CENTER, 2828 FM 1960 E.
HOUSTON, TX 77073  (281) 443-7600
88-2265/1131

1434

11/2/2007

PAY TO THE
ORDER OF  Lorene H. Koopmann

$ **6,000.00

Six Thousand Only******                                    DOLLARS

Lorene H. Koopmann
405 FM 108
Yorktown, TX 78164

MEMO  (Bonus Consideration-Balance Due)
120 acres, DeWitt County, TX/Burlington/Cuero West

⑈0014340⑈ ⑆113122655⑆ 04⑈2187⑈110⑈

**Confidential**

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK

**Dolphin Resources LLC**
20501 Katy Freeway, #214
Katy, TX 77450
(832) 630-2404

JPMorgan Chase Bank, N.A.
Dallas, TX 75201
1-800-788-7000

6552

DATE 12/29/2010

88-9377 / 1119

PAY TO THE
ORDER OF  Karen M. Koenig

$ **50,400.00

FIFTY-THOUSAND FOUR-HUNDRED AND 00/100***************************************** DOLLARS

Karen M. Koenig

MEMO  Amendment Fee 120 acres

CC Kasali

⑈6552 ⑆111993776⑈ 1801550707

305486-000

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK

**Dolphin Resources LLC**
20501 Katy Freeway, #214
Katy, TX 77450
(832) 630-2404

JPMorgan Chase Bank, N.A.
Dallas, TX 75201
1-800-788-7000

6553

DATE 12/29/2010

88-9377 / 1119

PAY TO THE
ORDER OF  Karen M. Koenig

$ **3,000.00

THREE-THOUSAND AND 00/100***************************************************** DOLLARS

Karen M. Koenig

MEMO  Miscellaneous Fee 120 acres

CC Kasali

⑈6553 ⑆111993776⑈ 1801550707

mutti
305486-000
12-27-10

**Confidential**

KOOCOP00000951
527

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**Dolphin Resources LLC**
20501 Katy Freeway, #214
Katy, TX 77450
(832) 630-2404

JPMorgan Chase Bank, N.A.
Dallas, TX 75201
1-800-788-7000

6551

DATE   12/29/2010

88-9377 / 1119

PAY TO THE
ORDER OF   **Ralph Koopmann**                                                $ **50,400.00**

*FIFTY-THOUSAND FOUR-HUNDRED AND 00/100*********************************************** DOLLARS

Ralph Koopmann

MEMO   Amendment Fee 120 acres

⑈6551 ⑆111993776⑆ 1801550707

VersaCheck Form 3000 Prestige (01/08)                     DETACH BEFORE DEPOSITING                     www.versacheck.com

---

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**Dolphin Resources LLC**
20501 Katy Freeway, #214
Katy, TX 77450
(832) 630-2404

JPMorgan Chase Bank, N.A.
Dallas, TX 75201
1-800-788-7000

6550

DATE   12/29/2010

88-9377 / 1119

PAY TO THE
ORDER OF   **Ralph Koopmann**                                                $ **3,000.00**

*THREE-THOUSAND  AND 00/100*************************************************** DOLLARS

Ralph Koopmann

MEMO   Amendment OGML 29.83 acres

⑈6550 ⑆111993776⑆ 1801550707

**Confidential**

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**Dolphin Resources LLC**
20501 Katy Freeway, #214
Katy, TX 77450
(832) 630-2404

JPMorgan Chase Bank, N.A.
Dallas, TX 75201
1-800-788-7000

6548

DATE 12/29/2010

88-9377 / 1119

PAY TO THE
ORDER OF **Lorene H Koopmann**

$ **\*\*50,400.00**

*FIFTY-THOUSAND FOUR-HUNDRED AND 00/100*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* DOLLARS

Lorene H Koopmann

MEMO Amendment OGML 120 acres

⑈6548 ⑆111993776⑆ 1801550707

VersnCheck Form 3000 Prestige (01/08)      DETACH BEFORE DEPOSITING      www.versacheck.com

---

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**Dolphin Resources LLC**
20501 Katy Freeway, #214
Katy, TX 77450
(832) 630-2404

JPMorgan Chase Bank, N.A.
Dallas, TX 75201
1-800-788-7000

6549

DATE 12/29/2010

88-9377 / 1119

PAY TO THE
ORDER OF **Lorene H Koopmann**

$ **\*\*3,000.00**

*THREE-THOUSAND AND 00/100*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* DOLLARS

Lorene H Koopmann

MEMO Miscellaneous Fee 120 acres

⑈6549 ⑆111993776⑆ 1801550707

**Confidential**

KOOCOP00000953
529

Confidential



**Hawke Enterprises**
330 Rayford Road, Suite 196
Spring, TX 77386
(281) 292-1363

PROSPERITY BANK
WOODCREEK BANKING CENTER, 2828 FM 1960 E.
HOUSTON, TX 77073   (281) 443-7600
89-2265/1131

1786

7/18/2008

PAY TO THE
ORDER OF     Lois Wolpman Strieber                                    $  **100.00

One Hundred Only******                                                          DOLLARS

Lois Wolpman Strieber
1743 St. Highway 119N
Yorktown, TX 78164

(Bonus Consideration)
Rat/Lorene Koopman/Burlington/Cuero/West

⑈001786⑈ ⑆113122655⑆ 04⑈2187⑈11⑈

KOOCOP00000954

**Confidential**

| | |
|---|---|
| **SENDER:** *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |

■ Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

**A. Signature**
X *Lorene H Koopmann*  ☐ Agent  ☐ Addressee

**B. Received by ( Printed Name)**  |  **C. Date of Delivery** 12/18/07

**D. Is delivery address different from item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No

**1. Article Addressed to:**

LORENE H KOOPMANN
Lease #: 305486-000
405 FM 108     Q4
YORKTOWN TX 78164

**3. Service Type**
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

**4. Restricted Delivery? (Extra Fee)**   ☐ Yes

**2. Article Number**
*(Transfer from service label)*
7009 2820 0004 4186 2939

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

UNITED STATES POSTAL SERVICE
RIO GRANDE DISTRICT

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Sender: Please print your name, address, and ZIP+4 in this box ●

ConocoPhillips Company
Nicole Marucci - 3W6009
PO Box 2197
Houston, TX 77252

64 1996 JAN 14 10   REAL PROPERTY ADMIN

**U.S. Postal Service**
**CERTIFIED MAIL - RECEIPT**
*(Domestic Mail Only, No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

## OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |

Postmark Here

Total Post

Sent To  LORENE H KOOPMANN
Lease #: 305486-000
Street, Apt.  405 FM 108
or PO Box N  YORKTOWN TX  78164
City, State,

PS Form 3800, August 2006      See Reverse for Instructions

7009 2820 0000 4186 2939

**Confidential**


# ConocoPhillips

December 4, 2009

CERTIFIED MAIL

Lorene H Koopmann
405 FM 108
Yorktown, TX 78164

Re: Tobin Lease No. 305486/000

Oil, Gas and Mineral Lease dated October 22, 2007, between Lorene H. Koopmann, as Lessor and Hawke Enterprises, as Lessee, recorded in Volume 243, Page 876, Official Records of DeWitt County, Texas.

Dear Ms. Koopmann:

This letter is in regard to extending the primary term of the Oil, Gas and Mineral Lease reference above. Burlington Resources Oil & Gas Company LP, an affiliate of ConocoPhillips (COPC), acquired this lease from Hawke Enterprises, and is hereby exercising the 2 year extension of the primary term option as provided in the Lease. In accordance therewith, enclosed please find a COPC Check in the amount of $24,000.00 which represents the consideration necessary to extend the primary term.

If you have any questions concerning this matter, please feel free to contact me at 918-661-0323.

Sincerely yours,

CONOCOPHILLIPS COMPANY

Tuff B. Alstrom

enclosure

1-86 S

**Confidential**

**KOOCOP00000957**
533

CONOCOPHILLIPS COMPANY RENTAL RECEIPT

```
-----------------------------------------------------------------------
| Lease Date |Original Lessor            | |#Mth|Mth Begin |Lease Number |
-----------------------------------------------------------------------
| 10-22-2007 |Lorene H Koopmann·        | |00  |12-01-2011|305486/000   |
-----------------------------------------------------------------------
```

AGENCY LEASE NUMBER:
IN PAYMENT OF:Shut-in Royalty          Business Unit   :GULF COAST


REMARKS: Shut-in payment for the Lackey Unit A Well.

RECORDED: Book 243 Page 876 Reception # 56287

TRACT: 1        COUNTRY: US     STATE: TX     COUNTY: DE WITT          NET ACRES
Prospect: EAGLE FORD (COTE D'OR) CUERO WEST (BR)                        120.000
Asset Area:CENTRAL TX GC
    LEGAL (Part of):I RR CO S13 ABST/ID# 272 Grantee  QQ ALL

FOR THE CREDIT OF:                                                     PAYMENT

KAREN M KOENIG                              (BA# 0286977001)          $3,000.00
3489 STATE HWY 72 W
CUERO                                   TX    77954
                    ACCT:


(DPS# 0286977001)         TOTAL BANK SERVICE CHARGE                       $.00
                          TOTAL AMOUNT PAID                          $3,000.00




                                                        106964


-----------------------------------------------------------------------------
      CONOCOPHILLIPS COMPANY
      P.O. BOX 7500                                      106964
      BARTLESVILLE, OK.  74005-7500

Prop. No.  305486/000
Serial No.
Period covered 00 months BEGINNING 12-01-2011
Check Date 12-08-2011

            ********3,000*DOLLARS AND* 00*CENTS     **********$3,000.00

      KAREN M KOENIG                                       V O I D
      3489 STATE HWY 72 W                                  V O I D
      CUERO                   TX    77954                  V O I D
                                                           V O I D
```

Sent 12/8/11

Standard Mail         TBA  DEC 08 2011

1/11/12 - prelim escheat TA   Amount to escrow 1/26/2012

**Confidential**

KOOCOP00000958
534



Diane Schaenen, CPL
Staff Landman – North Eagleford Asset Team
Gulf Coast Business Unit
3WL-5012
P.O. Box 2197
Houston, TX 77252-2197
Phone: 832.486.3922    Fax: 832.486.2296

December 7, 2011

Ralph Koopmann, Individually and as A-I-F for Lorene Koopmann
774 Stanchos Road
Yorktown, TX 78164

Karen M. Koenig, Individually and as Attorney In-Fact for Lorene Koopmann
3489 State Hwy 72 W.
Cuero, TX 77954

Lois Strieber
P.O. Box 456
Yorktown, TX 78164

Re:    Shut-In Royalty Payment
       Lackey Unit A #1 well
       DeWitt County, TX

Ladies and Gentlemen:

Burlington Resources Oil & Gas Company LP ("Burlington") recently drilled the captioned well in DeWitt County, TX. The well was spudded on October 30, 2011, and the drilling rig was released approximately November 28, 2011 We anticipate beginning a frac job on the well December 11, 2011, which will last four days. Subsequent to frac'ing the well, we will flare it for two days to establish commercial production.

The spacing unit for said well includes an oil, gas and mineral lease from Lorene H. Koopmann to Hawke Enterprises dated October 22, 2007.

The deed from Lois Strieber to Gilbert and Lorene Koopmann requires commercial production on or before December 27, 2011 or the interest retained by Mrs. Strieber reverts to Mrs. Koopmann. However, the deed also provides for the payment of shut-in royalties.

We are tendering shut-in royalties to ensure that all parties' interest, if any, in the well is maintained.

Consequently, we are enclosing checks for all of you which constitute shut-in royalty payments and conform to the terms of the deed from Mrs. Strieber to Mr. and Mrs. Koopmann. We anticipate that the Lackey Unit A #1 well will be producing first quarter 2012.

Sincerely,

Diane Schaenen

Encl.

Confidential



CONOCOPHILLIPS COMPANY RENTAL RECEIPT

```
----------------------------------------------------------------
|Lease Date |Original Lessor              |#Mth|Mth Begin |Lease Number |
----------------------------------------------------------------
|10-22-2007 |Lorene H Koopmann            |00  |12-01-2011|305486/000 |
----------------------------------------------------------------
```

AGENCY LEASE NUMBER:
IN PAYMENT OF:Shut-in Royalty          Business Unit   :GULF COAST

REMARKS: Shut-in payment for the Lackey Unit A Well.

RECORDED: Book 243 Page 876 Reception # 56287

TRACT: 1        COUNTRY: US     STATE: TX     COUNTY: DE WITT          NET ACRES
Prospect: EAGLE FORD (COTE D'OR) CUERO WEST (BR)                        120.000
Asset Area:CENTRAL TX GC
      LEGAL (Part of):I RR CO S13 ABST/ID# 272 Grantee  QQ ALL

FOR THE CREDIT OF:                                                      PAYMENT

LOIS STRIEBER                          (BA# 0347466001)               $3,600.00
PO BOX 458
YORKTOWN                               TX    78164
                    ACCT:

(DPS# 0347466001)        TOTAL BANK SERVICE CHARGE                        $.00
                         TOTAL AMOUNT PAID                            $3,600.00


                                                                       106965

---------------------------------------------------------------------------
    CONOCOPHILLIPS COMPANY
    P.O. BOX 7500                                                       106965
    BARTLESVILLE, OK. 74005-7500

Prop. No.  305486/000
Serial No.
Period covered 00 months BEGINNING 12-01-2011
Check Date 12-08-2011

            *******3,600*DOLLARS AND* 00*CENTS      **********$3,600.00

    LOIS STRIEBER                                        V O I D
    PO BOX 458                                           V O I D
    YORKTOWN                   TX    78164               V O I D
                                         CLEARED

                                      DEC 1 4 2011

                                              TBA  DEC 0 8 2011
```

12/8/11
Standard Mail

Confidential

KOOCOP00000960
536



**ConocoPhillips**

Diane Schaenen, CPL
Staff Landman – North Eagleford Asset Team
Gulf Coast Business Unit
3WL-6012
P.O. Box 2197
Houston, TX 77252-2197
Phone: 832.486.3922    Fax: 832.486.2296

December 7, 2011

Ralph Koopmann, Individually and as A-I-F for Lorene Koopmann
774 Stanchos Road
Yorktown, TX 78164

Karen M. Koenig, Individually and as Attorney In-Fact for Lorene Koopmann
3489 State Hwy 72 W.
Cuero, TX 77954

Lois Strieber
P.O. Box 458
Yorktown, TX 78164

Re:    Shut-In Royalty Payment
       Lackey Unit A #1 well
       DeWitt County, TX

Ladies and Gentlemen:

Burlington Resources Oil & Gas Company LP ("Burlington") recently drilled the captioned well in DeWitt County, TX. The well was spudded on October 30, 2011, and the drilling rig was released approximately November 28, 2011  We anticipate beginning a frac job on the well December 11, 2011, which will last four days. Subsequent to frac'ing the well, we will flare it for two days to establish commercial production.

The spacing unit for said well includes an oil, gas and mineral lease from Lorene H. Koopmann to Hawke Enterprises dated October 22, 2007.

The deed from Lois Strieber to Gilbert and Lorene Koopmann requires commercial production on or before December 27, 2011 or the interest retained by Mrs. Strieber reverts to Mrs. Koopmann. However, the deed also provides for the payment of shut-in royalties.

We are tendering shut-in royalties to ensure that all parties' interest, if any, in the well is maintained.

Consequently, we are enclosing checks for all of you which constitute shut-in royalty payments and conform to the terms of the deed from Mrs. Strieber to Mr. and Mrs. Koopmann. We anticipate that the Lackey Unit A #1 well will be producing first quarter 2012.

Sincerely,

Diane Schaenen

Encl.

**Confidential**                                                    KOOCOP00000961
                                                                           537

CONOCOPHILLIPS COMPANY RENTAL RECEIPT

```
----------------------------------------------------------------------------
| Lease Date |Original Lessor              |#Mth|Mth Begin |Lease Number    |
----------------------------------------------------------------------------
| 10-22-2007 |Lorene H Koopmann            |00  |12-01-2011|305486/000      |
----------------------------------------------------------------------------
```

AGENCY LEASE NUMBER:
IN PAYMENT OF:Shut-in Royalty          Business Unit   :GULF COAST

REMARKS: Shut-in payment for the Lackey Unit A Well.

RECORDED: Book 243 Page 876 Reception # 56287

TRACT: 1        COUNTRY: US     STATE: TX     COUNTY: DE WITT          NET ACRES
Prospect: EAGLE FORD (COTE D'OR) CUERO WEST (BR)                       120.000
Asset Area:CENTRAL TX GC
    LEGAL (Part of):I RR CO S13 ABST/ID# 272 Grantee  QQ ALL

FOR THE CREDIT OF:                                                     PAYMENT

LORENE H KOOPMANN                          (BA# 0286975001)            $3,000.00
RALPH KOOPMANN & KAREN M KOENIG AIFS
405 FM 108
YORKTOWN                              TX     78164
                ACCT:

(DPS# 0286975001)         TOTAL BANK SERVICE CHARGE                    $.00
                          TOTAL AMOUNT PAID                            $3,000.00


                                                                      106963

----------------------------------------------------------------------------
    CONOCOPHILLIPS COMPANY
    P.O. BOX 7500                                         106963
    BARTLESVILLE, OK.  74005-7500

Prop. No.  305486/000
Serial No.
Period covered 00 months BEGINNING 12-01-2011
Check Date 12-08-2011

        ********3,000*DOLLARS AND* 00*CENTS      **********$3,000.00

    LORENE H KOOPMANN                            V O I D
    RALPH KOOPMANN & KAREN M KOENIG AIFS         V O I D
    405 FM 108                                   V O I D
    YORKTOWN            TX    78164              V O I D
                                                 V O I D
```

*See Attached address*

*12/8/11 Sent Standard mail* TBA DEC 0 8 2011

*11/1/12 – prelim escheat* *Allow to escheat 4/16/2012*

Confidential                                              KOOCOP00000962
                                                                        538



Diane Schaenen, CPL
Staff Landman – North Eagleford Asset Team
Gulf Coast Business Unit
3WL-5012
P.O. Box 2197
Houston, TX 77252-2197
Phone: 832.486.3922    Fax: 832.486.2296

December 7, 2011

Ralph Koopmann, Individually and as A-I-F for Lorene Koopmann
774 Stanchos Road
Yorktown, TX 78164

Karen M. Koenig, Individually and as Attorney In-Fact for Lorene Koopmann
3489 State Hwy 72 W.
Cuero, TX 77954

Lois Strieber
P.O. Box 458
Yorktown, TX 78164

Re:    Shut-In Royalty Payment
       Lackey Unit A #1 well
       DeWitt County, TX

Ladies and Gentlemen:

Burlington Resources Oil & Gas Company LP ("Burlington") recently drilled the captioned well in DeWitt County, TX. The well was spudded on October 30, 2011, and the drilling rig was released approximately November 28, 2011  We anticipate beginning a frac job on the well December 11, 2011, which will last four days. Subsequent to frac'ing the well, we will flare it for two days to establish commercial production.

The spacing unit for said well includes an oil, gas and mineral lease from Lorene H. Koopmann to Hawke Enterprises dated October 22, 2007.

The deed from Lois Strieber to Gilbert and Lorene Koopmann requires commercial production on or before December 27, 2011 or the interest retained by Mrs. Strieber reverts to Mrs. Koopmann. However, the deed also provides for the payment of shut-in royalties.

We are tendering shut-in royalties to ensure that all parties' interest, if any, in the well is maintained.

Consequently, we are enclosing checks for all of you which constitute shut-in royalty payments and conform to the terms of the deed from Mrs. Strieber to Mr. and Mrs. Koopmann. We anticipate that the Lackey Unit A #1 well will be producing first quarter 2012.

Sincerely,

Diane Schaenen

Encl.

Confidential

2-294E

CONOCOPHILLIPS COMPANY
Real Property Administration
P. O. Box 7500.
Bartlesville OK 74005

**ConocoPhillips**

Ralph Koopmann, Individually & as AIF for Lorene Koopmann
774 Stanchos Road
Yorktown, TX 78164

Confidential

KOOCOP00000964

CONOCOPHILLIPS COMPANY RENTAL RECEIPT

```
-----------------------------------------------------------------------
| Lease Date |Original Lessor              |#Mth|Mth Begin |Lease Number |
-----------------------------------------------------------------------
| 10-22-2007 |Lorene H Koopmann            |00  |12-01-2011|305486/000   |
-----------------------------------------------------------------------
```

AGENCY LEASE NUMBER:
IN PAYMENT OF:Shut-in Royalty          Business Unit  :GULF COAST

REMARKS: Shut-in payment for the Lackey Unit A Well.

RECORDED: Book 243 Page 876 Reception # 56287

TRACT: 1        COUNTRY: US     STATE: TX    COUNTY: DE WITT          NET ACRES
Prospect: EAGLE FORD (COTE D'OR) CUERO WEST (BR)                      120.000
Asset Area:CENTRAL TX GC
     LEGAL (Part of):I RR CO S13 ABST/ID# 272 Grantee  QQ ALL

FOR THE CREDIT OF:                                                   PAYMENT

RALPH KOOPMANN                          (BA# 0286976001)            $3,000.00
774 STANCHOS RD
YORKTOWN                            TX    78164
                   ACCT:

(DPS# 0286976001)          TOTAL BANK SERVICE CHARGE                    $.00
                           TOTAL AMOUNT PAID                       $3,000.00


                                                          106962

---------------------------------------------------------------------------
     CONOCOPHILLIPS COMPANY
     P.O. BOX 7500                                        106962
     BARTLESVILLE, OK.  74005-7500

Prop. No.  305486/000
Serial No.
Period covered 00 months BEGINNING 12-01-2011
Check Date 12-08-2011

          ********3,000*DOLLARS AND* 00*CENTS        **********$3,000.00

     RALPH KOOPMANN                                        V O I D
     774 STANCHOS RD                                       V O I D
     YORKTOWN                   TX    78164                V O I D
                                                           V O I D
```

*Sent 12/8/11*
*Standard mail*
*11/1/12 - prelim escheat*
*TA*

TBA DEC 08 2011

*Allow to escheat -TB 11/20/2012*

**Confidential**

KOOCOP00000965
541



Diane Schaenen, CPL
Staff Landman – North Eagleford Asset Team
Gulf Coast Business Unit
3WL-5012
P.O. Box 2197
Houston, TX 77252-2197
Phone: 832.486.3922    Fax: 832.486.2296

December 7, 2011

Ralph Koopmann, Individually and as A-I-F for Lorene Koopmann
774 Stanchos Road
Yorktown, TX 78164

Karen M. Koenig, Individually and as Attorney In-Fact for Lorene Koopmann
3489 State Hwy 72 W.
Cuero, TX 77954

Lois Strieber
P.O. Box 458
Yorktown, TX 78164

Re:    Shut-In Royalty Payment
       Lackey Unit A #1 well
       DeWitt County, TX

Ladies and Gentlemen:

Burlington Resources Oil & Gas Company LP ("Burlington") recently drilled the captioned well in DeWitt County, TX. The well was spudded on October 30, 2011, and the drilling rig was released approximately November 28, 2011  We anticipate beginning a frac job on the well December 11, 2011, which will last four days. Subsequent to frac'ing the well, we will flare it for two days to establish commercial production.

The spacing unit for said well includes an oil, gas and mineral lease from Lorene H. Koopmann to Hawke Enterprises dated October 22, 2007.

The deed from Lois Strieber to Gilbert and Lorene Koopmann requires commercial production on or before December 27, 2011 or the interest retained by Mrs. Strieber reverts to Mrs. Koopmann. However, the deed also provides for the payment of shut-in royalties.

We are tendering shut-in royalties to ensure that all parties' interest, if any, in the well is maintained.

Consequently, we are enclosing checks for all of you which constitute shut-in royalty payments and conform to the terms of the deed from Mrs. Strieber to Mr. and Mrs. Koopmann. We anticipate that the Lackey Unit A #1 well will be producing first quarter 2012.

Sincerely,

Diane Schaenen

Encl.

**Confidential**                                           KOOCOP00000966
                                                                      542

## ConocoPhillips Company
## Real Property Administration
## Division Order Department

Date:      3/8/12

Requestor: woolmor

To: ConocoPhillips Company

PO Box 7500

Bartlesville. OK 74005-7500



Owner
Name
and
Address:

KAREN M KOENIG

Owner No.:  0288977002

2469 ST HWY 72 W

CUERO, TX 77954

The undersigned certifies the ownership of their decimal interest in production or proceeds as described on Exhibit A payable by ConocoPhillips Company.

ConocoPhillips Company shall be notified, in writing, of any change in ownership, decimal interest, or payment address. All such changes shall be effective the first day of the month following receipt of such notice.

ConocoPhillips Company is authorized to withhold payment pending resolution of a title dispute or adverse claim asserted regarding the interest in production claimed herein by the undersigned. The undersigned agrees to indemnify and reimburse ConocoPhillips Company for all claims arising from, and amounts attributable to, an interest to which the undersigned is not entitled.

ConocoPhillips Company may accrue proceeds until the total amount equals $100, or pay Annually, whichever occurs first, or as required by applicable state statute.

This Division Order does not amend any lease or operating agreement between the undersigned and the lessee or operator or any other contracts for the purchase of oil or gas.

In addition to the terms and conditions of this Division Order, the undersigned and payor may have certain statutory rights under the laws of the state in which the property is located.

Special Clause:  The interest certified by the undersigned includes all oil (defined as crude oil and condensate) and proceeds derived from the sale of all oil and gas (defined as natural gas and casinghead gas) produced, including all substances produced with such oil and gas, attributable to the interest described herein. From the effective date and until further written notice, and subject to the provisions herein, ConocoPhillips Company or ConocoPhillips Company's designated agent, is authorized to take or purchase such production and proceeds from the sale of oil and gas, in accordance with the division of interest described herein.

Additional Special Clauses:

THIS DIVISION ORDER REFLECTS OWNERSHIP IN THE LACKEY UNIT A #1 WELL.

Owner Signature(s): _____                      Corrected Address

                        (Owner Signature)                        _____

                        _____                   _____

                        (Print Owner Name)                       _____

Owner(s) Tax Id Number(s):    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                        _____

Owner Daytime Telephone #: _____                        _____

Owner Fax Telephone #: _____

Federal law requires you to furnish your Social Security or Taxpayer Identification Number. Failure to comply will result in tax withholding, in accordance with Federal Law, and will not be refundable by ConocoPhillips Company.

C. NIGHTINGALE                                              I             DO 109466-L

## Exhibit A - D/O and Ownership Description

Requestor:   woolmer

Run Date:        3/8/12

| Owner No.: | 0286977D02 | KAREN M KOENIG | | |
|---|---|---|---|---|
| D/O Number and Name: | A717076 | G0001 (GAS) | LACKEY UNIT A #1 | |
| File Number: | 109466 | | | Operator:   BURLINGTON RESOURCES O&G CO LP |
| Effective Date: | 2/1/2012 | Interest Type/Decimal: | RI   0.00669675 | Pay Code:  PAY |

| St | County | Sect | Twp | Rng | OOGasS.et | Remarks |
|---|---|---|---|---|---|---|
| TX | DE WITT | | | | | |

669.00 acres, more or less, out of J. H. Richter Survey, Abstract 013, the Indianola Railroad Company Survey 13, Abstract 272 and the Indianola Railroad Company Survey 15, Abstract 277, in DeWitt County, Texas, being more fully described in the Designation of Gas Unit for the Burlington - Lackey Unit A dated effective October 1, 2011, recorded at File Number 64764 of the Official Public Records of DeWitt County, Texas, and being composed of the following eight tracts:

Tract 1- 1.74 acres, more or less, being that portion of the following described 4.2 acre tract lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A; said 4.2 acres being out of the Indianola Railroad Company Survey, Section 13, Abstract 272; the Indianola Railroad Company Survey, Abstract 273; the Indianola Railroad Company Survey, Section 15, Abstract 277; the Indianola Railroad Company Survey, Abstract 684; the J. M. Stanford Survey, Abstract 548; the L. Jane Hunter Survey, Abstract 385; the David Hunter Abstract 583; and the Thomas Gilmp Survey, Abstract 201, in DeWitt County, Texas, and being the same land described in that certain conveyance of Right-of-Way dated February 18, 1898, recorded at Volume 45, Page 528 of the Deed Records of DeWitt County, Texas, from Jane Hunter to DeWitt County, Texas.

Tract 2; 458.84 acres, more or less, being that portion of the following described 538.28 acre tract lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A; said 538.28 acres being out of the Indianola Railroad Company Survey, Section 13, Abstract 272; the Indianola Railroad Company Survey, Section 14, Abstract 648; and the Indianola Railroad Company Survey, Section 15, Abstract 277, in DeWitt County, Texas, and being more fully described in that certain Warranty Deed dated June 19, 2003, recorded at Volume 130, Page 866 of the Official Public Records of DeWitt County, Texas, from Page Saunders to Lackey Land Limited described as Tract 2;

Tract 3; 81.77 acres, more or less, being that portion of the following three tracts lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A;
154.70 acres, more or less, out of the Indianola Railroad Company Survey, Section 19 Abstract 274, the Indianola Railroad Company Survey, Section 21, Abstract 275; and the Indianola Railroad Company Survey, Section 15, Abstract 277, in DeWitt County, Texas, and being the same lands described as "Tract B-1", Tract B-2", and "Tract B-3" in a Deed dated May 28, 2004, recorded at Volume 145, Page 266 of the Official Public Records of DeWitt County, Texas, from Barton Jaluska et al. to Hilmer E. Koopman;
51.58 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272 and the Indianola Railroad Company Survey, Section 15, Abstract

305

Requestor: woolmer

## Exhibit A - D/O and Ownership Description

277, in DeWitt County, Texas, and being the same lands described in a Deed dated January 26, 2005, recorded at Volume 158, Page 703 of the Official Public Records of DeWitt County, Texas, from Ann Koopman, et al, to Hilmer E. Koopman;

60.40 acres, more or less, out of the Indianola Railroad Company Survey, Section 19, Abstract 274, in DeWitt County, Texas, and being the same lands described in a Deed dated December 7, 1965, recorded at Volume 184, Page 485 of the Deed Records of DeWitt County, Texas, from Alfred Kimmel and wife, Mary Kimmel, to Hilmer E. Koopman;

Tract 4: 118.47 acres, more or less, being comprised of the following two tracts totaling 120 acres, lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A;

100 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, and being the same land described as "Tract No. One" in a Warranty Deed dated December 27, 1996, recorded at Volume 14, Page 425 of the Official Records of DeWitt County, Texas, from Lois Strieber, individually and as independent Executrix of the Estate of Jerry Strieber to Gilbert A. Koopman and wife, Lorene H. Koopman;

20.00 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, and being the same land described as "Tract No. Two" in a Warranty Deed dated December 27, 1996, recorded at Volume 14, Page 425 of the Official Records of DeWitt County, Texas, from Lois Strieber, individually and as independent Executrix of the Estate of Jerry Strieber to Gilbert A. Koopman and wife, Lorene H. Koopman;

Tract 5: 2.18 acres (a/k/a 2.18 acres) more or less, being out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, comprising a portion of County Road 392 and County Road 394, and being the same land described in that certain Conveyance of Right-of-Way dated January 29, 1933, recorded at Volume 105, Page 207 of the Deed Records of DeWitt County, Texas, from V. W. Blake, et al to DeWitt County, Texas.

Tract 6: 0.91 acres, (a/k/a .914 acres) more or less, being out of the Indianola Railroad Survey, Section 13, Abstract 272, in DeWitt County, Texas, comprising a portion of County Road 392, and being the same land described in that certain Road Deed dated February 27, 1929, recorded at Volume 98, Page 597 of the Deed Records of DeWitt County, Texas, from G. W. Afflerbach and wife, Helen Afflerbach to DeWitt County, Texas;

Tract 7a: 1.44 acres, more or less, being that portion of County Road 394 lying between the western boundary line of the following described 98.21 acre tract and the centerline of County Road 394 and lying within the boundaries of the Burlington Resources Oil & Gas Company, LP -Lackey Unit A; said 98.21 acres being out of the J. H. Richter Survey, Abstract 540; the E. W. Matthews Survey, Abstract 342; the Indianola Railroad Company Survey, Section 13, Abstract 272; and the J. H. Richter Survey, Abstract 613, in DeWitt County, Texas, and being more fully described in that certain Warranty

Requestor.   wookmor                    **Exhibit A - D/O and Ownership Description**
                                                                              Run Date:        3/8/12

Deed with Vendor's Lien dated December 16, 1993,
recorded at Volume 357, Page 25 of the Deed Records of
DeWitt County, Texas, from Edith Hesse Billfige to Louis
R. Wileka;

Tract 7b:  1.42 acres, more or less, being that portion
of County Road 394 lying between the western boundary
line of the following described 106.477 acre tract and
the centerline of County Road 394 and lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP -Lackey Unit A; said 106.477 acres being out
of the J. Heinrich Richter Survey, Abstract 613, in
DeWitt County, Texas, and being more fully described as
two tracts in that certain Warranty Deed dated October
30, 1998, recorded at Volume 46, Page 557 of the
Official Public Records of DeWitt County, Texas, from
Charles William Stillwell and Patricia Stillwell,
husband and wife, to Louis R. Wileka;

Tract 8:  1.25 acres, more or less, being that portion
of County Road 392 lying between the northeastern
boundary line of the following described 198.66 acre
tract and the centerline of County Road 392 and lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackey Unit A; said 198.66 acres being
out of the Indianola Railroad Survey 19, Abstract 274,
in DeWitt County, Texas, and being the same land
described in a Deed dated November 16, 1985, recorded at
Volume 12, Page 527 of the Official Public Records of
DeWitt County, Texas, from Carlton H. Mueller,
Independent Executor of the Estate of Regina Mueller to
Phil E. Mueller and wife, Gina R. Mueller;
all of said lands being located in DEWITT COUNTY, TEXAS.

| Owner No.: | 0286977002 | KAREN M KOENIG | | | | | |
|---|---|---|---|---|---|---|---|
| D/O Number and Name: | A717078 | N0001 (NGL) | LACKEY UNIT A #1 | | | | |
| File Number: | 109488 | | | | Operator: | BURLINGTON RESOURCES O&G CO LP | |
| Effective Date: | 2/1/2012 | Interest Type/Decimal: | RI | 0.00669675 | Pay Code: | PAY | |
| St | County | Sect | Twp | Rng | QQCalls/Lot | Remarks | |
| TX | DE WITT | | | | | | |

589.00 acres, more or less, out of J. H. Richter Survey,
Abstract 613, the Indianola Railroad Company Survey 13,
Abstract 272 and the Indianola Railroad Company Survey
15, Abstract 277, in DeWitt County, Texas, being more
fully described in the Designation of Gas Unit for the
Burlington - Lackey Unit A dated effective October 1,
2011, recorded at File Number 84784 of the Official
Public Records of DeWitt County, Texas, and being
composed of the following eight tracts:

Tract 1:  1.74 acres, more or less, being that portion
of the following described 4.2 acre tract lying within
the boundaries of the Burlington Resources Oil & Gas
Company LP - Lackey Unit A; said 4.2 acres being out of
the Indianola Railroad Company Survey, Section 13,
Abstract 272; the Indianola Railroad Company Survey,
Abstract 273; the Indianola Railroad Company Survey,
Section 15, Abstract 277; the Indianola Railroad Company
Survey, Abstract 684; the J. M. Stanford Survey,
Abstract 548, the L. Jane Hunter Survey, Abstract 589;
the David Hunter Abstract 663, and the Thomas Glimp
Survey, Abstract 201, in DeWitt County, Texas, and being
the same land described in that certain conveyance of
Right-of-Way dated February 16, 1898, recorded at

## Exhibit A - D/O and Ownership Description

Volume 45, Page 629 of the Deed Records of DeWitt
County, Texas, from Jane Hunter to DeWitt County, Texas;

Tract 2:  458.34 acres, more or less, being that portion
of the following described 536.28 acre tract lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackay Unit A; said 536.28 acres being
out of the Indianola Railroad Company Survey, Section
13, Abstract 272; the Indianola Railroad Company Survey,
Section 14, Abstract 543; and the Indianola Railroad
Company Survey, Section 15, Abstract 277, in DeWitt
County, Texas, and being more fully described in that
certain Warranty Deed dated June 19, 2003, recorded at
Volume 130, Page 965 of the Official Public Records of
DeWitt County, Texas, from Page Saunders to Lackay Land
Limited described as Tract 2;

Tract 3:  81.77 acres, more or less, being that portion
of the following three tracts lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A;
154.70 acres, more or less, out of the Indianola
Railroad Company Survey, Section 19, Abstract 274; the
Indianola Railroad Company Survey, Section 21, Abstract
275; and the Indianola Railroad Company Survey, Section
15, Abstract 277, in DeWitt County, Texas, and being the
same lands described as "Tract B-1", Tract B-2", and
"Tract B-3" in a Deed dated May 26, 2004, recorded at
Volume 145, Page 208 of the Official Public Records, of
DeWitt County, Texas, from Barien Jezuske, et al, to
Hilmer E. Koopman;
51.58 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272 and the
Indianola Railroad Company Survey, Section 15, Abstract
277, in DeWitt County, Texas, and being the same lands
described in a Deed dated January 20, 2005, recorded at
Volume 158, Page 703 of the Official Public Records of
DeWitt County, Texas, from Ann Koopman, et al, to Hilmer
E. Koopman;
50.40 acres, more or less, out of the Indianola Railroad
Company Survey, Section 19, Abstract 274, in DeWitt
County, Texas, and being the same lands described in a
Deed dated December 7, 1965, recorded at Volume 184,
Page 495 of the Deed Records of DeWitt County, Texas,
from Alfred Kimmel and wife, Mary Kimmel, to Hilmer E.
Koopman;

Tract 4:  118.47 acres, more or less, being comprised
of the following two tracts totaling 120 acres, lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackay Unit A;
100 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272, in DeWitt
County, Texas, and being the same land described as
"Tract No. One" in a Warranty Deed dated December 27,
1995, recorded at Volume 14, Page 426 of the Official
Records of DeWitt County, Texas, from Lois Strieber,
Individually and as Independent Executrix of the Estate
of Jerry Strieber to Gilbert A. Koopman and wife, Lorena
H. Koopman;
20.00 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272, in DeWitt
County, Texas, and being the same land described as
"Tract No. Two" in a Warranty Deed dated December 27,
1995, recorded at Volume 14, Page 425 of the Official
Records of DeWitt County, Texas, from Lois Strieber,

Requestor:   woolmar                    Exhibit A - D/O and Ownership Description

Run Date:        3/8/12

Individually and as Independent Executrix of the Estate
of Jerry Strieber to Gilbert A. Koopman and wife, Lorene
H. Koopman;

Tract 5:  2.18 acres, (a/k/a 2.18 acres) more or less,
being out of the Indianola Railroad Company Survey,
Section 13, Abstract 272, in DeWitt County, Texas,
comprising a portion of County Road 392 and County Road
394, and being the same land described in that certain
Conveyance of Right-of-Way dated January 28, 1933,
recorded at Volume 105, Page 267 of the Deed Records of
DeWitt County, Texas, from V. W. Maxa, et al to DeWitt
County, Texas;

Tract 6:  0.91 acres, (a/k/a .914 acres) more or less,
being out of the Indianola Railroad Survey, Section 13,
Abstract 272, in DeWitt County, Texas, comprising a
portion of County Road 392, and being the same land
described in that certain Road Deed dated February 27,
1929, recorded at Volume 98, Page 587 of the Deed
Records of DeWitt County, Texas, from G. W. Afferbach
and wife, Helen Afferbach to DeWitt County, Texas;

Tract 7a:  1.44 acres, more or less, being that portion
of County Road 394 lying between the western boundary
line of the following described 98.21 acre tract and the
centerline of County Road 394 and lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A; said 98.21 acres being out
of the J. H. Richter Survey, Abstract 540; the E. W.
Matthews Survey, Abstract 342; the Indianola Railroad
Company Survey, Section 13, Abstract 272, and the J. H.
Richter Survey, Abstract 513, in DeWitt County, Texas,
and being more fully described in that certain Warranty
Deed with Vendor's Lien dated December 16, 1993,
recorded at Volume 367, Page 28 of the Deed Records of
DeWitt County, Texas, from Edith Hesse Billings to Louis
R. Wilske;

Tract 7b:  1.42 acres, more or less, being that portion
of County Road 394 lying between the western boundary
line of the following described 108.477 acre tract and
the centerline of County Road 394 and lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A; said 108.477 acres being out
of the J. Heinrich Richter Survey, Abstract 513, in
DeWitt County, Texas, and being more fully described as
two tracts in that certain Warranty Deed dated October
30, 1998, recorded at Volume 40, Page 547 of the
Official Public Records of DeWitt County, Texas, from
Charles William Billwell and Patricia Billwell,
husband and wife, to Louis R. Wilske;

Tract 8:  1.25 acres, more or less, being that portion
of County Road 392 lying between the northeastern
boundary line of the following described 156.66 acre
tract and the centerline of County Road 392 and lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackey Unit A; said 156.66 acres being
out of the Indianola Railroad Survey 18, Abstract 274,
in DeWitt County, Texas, and being the same land
described in a Deed dated November 18, 1996, recorded at
Volume 12, Page 927 of the Official Public Records of
DeWitt County, Texas, from Carlton H. Mueller,
Independent Executor of the Estate of Regina Mueller to
Phil E. Mueller and wife, Gina R. Mueller;

313

Run Date:          3/8/12

all of said lands being located in DEWITT COUNTY, TEXAS.

**Owner No.:**        0286977002          **KAREN M KOENIG**

| | | | | | |
|---|---|---|---|---|---|
| D/O Number and Name: | A717078 | | O0001 (OIL) | | LACKEY UNIT A #1 |
| File Number: | 109466 | | | | Operator:    BURLINGTON RESOURCES O&G CO LP |
| Effective Date: | 2/1/2012 | | Interest Type/Decimal: | RI | 0.00669675 Pay Code:    PAY |

| St | County | Sect | Twp | Rng | CQCA lla/Lot | Remarks |
|---|---|---|---|---|---|---|
| TX | DE WITT | | | | | 669.00 acres, more or less, out of J. H. Richter Survey, |

689.00 acres, more or less, out of J. H. Richter Survey, Abstract 613, the Indianola Railroad Company Survey 13, Abstract 272 and the Indianola Railroad Company Survey 15, Abstract 277, in DeWitt County, Texas, being more fully described in the Designation of Gas Unit for the Burlington - Lackey Unit A dated effective October 1, 2011, recorded at File Number 84784 of the Official Public Records of DeWitt County, Texas, and being comprised of the following eight tracts:

Tract 1:  1.74 acres, more or less, being that portion of the following described 4.2 acre tract lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A; said 4.2 acres being out of the Indianola Railroad Company Survey, Section 13, Abstract 272, the Indianola Railroad Company Survey, Abstract 273 the Indianola Railroad Company Survey, Section 15, Abstract 277; the Indianola Railroad Company Survey, Abstract 884; the J. M. Stanford Survey, Abstract 548; the L. Jane Hunter Survey, Abstract 585; the David Hunter Abstract 563; and the Thomas Glasp Survey, Abstract 201, in DeWitt County, Texas, and being the same land described in that certain conveyance of Right-of-Way dated February 16, 1896, recorded at Volume 46, Page 629 of the Deed Records of DeWitt County, Texas, from Jane Hunter to DeWitt County, Texas;

Tract 2:  456.54 acres, more or less, being that portion of the following described 536.28 acre tract lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A; said 536.28 acres being out of the Indianola Railroad Company Survey, Section 13, Abstract 272; the Indianola Railroad Company Survey, Section 14, Abstract 548, and the Indianola Railroad Company Survey, Section 15, Abstract 277, in DeWitt County, Texas, and being more fully described in that certain Warranty Deed dated June 18, 2003, recorded at Volume 130, Page 965 of the Official Public Records of DeWitt County, Texas, from Page Saunders to Lackey Land Limited described as Tract 2;

Tract 3:  81.77 acres, more or less, being that portion of the following three tracts lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A:
154.70 acres, more or less, out of the Indianola Railroad Company Survey, Section 19, Abstract 274; the Indianola Railroad Company Survey, Section 21, Abstract 276; and the Indianola Railroad Company Survey, Section 16, Abstract 277 in DeWitt County, Texas, and being the same lands described as "Tract B-1", Tract B-2", and "Tract B-3" in a Deed dated May 25, 2004, recorded at Volume 145, Page 264 of the Official Public Records of DeWitt County, Texas, from Earlan Jeluffes, et al. to Hilmer E. Koopman,
51.66 acres, more or less, out of the Indianola Railroad

314

310

Company Survey, Section 13, Abstract 272 and the
Indianola Railroad Company Survey, Section 16, Abstract
277, in DeWitt County, Texas, and being the same lands
described in a Deed dated January 28, 2003, recorded at
Volume 158, Page 703 of the Official Public Records of
DeWitt County, Texas, from Ann Koopman, et al, to Hilmar
E. Koopman;

50.40 acres, more or less, out of the Indianola Railroad
Company Survey, Section 19, Abstract 274, in DeWitt
County, Texas, and being the same lands described in a
Deed dated December 7, 1965, recorded at Volume 164,
Page 495 of the Deed Records of DeWitt County, Texas,
from Alfred Kimmel and wife, Mary Kimmel, to Hilmer B
Koopman;

Tract 4;  119.47 acres, more or less, being comprised
of the following two tracts totaling 120 acres, lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Leckay Unit A;

100 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272, in DeWitt
County, Texas, and being the same land described as
"Tract No. One" in a Warranty Deed dated December 27,
1996, recorded at Volume 14, Page 426 of the Official
Records of DeWitt County, Texas, from Lois Strieber,
Individually and as Independent Executrix of the Estate
of Jerry Strieber to Gilbert A. Koopman and wife, Lorene
H. Koopman;

20.00 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272, in DeWitt
County, Texas, and being the same land described as
"Tract No. Two" in a Warranty Deed dated December 27,
1996, recorded at Volume 14, Page 423 of the Official
Records of DeWitt County, Texas, from Lois Strieber,
Individually and as Independent Executrix of the Estate
of Jerry Strieber to Gilbert A. Koopman and wife, Lorene
H. Koopman;

Tract 5:  2.16 acres, (a/k/a 2,19 acres) more or less,
being out of the Indianola Railroad Company Survey,
Section 13, Abstract 272, in DeWitt County, Texas,
comprising a portion of County Road 392 and County Road
394, and being the same land described in that certain
Conveyance of Right-of-Way dated January 28, 1933,
recorded at Volume 105, Page 267 of the Deed Records of
DeWitt County, Texas, from V. W. Blake, et al to DeWitt
County, Texas;

Tract 6:  0.91 acres, (a/k/a .914 acres) more or less,
being out of the Indianola Railroad Survey, Section 13,
Abstract 272, in DeWitt County, Texas, comprising a
portion of County Road 392, and being the same land
described in that certain Road Deed dated February 27,
1929, recorded at Volume 98, Page 597 of the Deed
Records of DeWitt County, Texas, from G. W. Afferbach
and wife, Helen Afferbach to DeWitt County, Texas;

Tract 7a:  1.44 acres, more or less, being that portion
of County Road 394 lying between the western boundary
line of the following described 88.21 acre tract and the
centerline of County Road 394 and lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP -Leckay Unit A; said 88.21 acres being out
of the J. H. Richter Survey, Abstract 840; the E. W.
Matthews Survey, Abstract 342; the Indianola Railroad
Company Survey, Section 13, Abstract 272; and the J. H.

### Exhibit A - D/O and Ownership Description

Richter Survey, Abstract 613, in DeWitt County, Texas, and being more fully described in that certain Warranty Deed with Vendor's Lien dated December 16, 1993, recorded at Volume 397, Page 25 of the Deed Records of DeWitt County, Texas, from Edith Reese Billings to Louis R. Willeke.

Tract 7b:  1.42 acres, more or less, being that portion of County Road 394 lying between the western boundary line of the following described 108.477 acre tract and the centerline of County Road 394 and lying within the boundaries of the Burlington Resources Oil & Gas Company, LP -Luckey Unit A; said 108.477 acres being out of the J. Heinrich Richter Survey, Abstract 613, in DeWitt County, Texas, and being more fully described as two tracts in that certain Warranty Deed dated October 30, 1998, recorded at Volume 46, Page 507 of the Official Public Records of DeWitt County, Texas, from Charles William Stillwell and Patricia Stillwell, husband and wife, to Louis R. Willeke.

Tract 9:  1.25 acres, more or less, being that portion of County Road 392 lying between the northeastern boundary line of the following described 195.66 acre tract and the centerline of County Road 392 and lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Luckey Unit A; said 195.66 acres being out of the Indianola Railroad Survey 19, Abstract 274, in DeWitt County, Texas, and being the same land described in a Deed dated November 18, 1996, recorded at Volume 12, Page 527 of the Official Public Records of DeWitt County, Texas, from Carlton H. Mueller, Independent Executor of the Estate of Regina Mueller to Phil E. Mueller and wife, Gina R. Mueller;

all of said lands being located in DEWITT COUNTY, TEXAS.

To: ConocoPhillips Company
    PO Box 7500
    Bartlesville, OK 74005-7500

Return to ConocoPhillips Company

Owner
Name
and
Address:

RALPH KOOPMANN

774 STANCHOS ROAD

YORKTOWN, TX  78164

Owner No.:  0286976002

The undersigned certifies the ownership of their decimal interest in production or proceeds as described on Exhibit A payable by ConocoPhillips Company.

ConocoPhillips Company shall be notified, in writing, of any change in ownership, decimal interest, or payment address. All such changes shall be effective the first day of the month following receipt of such notice.

ConocoPhillips Company is authorized to withhold payment pending resolution of a title dispute or adverse claim asserted regarding the interest in production claimed herein by the undersigned. The undersigned agrees to indemnify and reimburse ConocoPhillips Company for all claims arising from, and amounts attributable to, an interest to which the undersigned is not entitled.

ConocoPhillips Company may accrue proceeds until the total amount equals $100, or pay Annually, whichever occurs first, or as required by applicable state statute.

This Division Order does not amend any lease or operating agreement between the undersigned and the lessee or operator or any other contracts for the purchase of oil or gas.

In addition to the terms and conditions of this Division Order, the undersigned and payor may have certain statutory rights under the laws of the state in which the property is located.

Special Clause: The interest certified by the undersigned includes all oil (defined as crude oil and condensate) and proceeds derived from the sale of all oil and gas (defined as natural gas and casinghead gas) produced, including all substances produced with such oil and gas, attributable to the interest described herein. From the effective date and until further written notice, and subject to the provisions herein, ConocoPhillips Company or ConocoPhillips Company's designated agent, is authorized to take or purchase such production and proceeds from the sale of oil and gas, in accordance with the division of interest described herein.

Additional Special Clauses:

THIS DIVISION ORDER COVERS YOUR INTEREST IN THE LACKEY UNIT A #2 WELL.

Corrected Address

Owner Signature(s): _____

(Owner Signature)

_____

(Print Owner Name)

Owner(s) Tax Id Number(s):  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
Owner Daytime Telephone #: _____
Owner Fax Telephone #: _____

Federal law requires you to furnish your Social Security or Taxpayer Identification Number. Failure to comply will result in tax withholding, in accordance with Federal Law, and will not be refundable by ConocoPhillips Company.

T SIMONS               Return to ConocoPhillips Company        I        DO  110663-L

317

Owner No.:          0286976002        RALPH KOOPMANN
D/O Number and Name:  A717078         G0002 (GAS)        LACKEY UNIT A #2
File Number:        110663                                        Operator:   BURLINGTON RESOURCES O&G CO LP
Effective Date:     4/1/2013    Interest Type/Decimal:    RI    0.00669675  Pay Code:  PAY

| St | County | Sect | Twp | Rng | QQCallsList | Remarks |
|----|--------|------|-----|-----|-------------|---------|
| X | DE WITT | | | | | |

689.00 acres, more or less, out of J. H. Rettler Survey, Abstract 613, the Indianola Railroad Company Survey 13, Abstract 272 and the Indianola Railroad Company Survey 15, Abstract 777, in DeWitt County, Texas, being more fully described in the Designation of Gas Unit for the Burlington - Lackey Unit A dated effective October 1, 2011, recorded at File Number 84764 of the Official Public Records of DeWitt County, Texas, and being comprised of the following eight tracts:

Tract 1: 1.74 acres, more or less, being that portion of the following described 4.2 acre tract lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A; said 4.2 acres being out of the Indianola Railroad Company Survey, Section 13, Abstract 272, the Indianola Railroad Company Survey, Abstract 273, the Indianola Railroad Company Survey, Section 15, Abstract 277, the Indianola Railroad Company Survey, Abstract 684, the J. M. Stanford Survey, Abstract 548; the L. Jane Hunter Survey, Abstract 585, the David Hunter Abstract 563, and the Thomas Glimp Survey, Abstract 201, in DeWitt County, Texas, and being the same land described in that certain conveyance of Right-of-Way dated February 18, 1898, recorded at Volume 45, Page 629 of the Deed Records of DeWitt County, Texas, from Jane Hunter to DeWitt County, Texas;

Tract 2: 458.84 acres, more or less, being that portion of the following described 536.28 acre tract lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A; said 536.28 acres being out of the Indianola Railroad Company Survey, Section 13, Abstract 272, the Indianola Railroad Company Survey, Section 14, Abstract 548; and the Indianola Railroad Company Survey, Section 15, Abstract 277, in DeWitt County, Texas, and being more fully described in that certain Warranty Deed dated June 19, 2003, recorded at Volume 130, Page 965 of the Official Public Records of DeWitt County, Texas, from Page Saunders to Lackey Land Limited described as Tract 2;

Tract 3: 81.77 acres, more or less, being that portion of the following three tracts lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A,
154.20 acres, more or less, out of the Indianola Railroad Company Survey, Section 19, Abstract 274, the Indianola Railroad Company Survey, Section 21, Abstract 275, and the Indianola Railroad Company Survey, Section 15, Abstract 277, in DeWitt County, Texas; and being the same lands described as "Tract B-1", Tract B-2", and "Tract B-3" in a Deed dated May 26, 2004, recorded at Volume 145, Page 266 of the Official Public Records of DeWitt County, Texas, from Earlen Jaturka, et al. to Hilmar E. Koopman;
51.56 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272 and the Indianola Railroad Company Survey, Section 15, Abstract

318

314

272, in DeWitt County, Texas, and being the same lands described in a Deed dated January 20, 2005, recorded at Volume 158, Page 703 of the Official Public Records of DeWitt County, Texas, from Ann Koopman, et al, to Hilmer E. Koopman;

50.40 acres, more or less, out of the Indianola Railroad Company Survey, Section 19, Abstract 274, in DeWitt County, Texas, and being the same lands described in a Deed dated December 7, 1965, recorded at Volume 164, Page 495 of the Deed Records of DeWitt County, Texas, from Alfred Kimmel and wife, Mary Kimmel, to Hilmer E. Koopman.

Tract 4:  119.47 acres, more or less, being comprised of the following two tracts totaling 120 acres, lying within the boundaries of the Burlington Resources Oil & Gas Company, LP  Lackey Unit A;

100 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, and being the same land described as "Tract No. One" in a Warranty Deed dated December 27, 1996, recorded at Volume 14, Page 425 of the Official Records of DeWitt County, Texas, from Lois Streiber, Individually and as Independent Executrix of the Estate of Jerry Streiber to Gilbert A. Koopman and wife, Lorene H. Koopman;

20.00 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, and being the same land described as "Tract No. Two" in a Warranty Deed dated December 27, 1996, recorded at Volume 14, Page 425 of the Official Records of DeWitt County, Texas, from Lois Streiber, Individually and as Independent Executrix of the Estate of Jerry Streiber to Gilbert A. Koopman and wife, Lorene H. Koopman.

Tract 5:  2.16 acres, (a/k/a 2.19 acres) more or less, being out of the Indianola Railroad Company Survey Section 13, Abstract 272, in DeWitt County, Texas comprising a portion of County Road 392 and County Road 394, and being the same land described in that certain Conveyance of Right-of-Way dated January 28, 1933, recorded at Volume 105, Page 267 of the Deed Records of DeWitt County, Texas from V. W. Blake, et al to DeWitt County, Texas,

Tract 6:  0.91 acres, (a/k/a .91 acres) more or less, being out of the Indianola Railroad Survey, Section 13, Abstract 272, in DeWitt County, Texas, comprising a portion of County Road 392, and being the same land described in that certain Road Deed dated February 27, 1929, recorded at Volume 98, Page 597 of the Deed Records of DeWitt County, Texas, from G. W. Afterbach and wife, Helen Afterbach to DeWitt County, Texas.

Tract 7a:  1.44 acres, more or less, being that portion of County Road 394 lying between the western boundary line of the following described 98.21 acre tract and the centerline of County Road 394 and lying within the boundaries of the Burlington Resources Oil & Gas Company, LP  Lackey Unit A, said 98.21 acres being out of the J. H. Richter Survey, Abstract 540, the E. W. Matthews Survey, Abstract 342; the Indianola Railroad Company Survey, Section 13, Abstract 272, and the J. H. Richter Survey, Abstract 613, in DeWitt County, Texas, and being more fully described in that certain Warranty

Deed with Vendor's Lien dated December 16, 1993
recorded at Volume 367, Page 25 of the Deed Records of
DeWitt County, Texas, from Edith Haase Billings to Louis
R. Willeke

Tract 7b   1.42 acres, more or less, being that portion
of County Road 394 lying between the western boundary
line of the following described 108.477 acre tract and
the centerline of County Road 394 and lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP -Lackey Unit A; said 108.477 acres being out
of the J. Heinrich Richter Survey, Abstract 613, in
DeWitt County, Texas, and being more fully described as
two tracts in that certain Warranty Deed dated October
30, 1996, recorded at Volume 46, Page 557 of the
Official Public Records of DeWitt County, Texas, from
Charles William Stilwell and Patricia Stilwell,
husband and wife, to Louis R. Willeke;

Tract 8   1.25 acres, more or less, being that portion
of County Road 392 lying between the northeastern
boundary line of the following described 198.66 acre
tract and the centerline of County Road 392 and lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackey Unit A, said 198.66 acres being
out of the Indianola Railroad Survey 19, Abstract 274,
in DeWitt County, Texas, and being the same land
described in a Deed dated November 18, 1996, recorded at
Volume 12, Page 527 of the Official Public Records of
DeWitt County, Texas, from Carlton H. Mueller
Independent Executor of the Estate of Regina Mueller to
Phil E. Mueller and wife, Gina H. Mueller,
all of said lands being located in DEWITT COUNTY, TEXAS.

| Owner No.: | 0286976002 | RALPH KOOPMANN | | | | |
|---|---|---|---|---|---|---|
| D/O Number and Name: | A717078 | N0002(NGL) | LACKEY UNIT A #2 | | | |
| File Number: | 110663 | | | Operator: | BURLINGTON RESOURCES O&G CO LP | |
| Effective Date: | 4/1/2013 | Interest Type/Decimal: | RI | 0.00669675 | Pay Code: PAY | |
| St County | Sect | Twp   Rng   QQCells/Lot | Remarks | | | |
| X   DE WITT | | | | | | |

689.00 acres, more or less, out of J. H. Richter Survey,
Abstract 613, the Indianola Railroad Company Survey 13,
Abstract 272 and the Indianola Railroad Company Survey
15, Abstract 277, in DeWitt County, Texas, being more
fully described in the Designation of Gas Unit for the
Burlington - Lackey Unit A dated effective October 1
2011, recorded at File Number 84764 of the Official
Public Records of DeWitt County, Texas, and being
comprised of the following eight tracts:

Tract 1   1.74 acres, more or less, being that portion
of the following described 4.2 acre tract lying within
the boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A said 4.2 acres being out of
the Indianola Railroad Company Survey, Section 13
Abstract 272, the Indianola Railroad Company Survey,
Abstract 273, the Indianola Railroad Company Survey,
Section 15, Abstract 277, the Indianola Railroad Company
Survey, Abstract 684, the J. M. Stanford Survey,
Abstract 548, the L. Jane Hunter Survey, Abstract 585,
the David Hunter Abstract 563, and the Thomas Glimp
Survey, Abstract 201, in DeWitt County, Texas, and being
the same land described in that certain conveyance of
Right-of-Way dated February 18, 1898, recorded at

320

Volume 45, Page 629 of the Deed Records of DeWitt
County, Texas, from Jane Hunter to DeWitt County, Texas.

Tract 2: 458.64 acres, more or less, being that portion
of the following described 536.28 acre tract lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackey Unit A, said 536.28 acres being
out of the Indianola Railroad Company Survey, Section
13, Abstract 272, the Indianola Railroad Company Survey,
Section 14, Abstract 548, and the Indianola Railroad
Company Survey, Section 15, Abstract 277, in DeWitt
County, Texas, and being more fully described in that
certain Warranty Deed dated June 19, 2003, recorded at
Volume 130, Page 965 of the Official Public Records of
DeWitt County, Texas, from Page Saunders to Lackey Land
Limited described as Tract 2.

Tract 3: 61.77 acres, more or less, being that portion
of the following three tracts lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A.
154.70 acres, more or less, out of the Indianola
Railroad Company Survey, Section 19, Abstract 274, the
Indianola Railroad Company Survey, Section 21, Abstract
275, and the Indianola Railroad Company Survey, Section
15, Abstract 277, in DeWitt County, Texas, and being the
same lands described as "Tract B-1" "Tract B-2" and
"Tract B-3" in a Deed dated May 26, 2004, recorded at
Volume 145, Page 260 of the Official Public Records of
DeWitt County, Texas, from Earlen Jalufka, et al, to
Hilmer E. Koopman.
51.50 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272 and the
Indianola Railroad Company Survey, Section 15, Abstract
277, in DeWitt County, Texas, and being the same lands
described in a Deed dated January 20, 2005, recorded at
Volume 150, Page 703 of the Official Public Records of
DeWitt County, Texas, from Ann Koopman, et al, to Hilmer
E. Koopman.
50.40 acres, more or less, out of the Indianola Railroad
Company Survey, Section 19, Abstract 274, in DeWitt
County, Texas, and being the same lands described in a
Deed dated December 7, 1965, recorded at Volume 164,
Page 495 of the Deed Records of DeWitt County, Texas,
from Alfred Kimmel and wife, Mary Kimmel, to Hilmer E.
Koopman.

Tract 4: 119.47 acres, more or less, being comprised
of the following two tracts totaling 120 acres, lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackey Unit A.
100 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272, in DeWitt
County, Texas, and being the same land described as
"Tract No. One" in a Warranty Deed dated December 27,
1996, recorded at Volume 14, Page 425 of the Official
Records of DeWitt County, Texas, from Lois Strieber,
individually and as Independent Executrix of the Estate
of Jerry Strieber to Gilbert A. Koopman and wife, Lorene
H. Koopman.
20.00 acres, more or less, out of the Indianola Railroad
Company Survey, Section 13, Abstract 272, in DeWitt
County, Texas, and being the same land described as
"Tract No. Two" in a Warranty Deed dated December 27,
1996, recorded at Volume 14, Page 425 of the Official
Records of DeWitt County, Texas, from Lois Strieber

Individually and as Independent Executrix of the Estate
of Jerry Strober to Gilbert A. Koopman and wife, Lorene
H. Koopman.

Tract 5: 2.16 acres, (a/k/a 2.19 acres) more or less,
being out of the Indianola Railroad Company Survey,
Section 13, Abstract 272, in DeWitt County, Texas,
comprising a portion of County Road 392 and County Road
394, and being the same land described in that certain
Conveyance of Right-of-Way dated January 28, 1933,
recorded at Volume 105, Page 267 of the Deed Records of
DeWitt County, Texas, from V. W. Blake, et al to DeWitt
County, Texas;

Tract 6: 0.91 acres, (a/k/a 914 acres) more or less,
being out of the Indianola Railroad Survey, Section 13,
Abstract 272, in DeWitt County, Texas, comprising a
portion of County Road 392, and being the same land
described in that certain Road Deed dated February 27,
1929, recorded at Volume 98, Page 597 of the Deed
Records of DeWitt County, Texas, from G. W. Afflerbach
and wife, Helen Afflerbach to DeWitt County, Texas;

Tract 7a: 1.44 acres, more or less, being that portion
of County Road 394 lying between the western boundary
line of the following described 98.21 acre tract and the
centerline of County Road 394 and lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A, said 98.21 acres being out
of the J. H. Richter Survey, Abstract 540, the E. W.
Matthews Survey, Abstract 342, the Indianola Railroad
Company Survey, Section 13, Abstract 272, and the J. H.
Richter Survey, Abstract 613, in DeWitt County, Texas,
and being more fully described in that certain Warranty
Deed with Vendor's Lien dated December 16, 1993,
recorded at Volume 387, Page 25 of the Deed Records of
DeWitt County, Texas, from Edith Haese Billings to Louis
R. Willeke;

Tract 7b: 1.42 acres, more or less, being that portion
of County Road 394 lying between the western boundary
line of the following described 108.477 acre tract and
the centerline of County Road 394 and lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A, said 108.477 acres being out
of the J. Heinrich Richter Survey, Abstract 613, in
DeWitt County, Texas, and being more fully described as
two tracts in that certain Warranty Deed dated October
30, 1998, recorded at Volume 46, Page 557 of the
Official Public Records of DeWitt County, Texas, from
Charles William Stillwell and Patricia Stillwell,
husband and wife, to Louis R. Willeke;

Tract 8: 1.25 acres, more or less, being that portion
of County Road 392 lying between the northeastern
boundary line of the following described 198.66 acre
tract and the centerline of County Road 392 and lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackey Unit A; said 198.66 acres being
out of the Indianola Railroad Survey 19, Abstract 274,
in DeWitt County, Texas, and being the same land
described in a Deed dated November 18, 1996, recorded at
Volume 12, Page 527 of the Official Public Records of
DeWitt County, Texas, from Carlton H. Mueller,
Independent Executor of the Estate of Regina Mueller to
Phil E. Mueller and wife, Oma R. Mueller;

all of said lands being located in DEWITT COUNTY, TEXAS.

Owner No.:       0286976002        RALPH KOOPMANN
D/O Number and Name:  A/17078       O0002 (OIL)        LACKEY UNIT A #2
File Number:     110663                                      Operator:   BURLINGTON RESOURCES O&G CO LP
Effective Date:  4/1/2013     Interest Type/Decimal:    RI   0.00669675  Pay Code:  PAY
St   County              Sect    Twp   Rng     QQCalls/Lot   Remarks

X:   DE WITT

669.00 acres, more or less, out of J. H. Richter Survey,
Abstract 613, the Indianola Railroad Company Survey 13,
Abstract 272 and the Indianola Railroad Company Survey
15, Abstract 277, in DeWitt County, Texas, being more
fully described in the Designation of Gas Unit for the
Burlington - Lackey Unit A dated effective October 1,
2011, recorded at File Number 64764 of the Official
Public Records of DeWitt County, Texas, and being
comprised of the following eight tracts:

Tract 1:  1.74 acres, more or less, being that portion
of the following described 4.2 acre tract lying within
the boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A; said 4.2 acres being out of
the Indianola Railroad Company Survey, Section 13,
Abstract 272, the Indianola Railroad Company Survey,
Abstract 273, the Indianola Railroad Company Survey
Section 15, Abstract 277, the Indianola Railroad Company
Survey, Abstract 684, the J. M. Stanford Survey,
Abstract 548, the I. Jane Hunter Survey, Abstract 565,
the David Hunter Abstract 563, and the Thomas Glenp
Survey, Abstract 201, in DeWitt County, Texas, and being
the same land described in that certain conveyance of
Right-of-Way dated February 18, 1898, recorded at
Volume 45, Page 629 of the Deed Records of DeWitt
County, Texas, from Jane Hunter to DeWitt County, Texas,

Tract 2:  456.84 acres, more or less, being that portion
of the following described 536.26 acre tract lying
within the boundaries of the Burlington Resources Oil &
Gas Company, LP - Lackey Unit A, said 536.26 acres being
out of the Indianola Railroad Company Survey, Section
13, Abstract 272, the Indianola Railroad Company Survey
Section 14, Abstract 548, and the Indianola Railroad
Company Survey, Section 15, Abstract 277, in DeWitt
County, Texas, and being more fully described in that
certain Warranty Deed dated June 19, 2003, recorded at
Volume 130, Page 965 of the Official Public Records of
DeWitt County, Texas, from Page Saunders to Lackey Land
Limited described as Tract 2;

Tract 3:  81.77 acres, more or less, being that portion
of the following three tracts lying within the
boundaries of the Burlington Resources Oil & Gas
Company, LP - Lackey Unit A:
154.70 acres, more or less, out of the Indianola
Railroad Company Survey, Section 19, Abstract 274, the
Indianola Railroad Company Survey, Section 21, Abstract
275, and the Indianola Railroad Company Survey Section
15, Abstract 277, in DeWitt County, Texas, and being the
same lands described as "Tract B-1", Tract B-2", and
Tract B-3" in a Deed dated May 26, 2004, recorded at
Volume 145, Page 206 of the Official Public Records of
DeWitt County, Texas, from Earlen Jakcha, et al. to
Hilmer E. Koopman,
51.56 acres, more or less, out of the Indianola Railroad

## Exhibit A - D/O and Ownership Description

Company Survey, Section 13, Abstract 272 and the Indianola Railroad Company Survey, Section 15, Abstract 277, in DeWitt County, Texas, and being the same lands described in a Deed dated January 29, 2005, recorded at Volume 158, Page 703 of the Official Public Records of DeWitt County, Texas, from Ann Koopman, et al. to Hilmer E. Koopman.

50.40 acres, more or less, out of the Indianola Railroad Company Survey, Section 19, Abstract 274, in DeWitt County, Texas, and being the same lands described in a Deed dated December 7, 1965, recorded at Volume 164, Page 495 of the Deed Records of DeWitt County, Texas, from Alfred Kimmel and wife, Mary Kimmel, to Hilmer E. Koopman.

Tract 4  119.47 acres, more or less, being comprised of the following two tracts totaling 120 acres, lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Lackey Unit A:

100 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, and being the same land described as "Tract No. One" in a Warranty Deed dated December 27, 1996, recorded at Volume 14, Page 425 of the Official Records of DeWitt County, Texas, from Lois Strieber, individually and as Independent Executrix of the Estate of Jerry Strieber to Gilbert A. Koopman and wife, Lorene H. Koopman.

20.00 acres, more or less, out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, and being the same land described as "Tract No. Two" in a Warranty Deed dated December 27, 1996, recorded at Volume 14, Page 425 of the Official Records of DeWitt County, Texas, from Lois Strieber, individually and as Independent Executrix of the Estate of Jerry Strieber to Gilbert A. Koopman and wife, Lorene H. Koopman.

Tract 5  2.16 acres, (a/k/a 2.19 acres) more or less, being out of the Indianola Railroad Company Survey, Section 13, Abstract 272, in DeWitt County, Texas, comprising a portion of County Road 392 and County Road 394, and being the same land described in that certain Conveyance of Right-of-Way dated January 26, 1933, recorded at Volume 106, Page 267 of the Deed Records of DeWitt County, Texas, from V. W. Blake, et al to DeWitt County, Texas.

Tract 6  0.91 acres, (a/k/a .914 acres) more or less, being out of the Indianola Railroad Survey, Section 13, Abstract 272, in DeWitt County, Texas, comprising a portion of County Road 392, and being the same land described in that certain Road Deed dated February 27, 1929, recorded at Volume 96, Page 597 of the Deed Records of DeWitt County, Texas, from G. W. Afflerbach and wife, Helen Afflerbach to DeWitt County, Texas.

Tract 7a  1.44 acres, more or less, being that portion of County Road 394 lying between the western boundary line of the following described 98.21 acre tract and the centerline of County Road 394 and lying within the boundaries of the Burlington Resources Oil & Gas Company, LP Lackey Unit A; said 98.21 acres being out of the J. H. Richter Survey, Abstract 540, the E. W. Matthews Survey, Abstract 342, the Indianola Railroad Company Survey, Section 13, Abstract 272, and the J. H.

324

Richter Survey, Abstract 613, in DeWitt County, Texas, and being more fully described in that certain Warranty Deed with Vendor's Lien dated December 18, 1993, recorded at Volume 307, Page 25 of the Deed Records of DeWitt County, Texas, from Edith Hadoe Billings to Louis R. Willeke.

Tract 7b  1.42 acres, more or less, being that portion of County Road 394 lying between the western boundary line of the following described 108.477 acre tract and the centerline of County Road 394 and lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Leckey Unit A, said 108.477 acres being out of the J. Heinrich Richter Survey, Abstract 613, in DeWitt County, Texas, and being more fully described as two tracts in that certain Warranty Deed dated October 30, 1998, recorded at Volume 46, Page 557 of the Official Public Records of DeWitt County, Texas, from Charles William Stillwell and Patricia Stillwell, husband and wife, to Louis R. Willeke;

Tract 8  1.25 acres, more or less, being that portion of County Road 392 lying between the northeastern boundary line of the following described 198.66 acre tract and the centerline of County Road 392 and lying within the boundaries of the Burlington Resources Oil & Gas Company, LP - Leckey Unit A, said 198.66 acres being out of the Indianola Railroad Survey 19, Abstract 274, in DeWitt County, Texas, and being the same land described in a Deed dated November 18, 1996, recorded at Volume 12, Page 527 of the Official Public Records of DeWitt County, Texas, from Carlton H. Mueller Independent Executor of the Estate of Regina Mueller to Phil E. Mueller and wife, Gina R. Mueller; all of said lands being located in DEWITT COUNTY, TEXAS

CAUSE NO. 12-07-22,354

| | | |
|---|---|---|
| RALPH WADE KOOPMANN, KAREN MARIE KOENIG, and LORENE H. KOOPMANN | § § § § | IN THE DISTRICT COURT |
| VERSUS | § § § | |
| | § | DEWITT COUNTY, TEXAS |
| CONOCOPHILLIPS, BURLINGTON RESOURCES OIL & GAS CO., L.P. and LOIS STRIEBER, Individually and As Executrix of the ESTATE JERRY STRIEBER | § § § § § | 24TH JUDICIAL DISTRICT |

**ORDER GRANTING PLAINTIFFS'**
**AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**

On this the __20th__ day of __Dec.__, 2013, the Court heard Plaintiffs' Amended Motion for Partial Summary Judgment. After carefully considering the pleadings, the motion, the response, the reply, if any, the arguments of counsel, and other evidence on file, the Court the GRANTS, in all parts, Plaintiffs' Amended Motion for Partial Summary Judgment. It is, therefore,

ORDERED, ADJUGED, and DECREED that Plaintiffs' Amended Motion for Partial Summary Judgment, in the above styled and captioned cause, is GRANTED. As such, it is further

ORDERED, ADJUDGED, and DECREED as follows:

(1) As of December 27, 2011 (i.e., fifteen (15) years from the date of the Warranty Deed executed by Lois Strieber on December 27, 1996, on file with the County Clerk of DeWitt County, Texas, and recorded on January 2, 1997, at 8:35 a.m.), there were no wells on Lackey Unit A (i.e., the pooled unit) that were actually producing in paying or commercial quantities;

455

(2) The reserved term royalty interest, entitled "Reservations from and Exceptions to Conveyance and Warranty," as contained in the Warranty Deed executed by Lois Strieber on December 27, 1996, on file with the County Clerk of DeWitt County, Texas, and recorded on January 2, 1997, at 8:35 a.m., expired on December 27, 2011 in accordance with the express terms of the Warranty Deed, and, therefore, is null and void;

(3) ConocoPhillips Company's, Burlington Resources Oil & Gas Company, L.P.'s and Lois Strieber's, Individually and as the Executrix of the Estate of Jerry Strieber, rights in or to the term royalty interest reserved in the Warranty Deed executed by Lois Strieber on December 27, 1996, on file with the County Clerk of DeWitt County, Texas, and recorded on January 2, 1997, at 8:35 a.m., are terminated; and

(4) Plaintiffs, Ralph Wade Koopmann, Karen Marie Koenig, and Lorene H. Koopmann, are entitled to the full amount of any royalty payments due under any mineral lease from the mineral estate in question, as set forth in the above-described Warranty Deed.

It is further

ORDERED, ADJUDGED, and DECREED that Plaintiffs, Ralph Wade Koopmann, Karen Marie Koenig, and Lorene H. Koopmann, have Judgment against Defendants, ConocoPhillips Company and Burlington Resources Oil & Gas, L.P. in an amount to be determined later for reasonable and necessary attorneys' fees incurred in the prosecution of this matter.

All other relief not expressly granted herein is denied.

Signed on this the 20ᵗʰ day of _December_, 2013.

_____
Judge Presiding

-2-

FILED
___ day of _____
at ___ o'clock ___ M
DEC 23 2013
TABETH GARDNER, Clerk
Dist. Court, DeWitt County Texas
By_____ Deputy

456

# JOHANSON & FAIRLESS, L.L.P.

## LAWYERS

1456 First Colony Boulevard
Sugar Land, Texas 77479

281-313-5000
TELECOPIER 281-340-5100

MIKE JOHANSON
RANDY L. FAIRLESS *
TODD TAYLOR *
BART BASDEN *
KELLEY J. FRIEDMAN
 *Board Certified in Personal Injury Trial Law
 Texas Board of Legal Specialization

JAY W. CRADDOCK
VICKI L. DALEY
GREG LAUGHLIN
JOELLE G. NELSON
TIMOTHY J. NISBET
CHRIS M. VOLF

TODD TAYLOR
DIRECT DIAL 281-340-5107
EMAIL: ttaylor@landflaw.com

January 10, 2012

Ms. Diane Schaenen                                    Via Certified and regular mail
ConocoPhillips
Staff Landman — North Eagleford Asset Team
3WL-5012
P.O. Box 2197
Houston, TX 77252-2197

    Re:   Shut-In Royalty Payment
          Lackey Unit A #1 well
          DeWitt County, TX

Dear Ms. Schaenen:

    I am writing you at the request of the Koopmann family regarding correspondence they received from you on December 7, 2011 with regard to the "Shut-in Royalty Payment" of the above referenced well. I have been asked to advise you that the well in question, as of this date, still has not been put in line for production and has not produced any oil or gas in paying quantities. Further, despite representations in your correspondence to the contrary, the well was never "flared for two days to establish commercial production".

    The Koopmanns have also asked me to research why it is that ConocoPhillips would forward shut-in royalty payments (which have not and will not be cashed) and why it is that ConocoPhillips quoted language from the Purchase Deed from 1996 in this letter you sent on December 7, 2011. My research has revealed that you and your company have attempted to obtain a percentage of the 50% royalty interest which was conveyed to the Koopmanns on December 27, 2011 without revealing same to the Koopmanns. That also means that you are familiar with the language contained in the real estate purchase document and are aware that the well in question and ConocoPhillips have fallen short of their attempt to secure a portion of these royalty payments.

    Specifically, under the terms of the purchase agreement entered into by the



Koopmann family and their representatives on December 27, 1996, 50% of the royalty interests were conveyed to the Koopmanns on the date of purchase. Further, under the purchase agreement, the remaining of the 50% royalty interests on the property in question as referenced above, were to convey to the Koopmanns after the expiration of 15 years. The 15 years have now, of course, expired as of December 27, 2011 and as of that date there was no well on the property in question capable of, nor producing oil and gas in paying quantities.

The deed in question of course does allow for shut-in royalty payments however, under specific terms and conditions. To quote the deed specifically, it states:

> "It is expressly understood, however, that if any oil, gas, and mineral or mining lease covering said land or lands pulled therewith is maintained in force and effect by payment of shut-in royalties or any other similar payments made to the lessors or royalty holder in lieu of actual production while there is located on the lease or land pulled therewith a well or mine capable of producing oil or gas or other minerals in paying or commercial quantities but shut-in for lack of market or any other reason, then for purposes of determining the term of this reserved royalty interest it will be considered that production in paying commercial quantities is being obtained from the land here and conveyed."

I am very confident that you are well aware that the well referenced above does not meet the terms of this shut-in provision. The well has never produced in paying quantities and even as of today is not capable of producing in paying quantities. Further, despite what your letter suggested and as mentioned previously, this well has never been flared, and in fact the well head has never been connected to a flare or the production facility that is in place today. As this letter is being written to you, there is a crew on the site today whose job is to drill out the plugs installed during the fracking procedure. This well, quite simply is not a well "capable of producing oil, gas, or other minerals in paying or commercial quantities and shut-in for lack of market". Further, this well is not a well that is "shut-in". It is a well that is under construction and that is not yet complete. Accordingly, the well in question is not shut-in and cannot be shut-in, is not a well capable of producing in paying quantities even as of today and certainly was not as of December 27, 2011, and has never been flared. As a result, royalty interest under the terms and conditions of the deed itself has conveyed to the Koopmanns and any ownership of royalty interest owned by the grantor or ConocoPhillips own has terminated under the terms and conditions of the deed.

Accordingly, under the strict terms of the deed (a copy of which is attached hereto) the Koopmann family, their representatives, and heirs are now the owner of 100% of the royalty interest of the 120 acre tract in question. When and if the well in question is put on

592

Ms. Diane Schaenen
January 10, 2012
Page 3

line for production, all royalty payments to the mineral interest owner consistent with the oil and gas lease are owed solely to the Koopmann family, consistent with the mineral interest division afforded each of them as on file in the DeWitt County real property records.

Please have a division order issued immediately consistent with the terms of the deed, including the conveyance of the remaining 50% royalty interest to the Koopmann family. This division shall reflect the fact that the Koopmanns have 100% ownership of the royalty interest of this 120 acre tract in question and more particularly the well referenced in the reference block above. Please forward a copy of that division order to each member of the Koopmann family entitled to same, consistent with the mineral interest division afforded each of them as on file in the DeWitt County real property records. Please also forward a copy of that division order to my attention at the address above at your earliest convenience.

If you have any other questions or concerns on this issue please contact me directly at the above referenced number and address.

Cordially,

JOHANSON & FAIRLESS, L.L.P.

Todd

TT/hs

593

# JOHANSON & FAIRLESS, L.L.P.

## LAWYERS

1456 First Colony Boulevard
Sugar Land, Texas 77479

281-313-5000
TELECOPIER 281-340-5100

MIKE JOHANSON
RANDY L. FAIRLESS *
TODD TAYLOR *
BART BASDEN *
KELLEY J. FRIEDMAN
*Board Certified in Personal Injury Trial Law
Texas Board of Legal Specialization

VICKI L. DALEY
KEVIN C. KYSER
PAUL GREG LAUGHLIN
TIMOTHY J. NISBET
CHRIS M. VOLF

MIKE JOHANSON
DIRECT DIAL 281-340-5109
E-Mail MJohanson@JandFLaw.com

June 24, 2013
4.193

Elizabeth Tiblets
LOCKE LORD, LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201-6776

*Via Email, CMRR*

Re:  Cause No. 12-07-22354; *Ralph Wade Koopmann, Karen Marie Koenig, and Lorene H. Koopmann vs. ConocoPhillips, Burlington Resources Oil & Gas Co., L.P. and Lois Strieber, Individually and as Executrix of the Estate of Jerry Strieber,* In the 24th Judicial District Court of DeWitt County, Texas

## DEMAND TO RETURN ROYALTY PAYMENTS OWED, NOTICE OF DELINQUENCY, AND DEMAND FOR ACCOUNTING

Dear Elizabeth:

Please consider this a formal notice that royalty payments owed to Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann are delinquent, and are wrongfully in the possession and control of Burlington Resources Oil & Gas Company, L.P., and/or ConocoPhillips Company. As such royalty payments are delinquent and being wrongfully withheld by your clients, this correspondence shall serve as a demand for the immediate return of such royalty payments. Further, this correspondence shall



serve as a continuing demand that future royalties, as they come due to Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann, be relinquished and timely paid pursuant to the terms of the Lease.[1] Please provide this demand and notice to your clients.

Foremost, through the discovery conducted in this litigation, it is clear that Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann are entitled to be paid the full amount of royalties arising under the terms of the Lease (and your clients knew same long before suit was filed). Nevertheless, your clients have failed to pay such royalty interests to date, instead withholding fifty percent (50%) of the royalties owed. Further, it appears that your clients will continue to fail to pay future royalties as they come due, despite the fact they clearly owe the full royalties to my clients. There is no viable reason for your clients to retain these royalty payments (in the past or future), and it is clear they are the wrongfully appropriated property of Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann.

While we have previously demanded the return of the royalty payments owed to Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann, we now provide this formal demand, so as there will be no question your clients will be subject to interest on the unpaid royalties as provided under the terms of the Lease should they fail (and continue to fail) to pay. Specifically, the Lease states as follows:

N. ROYALTY PAYMENT DUE DATE: All royalty payments on actual production are due and payable with 60 days after the end of the month in which the production occurred. In the event Lessee becomes delinquent in such payment, the Lessor must notify the Lessee of the default and if Lessee does not pay the delinquent amount with 15 days after Lessor has sent such notice of the delinquency to Lessee by certified mail at its address set out above, Lessee must pay interest on the delinquent royalty amount and on all other royalties subsequently becoming delinquent until all delinquent payments have been paid, the interest rate to be 12% per year and computed as to each of the delinquent amounts beginning with the date each becomes due...

As you are aware, fifty percent (50%) of the royalty payments due to my clients are being wrongfully withheld by your clients at this time, and they are therefore delinquent in making these payments. Please remit the total delinquent amount of royalties owed to Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann within fifteen (15) days of the receipt of this certified letter. If my clients have not received the full amount of delinquent royalty payments within the time period set forth above by the Lease, we

[1] For the purposes of this notice and demand, "Lease" shall mean the "Oil, Gas and Mineral Lease (Paid Up Lease)" that was entered into between Hawke Enterprises and Lorene H. Koopmann on or about October 26, 2007, which was subsequently assigned to Burlington Resources Oil & Gas Company, L.P., and/or ratified by the "Amendment to Oil, Gas and Mineral Lease (Paid Up Lease)" entered into between Burlington Resources Oil & Gas Company, L.P., and Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann on or about December 27, 2010.

2

demand interest be paid on such amount at the rate of twelve percent (12%) per year, beginning with the date any such royalty payment originally became due.

As the Lease provides fifteen (15) days to remit the owed royalty payments before interest attaches, we expect that a check made payable to our law firm and Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann will be delivered to our firm, address above, no later than July 10, 2013. Please contact us for any additional drafting instructions or information you may require.

Should the unpaid royalty payments not be received by the above deadline, we will consider the failure to pay such owed royalties an affirmation of your clients' continuing refusal to return property owned by Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann, but wrongfully held in their possession and control. We will seek the full amount of interest owed under the Lease, and any additional remedies available.

### Demand for Accounting

Plaintiffs request a specific accounting, through the present date, of all payments and/or amounts held in "suspense", representing fifty precent (50%) of the royalty interest that is the subject of the above referenced lawsuit. It is unclear whether these monies are simply being "withheld" and/or whether monies are being paid into a specific, interest bearing account. We need clarification regarding this issue along with an accounting for all payments withheld or suspended through the present date.

Finally, this correspondence does not address the additional clear damages that Ralph Koopmann, Karen Marie Koenig, and Lorene H. Koopmann are entitled to, including tort damages, attorneys' fees, or exemplary damages. We will continue to pursue these damages through the pending litigation.

Should you have any questions, please don't hesitate to contact me.

Very truly yours,

*Mike Johanson*

Mike Johanson

MJ/kck
cc:   Errol John Dietze
      Michael Powell
      Clint Schumacher
      Kevin Cullen
      Todd Taylor
      Chris Volf
      Ron Walker

3